REC'D IN PRO SE OFFICE

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

**24-cv-1661-VMS**

- - - - - - - - - - - - - - - - - - - - - - - - - - - -

MICHAEL EISENBERG,

                                    Plaintiff,

                    -against-

NEW YORK CITY DEPARTMENT OF EDUCATION; NAMITA DWARKA, Deputy Superintendent Queens South & former Principal of William Cullen Bryant High School, in her official and individual capacity; CARLYN ST. AUBAIN, Principal of William Cullen Bryant High School, in her official and individual capacity; ALLISSA CREA MASON, Assistant Principal of Arts, Guidance, PPS, & Student Engagement of William Cullen Bryant High School, in her official and individual capacity; Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - -

**SCANLON, MJ**

**COMPLAINT**

**24-Civ.-___**

**JURY TRIAL DEMANDED**

Plaintiff MICHAEL EISENBERG, Plaintiff *Pro Se*, as and for his Complaint, against Defendants, alleges as follows:

**PRELIMINARY STATEMENT**

1.      Plaintiff brings this action seeking monetary and equitable relief based upon Defendants' violations of the federal Age Discrimination in Employment Act of 1967 ("ADEA"); the Americans with Disabilities Act ("ADA"); the New York State Human Rights Law, N.Y. Exec Law § 296 ("NYSHRL"); and the New York City Human Rights Law, N.Y.C. Administrative Code §§8-101 *et. seq.* ("NYCHRL"), based on discrimination due to age and disability. Plaintiff

further brings this action pursuant to 42 U.S.C. § 1983 based on retaliation for First Amendment protected speech for his union activities as a United Federation of Teachers ("UFT") member while employed as a teacher for the New York City Department of Education ("NYCDOE") at William Cullen Bryant High School ("the School" or "Bryant") in Queens, New York, and for speaking out on matters of public concern.

2. The conduct complained of in this action involves Defendants' discriminatory and retaliatory conduct against Plaintiff as well as favorable treatment exhibited on behalf of Defendants towards similarly situated younger and non-disabled music teachers at the School.

3. Additionally, the conduct complained of in this action involves Defendants' coercion, retaliation, and interference with Plaintiff's exercise of his First Amendment rights. The retaliatory conduct following protected activity includes, but is not limited to, the issuance of adverse performance ratings and evaluations, being subjected to a number of unwarranted OSI and SCI investigations, disciplinary summons and letters to his employment file, and loss of eligibility for overtime and other per session opportunities, which together constitute adverse employment actions.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over these claims pursuant to 28 U.S.C. § 1331, as this matter involves federal questions.

5. This Court has the power to issue declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202. This Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367(a).

6. This action's venue properly lies in the United States District Court for the Eastern District of New York, pursuant to 28 U.S.C. § 1391, because a substantial part of the acts or

omissions giving rise to this action occurred in this District and Defendants are subject to personal jurisdiction in this District.

## PARTIES

7.      Plaintiff Michael Eisenberg is a resident of Nassau County and the State of New York.  He was born in 1966 and is 57 years old. He suffers from a disability related to migraine headaches, for which his administration is aware.

8.      At all times relevant herein, Defendant New York City Department of Education ("NYCDOE") is a city school district established pursuant to Title II, Article-52-A of the New York State Education Law, NY Educ. Law Section 2590 *et seq.*

9.      At times relevant herein, Defendant Namita Dwarka was the Principal of William Cullen Bryant High School, a high school in Queens, within the New York City Department of Education ("NYCDOE"), and is sued in her official and individual capacity.  She left as Principal of William Cullen Bryant High School in Summer 2022 and is currently the Deputy Superintendent of Queens South High Schools.

10.     At times relevant herein, Defendant Carlyn St. Aubain is the Principal of William Cullen Bryant High School since 2022, and Assistant Principal of William Cullen Bryant High School since 2017, a high school in Queens, within the New York City Department of Education, and is sued in her official and individual capacity.

11.     At times relevant herein, Defendant Allissa Crea Mason (married name Mason) was the Assistant Principal of William Cullen Bryant High School, a high school in Queens, within the New York City Department of Education, and is sued in her official and individual capacity.

## STATEMENT OF FACTS

12.     Plaintiff has been a music teacher within Defendant NYCDOE ("DOE") since September 2011 and is presently tenured.

3

13.     Plaintiff previously worked at Veritas Academy within the DOE and received effective and highly effective ratings there in the 2013-17 school years.

**2017-2018 School Year**

14.     On September 8, 2017, Plaintiff was hired by Principal Namita Dwarka and AP Maria Troianos and began teaching at William Cullen Bryant High School as a music teacher on or about September 11, 2017.

15.     On the date of hiring, September 8, 2017, Plaintiff informed AP Troianos of his susceptibility to migraines and his recent migraine of September 6, 2017.

16.     On or about September 25, 2017, AP Troianos informally observed Plaintiff's teaching and rated him mostly effective in 6 out of 8 categories in an observation report, dated September 28, 2017.

17.     On October 16, 2017, AP Troianos approved Plaintiff's attendance and school payment for a professional development.

18.     On or about October 31, 2017, Ms. Crea Mason, contacted Plaintiff on his cellphone, texting personal questions regarding his health and his mother's health.

19.     On November 9, 2017, Plaintiff attended the professional development that AP Troianos committed for Bryant High School to pay.

20.     On or about November 9, 2017, AP Diaz Rodriguez offered Plaintiff a sixth class to be paid as a shortage area coverage in Spanish and Plaintiff accepted this offer.

21.     On or about November 9, 2017, Plaintiff was asked by AP Henry Huezo for report card grades for students for the previous semester, when Plaintiff was never assigned those students and was not even assigned to the school then. AP Huezo provided Plaintiff with blank report cards for the first semester for approximately 25 students.

22.     On or about November 9, 2017, Plaintiff reported this to AP Diaz Rodriguez, AP of World Languages, and showed her the blank forms. Plaintiff declined to provide the requested grades for students he had not taught for the semester he was not assigned to Spanish.

23.     Shortly after, Defendants began retaliating against Plaintiff with poor ratings and denial of per session for refusing to "fix" grades for students not previously assigned to him.

24.     On or about November 15, 2017, AP Troianos did not offer Plaintiff per session compensation for an after school event, but then reprimanded him for not staying past work hours. Fellow teachers received per session compensation for their participation in this event.

25.     On or about November 22, 2017, AP Troianos reversed Plaintiff's written approval for his professional development to be paid by the school and required him to pay $250 out of pocket.

26.     On or about November 28, 2017, AP Troianos formally observed Plaintiff, and on November 30, 2017, gave him an observation report with 4 effectives and 4 developings from AP Troianos.

27.     On November 28, 2017, Plaintiff met with AP Troianos to discuss inaccuracies in the observation report. AP Troianos ended the meeting abruptly shouting at Plaintiff.

28.     On December 7, 2017, Plaintiff filed an APPR complaint with the UFT about the November 30, 2017, observation.

29.     On December 12, 2017, Plaintiff emailed Principal Dwarka about inaccuracies in the observation report.

30.     On December 21, 2017, Plaintiff had an APPR complaint meeting with Principal Dwarka and AP Troianos where Plaintiff pointed out inaccuracies in the observation report.

31.     The next day on December 22, 2017, Plaintiff received a disciplinary notice for January 5, 2018, in retaliation for his APPR complaint.

32.    On January 5, 2018, before the disciplinary meeting, Plaintiff complained about being required to attend the disciplinary meeting during his lunch in violation of contract.

33.    On January 9, 2018, Plaintiff was called by AP Bill Manolios to two consecutive disciplinary meetings for January 11, 2018, with AP Manolios, AP Huezo, and Principal Dwarka, where Plaintiff was accused of (1) unprofessional conduct in the meeting November 28, 2017 with AP Troianos and (2) "Deliration [sic] of duties," alleging Plaintiff used class instructional time to email Principal Dwarka and the District Superintendent on January 5, 2018, regarding the falsified program schedule produced by AP Troianos.

34.    On January 17, 2018, AP Troianos observed Plaintiff during an announced midterm which AP Troianos had required and of which date Plaintiff had informed AP Troianos in advance. Plaintiff requested to have the observation rescheduled because students were not being given instruction but rather taking a test. AP Troianos denied his request. On January 18, 2018, Plaintiff requested a meeting with Principal Dwarka concerning impropriety of evaluating a midterm as instruction.

35.    On the following day, January 18, 2018, the police were called regarding sexual misconduct allegations against Plaintiff. Plaintiff was not notified of the investigation until 2 ½ months later, and was never informed of the student identity or charges alleged. An SCI investigator eventually told Plaintiff on March 29, 2018, that the allegation was unsubstantiated.

36.    On January 22, 2018, Plaintiff received a disciplinary letter to file from AP Bill Manolios regarding (1) unprofessional conduct; and (2) dereliction of duty by sending an email during class.

37.    On January 24, 2018, Plaintiff requested the statements that were cited as allegedly corroborating the charges of January 11, 2018, from Principal Dwarka. Plaintiff also requested removal of outdated file items over three years old as per the UFT-DOE contract. The

administration did not comply with this contractually stipulated obligation until June 2019, 17 months later.

38.    On January 25, 2018, AP Troianos issued Plaintiff an observation report with 4 Developing ratings and 3 Ineffective ratings, claiming lack of student engagement for the observed midterm.  This informal observation of students taking a test lasted the entire period and was in violation of the contract regarding the duration of informal observations.

39.    On January 30, 2018, Plaintiff's sixth class of in license Mixed Choir choral instruction, the only non-beginner class Plaintiff had been assigned, was removed from him. Plaintiff was left teaching Spanish out of license without remuneration for the shortage area duty. Younger music departmental colleague George Weisman, aged approximately 32, was assigned the advanced choral class as a sixth class in addition to three other advanced music classes he had already been assigned within his license area. Weisman received additional compensation for this added class. All three significantly younger music departmental colleagues, George Weisman, aged approximately 39, Alex Somer, aged approximately 33, and Garret Lanzet, aged approximately 35, were assigned to multiple advanced music classes in their license area.

40.    On or about January 31, 2018, Principal Dwarka and multiple APs stood outside of Plaintiff's room during an out of license Spanish class Plaintiff was covering. Plaintiff was observed a lengthy time by Principal Dwarka and multiple APs *out of license* in Spanish out of compliance from outside of his room (presumably to preserve the letter of the law in not observing out of license).  On the same day, Plaintiff requested Principal Dwarka remove outdated items from his file and provide copies of alleged statements, but he received no reply.

41.    On January 31, 2018, Plaintiff had an APPR meeting with Principal Dwarka. After the meeting, Principal Dwarka reported to his union representative that there were complaints regarding his work by students and "something was brewing."

42.    On March 16, 2018, Plaintiff was not provided a school survey code which was provided to everyone else.

43.    On March 29, 2018, AP Morales brought Plaintiff to meet Special Commissioner of Investigation investigator Ronald A. Connors and another colleague of his, where Plaintiff was interrogated about sexual misconduct allegations, with no disclosure about, who, what, when, except the date given of occurrence as January 18, 2018.

44.    On April 10, 2018, AP Troianos observed Plaintiff and issued him an observation report with 5 Effectives and 3 Developings.

45.    On May 30, 2018, Plaintiff was asked to accompany a concert with a class of students that Plaintiff suspected included the individual making the allegations of January 18, 2018. No disclosure had been made to Plaintiff regarding the identity of the student making the allegations or the nature of the complaint.

46.    On May 31, 2018, OSI Supervising Investigator Jeffrey Anderson emailed Plaintiff stating SCI Investigation 2018/0477 has been closed and no further action will be taken at this time.

47.    In violation of contract and Chancellor's regulations, Principal Dwarka never committed the details of the investigation of January 18, 2018 in writing, and never supplied such a summary to Plaintiff as required contractually. To date, Plaintiff has no knowledge of any details of this investigation.

48.    For the 2017-18 school year, Plaintiff received a MOTP score of Developing overall but an overall composite score of Effective based on his Effective MOSL score.

**2018-2019 School Year**.

49.     On September 22, 2018,  AP Allissa Crea Mason and a guidance counselor met with Plaintiff requesting him to pass a student retroactively for the previous year so he could play soccer. Plaintiff refused.

50.     On September 24, 2018, AP Crea Mason visited Plaintiff's class and began ridiculing his lesson and teaching in front of students.  AP Crea Mason issued Plaintiff mostly developing ratings on the observation report dated October 22, 2018.

51.     On November 20, 2018, Plaintiff was observed by AP Crea Mason and received four effective and four developing ratings on the December 19, 2018, observation report.

52.     On January 31, 2019, Plaintiff was observed by AP Crea Mason and received four effective and four developing ratings on the March 12, 2019, observation report.

53.     On February 26, 2019, Plaintiff was denied per session payment for curriculum night despite payment to other staff.

54.     On April 1, 2019, Plaintiff was observed by AP Crea Mason and received four ineffective and three developing ratings on the May 29, 2019, observation report.

55.     On May 30, 2019, Plaintiff was summoned to a fact-finding disciplinary conference on June 10, 2019, with no information given except RE: case 19-06521X.

56.     On June 14, 2019, during an APPR complaint meeting, Principal Dwarka issued Plaintiff a disciplinary letter to file, dated June 12, 2019, alleging poor judgment for allegedly touching a student's hand. Plaintiff received a letter to file even though all investigative findings were returned unsubstantiated. Student statements were provided clearly not substantiating in any way allegations; in one written statement, a peer stated she suspected the student making allegations was lying and trying to get Plaintiff into trouble.

57.    On June 18, 2019, Plaintiff filed a Step 1 grievance to remove the letter from his file, which Principal Dwarka denied on June 20, 2019. Plaintiff's grievance was later scheduled for arbitration on October 8, 2021, but was then postponed.

58.    For the 2018-19 school year, Plaintiff received an APPR Overall MOTP "Developing" rating, but an effective composite overall based on the MOSL rating.

### 2019-2020 School Year

59.    On September 3, 2019, Plaintiff was intentionally left out of a music department presentation and was not mentioned along with the three younger members of the music department.

60.    On November 26, 2019, Plaintiff was observed by AP Crea Mason and received mostly effective ratings in a report dated December 19, 2019.

61.    On November 28, 2019, Plaintiff's desk and computer had been moved (disappeared) from the dept. office and all his belongings were lost. This was never addressed, nor were the items recovered.

62.    On January 24, 2020, Plaintiff visited Dr. Jiy Haur Lu for an exacerbated migraine condition.

63.    In February 2020, Plaintiff submitted his Arts Studio Funding Allocation Order to AP Crea Mason, but it was never allocated to him.

64.    For the 2019-20 school year, Plaintiff did not receive an APPR overall rating due to the COVID pandemic.

### 2020-2021 School Year

65.    On September 19, 2020, Plaintiff was assigned to teach violin classes out of license; he was also assigned to teach three French classes out of license as well.

66.    On September 25, 2020, Plaintiff was denied per session for alleged budgetary constraints. Plaintiff learned, however, that George Weisman (39), Garret Lanzet (35), and Alex Somer (33), were all permitted to engage in per session activities.

67.    On October 9, 2020, Plaintiff requested to teach remote classes offsite since being assigned both remote and in-person classes without agreeing to it is in violation of the contractual agreement, his request was denied.

68.    On October 29, 2020, Principal Dwarka mistakenly believed Plaintiff was supposed to be teaching a class when in fact he was scheduled for lunch. Plaintiff was reprimanded following administration's mistake.

69.    Throughout October and November 2020, Plaintiff continued to be harassed by AP Crea Mason , Principal Dwarka, and AP Huezo for his online and in-person instruction and he was often visited, surveilled, and subjected to adverse scrutiny that undermined Plaintiffs ability to teach and incurred escalating tension that manifested in November and December of 2020 in the worst migraines Plaintiff had ever experienced to date and in an outbreak of Shingles.

70.    From November 18, 2020, through November 25, 2020, Plaintiff experienced the worst migraines he had ever experienced to date, lasting a total of seven days. He visited Dr. Lu on November 25, 2023, and was provided new stronger more expensive medication. He has also seen Dr. Nancy Fan Paul, ophthalmologist and otolaryngologist on November 25, 2020, for these conditions. Plaintiff's headache was accompanied by nausea and vomiting. He was given medication to help relieve the symptoms and sent for further testing. A week later, Plaintiff caught Shingles as a further reaction to the stress endured from repeated harassment and retaliatory action by Bryant administration. Plaintiff's blood pressure also rose to approximately 135 to 140 in comparison to his normal range of 110-120 previously.

71.    On December 6, 2020, Plaintiff requested a full comprehensive accounting of his attendance to verify administration's accurate reporting from Attendance Secretary Mimi Diakos. This request was never responded to or received until October 2023.

72.    On January 12, 2021, Plaintiff wrote to request outdated items 3 years old be removed from file and to view his file, and received no reply despite repeatedly following up until the outdated items were finally removed on June 27, 2021.

73.    On January 25, 2021, Plaintiff wrote to AP Crea Mason stating: I have previously noted to you the sustained harassment and derogatory treatment you have directed towards me, berating me in front of my students and peers. As I noted in a previous communique, this unrelenting abuse directly provoked my spate of migraines and incidence of Shingles.

74.    In March 2021, Plaintiff submitted Arts Studio Funding Allocation Order to AP Crea Mason but Plaintiff never received said funding. Plaintiff's younger colleagues, however, received requested funding.

75.    On March 23, 2021, at a scholarship meeting with AP Crea Mason and AP Bill Maniolos; AP Crea Mason began pointing fingers at Plaintiff, and yelling at him. As per instructions given by Amy Arundell, Plaintiff stated he did not feel comfortable w/ tone of meeting and wished for UFT representation. AP Crea Mason became angry and followed Plaintiff into the secretary foyer and continued to berate him in front of the secretary and another teacher.

76.    On March 24, 2021, at a scholarship meeting with AP Crea Mason and AP Huezo present Plaintiff stated that he had felt repeatedly ambushed at such a meeting when he was told he was meeting with one AP.

77.    On April 5, 2021, Plaintiff received a disciplinary notice alleging neglect of duty and insubordination for leaving class a few minutes early and arriving to another class a few minutes late. This was the first week back from COVID-19 and many of the clocks throughout the

building were inaccurate. In fact, many teachers were late to assignments because of this, however, upon information and belief, only Plaintiff was singled out and reprimanded. Plaintiff ultimately received a disciplinary letter to file from AP Maniolos dated April 16, 2021.

78.    On April 30, 2021, AP Crea Mason observed Plaintiff and gave him all Developing ratings on an observation report dated June 1, 2021.

79.    On May 6, 2021, Plaintiff viewed his personnel file. Outdated items were not removed.

80.    On the same day, Plaintiff was called to meeting with AP Maniolos, AP Toussaint (later Principal St. Aubain married name) and the Dean to discuss student plagiarism; Plaintiff's criteria for determining plagiarism was questioned despite clear evidence provided and he was reprimanded for failing a student for plagiarism since he had an IEP.

81.    On May 14, 2021, Plaintiff reported to AP Crea Mason that a student had plagiarized and he was questioned about whether or not he provided the instructions of the assignment in Spanish.

82.    On June 8, 2021, Plaintiff was assigned to teach violin classes out of license in exchange for a grant. The grant was later terminated, without him being informed. This prejudiced his reputation and professional standing with Carnegie Hall, an organization he has worked for for 6 years, and has an ongoing professional teacher affiliation since 12 years. AP Crea Mason also demanded he produce his own source of funding for the nominal Carnegie grant fee of $1.5K for a $75K grant. Fellow music colleagues had been routinely granted at least $45K in funding for similar programs.

83.    On June 9, 2021, AP Crea Mason conducted an observation. Plaintiff received 4 developing ratings and 2 effective ratings in an observation report dated June 23, 2021.

84.     On June 22, 2021, AP Crea Mason visited Plaintiff's classroom with a failing absentee student and confronted him regarding the student's failing grades in front of the student.

85.     For the 2020-21 school year, Plaintiff received a MOTP score of Developing overall (2.13) but an overall composite score of Effective based on her MOSL score.

## 2021-22 School Year

86.     On or around September 4, 2021, Principal Dwarka announced to all faculty at conference meeting that she had a terrible announcement. She said I'm 50. I'm old., confirming a schoolwide policy of disparaging age and of hiring predominantly young untenured staff members to the exclusion of older staff candidates.

87.     In September 2021, Plaintiff requested multiple per session opportunities and never heard back. Plaintiff later discovered that these per session opportunities were provided to his younger, less senior colleagues.

88.     On Sept 24-28, 2021, Plaintiff was harassed about taking time off for Covid testing, and was repeatedly informed the days would be taken out of his CAR days. After much back and forth, he was ultimately granted, but only after much excessive requests for documentation and repeated denials for no just reason and contrary to contractual agreement.

89.     On October 8, 2021, Plaintiff's union filed a demand for arbitration on his behalf finding sufficient merit for grievance of June 18, 2019.

90.     On December 20, 2021, Plaintiff was questioned regarding taking a day off after booster shot for a negative reaction since (1) there was a gap of a day between shot and day off, since (2) he had not reported reason on absence voice mail (which never is done), and since (3) he had not reported previously he was getting the booster shot (although he arranged to take it on his own time so as not to take advantage unnecessarily of the contractual hours allocated for the vaccine).

91.     Between December 22 and 29, 2021, Plaintiff was repeatedly harassed for absentee lesson plans by multiple admin members regarding lesson plans that had already been provided and had been returned disorganized and removed from file.

92.     On December 15, 2021, Plaintiff received a notice from AP Manolios for a Disciplinary Conference for Unprofessional Conduct scheduled for December 17, 2021. At the disciplinary conference with AP Manolios, AP Crea Mason , & UFT Rep Lignou, AP Manolios discussed Plaintiffs unprofessional conduct based on emails Plaintiff sent to AP Manoliois memorializing the refusal of AP Manolios  (AP of Organization tasked with all budgetary allocations) since April 2021 till the date of the email to allocate requested funds for violins and violin repairs leaving students deprived without necessary instructional resources and in violation of NYC DOE commitment to provide every child with equal instructional resources; asking for time for Social Emotional Learning allocated in a contractual agreement by the NYC DOE and not provided to Plaintiff; inquiring regarding Plaintiffs unfair treatment of per session allocation compared to music colleagues. AP Manolios verified during the disciplinary conference that he discussed Plaintiffs adverse performance with colleague Weisman and Weisman's negative comments regarding Plaintiffs work and & thus cancelled the allocation of any funding for violin repairs. When Plaintiff raised the unprofessional nature of discussing an employee's performance and listening to gossip about an employee from colleagues, AP Manolios became angry and refused further discussion.

93.     On December 18, 2021, Plaintiff was refused additional time to address charges although no time granted at disciplinary conference and such time requested by me and union rep present. Instead asked to submit in writing.

94.     On December 22, 2021, Plaintiff was denied half-sabbatical for shortage in license; although he is currently teaching out of license area in instrumental music, instead of vocal music.

95.    On the same day, Plaintiff filed grievances for unfair denial of per-session opportunities and failure to allocate SEL time as per contractual agreement.

96.    From December 22, 2021, through December 29, 2021, in retaliation for complaining about contract violations, Plaintiff was repeatedly harassed by various APs for the provision of absentee lesson plans already provided previously to administration.

97.    On January 4, 2022, Plaintiff and UFT Rep Lignou met with Principal Dwarka, AP Crea Mason, and AP Manolios regarding grievances. Principal Dwarka treated Plaintiff rudely, saying "Excuse you" in a hostile tone and thereafter refused to address Plaintiff or allow Plaintiff to speak.

98.    On January 5, 2022, Plaintiff received a notice for a disciplinary conference for insubordination scheduled for 12/7/22 [sic].

99.    On January 6, 2023, Plaintiff submitted a salary inquiry through the UFT for the unfair denial of sabbatical.

100.    On January 7, 2022, Principal Dwarka and AP Crea Mason filed an OEO claim against Plaintiff for alleged sexual harassment for the use of the word Schettini in an email on January 7, 2021, addressed to Principal Dwarka, AP Crea Mason, and UFT Rep Lignou, requesting a schedule (not Schettini) to work on what was perceived by AP Crea Mason and Principal Dwarka as poor instruction and pedagogy. Plaintiff was first informed of this allegation on October 18, 2023, in violation of Chancellors regulation stipulation for advising a subject of an investigation.

101.    On February 7, 2022, AP Crea Mason issued Plaintiff a counseling memorandum, dated January 24, 2022, and AP Maniolos issued Plaintiff a disciplinary letter, dated January 28, 2022.

102.    On June 3, 2022, AP Crea Mason issued Plaintiff an informal observation with all developing ratings for an observation conducted on April 13, 2022.

103.    On June 21, 2022, Plaintiff was pressured by AP Crea Mason to accept plagiarized work presented by a student in order for him to be able to receive a passing grade for the year.

104.    On June 27, 2022, Plaintiff was ostensibly assigned his expressed preference for Show Choir, the most advanced choral class in his license area offered at Bryant. However, students were reassigned to "Advanced Show Choir" class newly formed on or around June 27, 2023, and beginner non-music non-choral students were assigned to Plaintiff's Show Choir class creating a de facto beginner choral class.

105.    For the 2021-22 school year, Plaintiff received a MOTP score of Ineffective overall, but an overall composite score of Developing based on his MOSL score.

106.    In August 2022, Principal Dwarka left Bryant High School after being promoted to a Deputy Superintendent role.

### 2022-23 School Year

107.    On September 7, 2022, Plaintiff renewed his request for violin repairs and was never granted request.

108.    From September 16-23, 2022, Plaintiff ran for the UFT SLT representative position.

109.    On September 19, 2022, the UFT advanced Plaintiff's retaliation grievance to arbitration.

110.    On September 30, 2022, the criteria for receiving per session work were amended regarding observation rating so as to deny automatically any application for per session work Plaintiff presented in the future, while allowing for younger music departmental colleagues Lanzet, Somer, and Weisman to pursue these options.

111.    On October 4, 2022, Plaintiff was required to meet with AP Crea Mason and UFT Rep Georgia Lignou for a Teacher Improvement Plan where contractual requirements were not met and were AP Crea Mason established a hostile tone.

112.    On October 6, 2022, Plaintiff was removed from class while teaching students by AP Huezo and escorted to the office of Principal St. Aubain. Plaintiff requested and was refused by Principal St. Aubain and AP Huezo his contractual right to UFT representation and the presence of Georgia Lignou. Principal St. Aubain gave Plaintiff a letter indicating that he was to report immediately for reassignment. Principal St. Aubain said with open animus, "I know what this is about." AP Huezo escorted Plaintiff back to his room in front of his students and he was required to gather his personal belongings in front of the class. AP Huezo then escorted Plaintiff to Georgia Lignou, confiscated his keys, and escorted him out of the building.

113.    On November 23, 2022, Plaintiff's grievance for Unfair Allocation of monies grieving the allocation of per session work for music departmental colleagues Lanzet, Somer and Weisman, and denial of same opportunities to Plaintiff.

114.    On December 12, 2022, Plaintiff submitted an EEOC Inquiry.

115.    On December 16, 2022, Plaintiff filed a FOIL request regarding unfair allocation of per session funds to music colleagues and inequitable pay.

116.    On December 29, 2022, Plaintiff sent a Notice of Claim to the NYC DOE.

117.    On February 10, 2023, contacted by Hubert Guscott regarding sabbatical application never answered by Superintendent Hoa Tu. Mr. Guscott stated he would provide an offer in writing for Plaintiff's consideration of acceptance.

118.    In February 2023, Plaintiff discovered via UFT Rep Lignou that administration had placed an adverse letter to file in his file alleging poor performance that was not regarding Plaintiff and regarded another teacher entirely.

18

119.    On February 19, 2023, Plaintiff received an email stating he had been administratively denied the sabbatical because Plaintiff refused it. Plaintiff emailed Mr. Guscott and Superintendent Tu.

120.    On February 23, 2023, the NYC DOE denied grievance of untimely denial of sabbatical on December 21, 2021.

121.    On March 31, 2023, Plaintiff reported to Principal St. Aubain 39 emails containing hate speech and sexually explicit harassment from two anonymous cell phone numbers to Plaintiff's Bryant email account.

122.    On April 25, 2023, Plaintiff submitted an application to teach summer school to all 232 NYC DOE summer programs available to Plaintiff to teach in.

123.    On April 27, 2023, Plaintiff had an EEOC interview.

124.    On May 8, 2023, Plaintiff filed an SDHR complaint against the NYCDOE, which is annexed as Exhibit A hereto for Plaintiff's claims that the EEOC interviewer advised were not covered under the EEOC, but were covered by the NYS Division of Human Rights.

125.    On May 10, 2023, Plaintiff filed an EEOC Charge of Discrimination against the NYCDOE based on age and disability discrimination and retaliation, which is annexed as Exhibit B hereto.

126.    On May 26, the Office of the Special Commissioner of Investigations contacted Plaintiff, communicating that all allegations had been determined unsubstantiated and removing Plaintiff from reassignment. Plaintiff was informed a problem code had been attached to his file.

127.    On May 30, 2023, Plaintiff returned to work. Despite contractual requirement that teachers returning from reassignment may not be retaliated against, Principal St. Aubain and AP Crea Mason demoted to substitute status; removed all Plaintiff's music classes alleging that these classes had been closed for budgetary constraints although they remained open; refused Plaintiff

access to the music office, music room and office keys, and piano, all provided to fellow music departmental colleagues; destroyed all Plaintiff's Bryant emails and all evidence therein, barred Plaintiff's access to the Bryant High School drive, music departmental files, and Plaintiff's email, all provided to all staff members including substitute staff: barred Plaintiff access to printing privileges provided to all staff; denied Plaintiff access to the personal item, property, and music resources he had been unable to retrieve upon reassignment. Later Plaintiff discovered that Mr. Weisman had been assigned one of his music classes and was being paid as a sixth-class coverage. Music colleagues Lanzet and Somer were also assigned to cover Plaintiff's other music classes while Plaintiff served as a substitute to random daily class assignments.

128.    On May 30, 2023, and repeatedly thereafter, Plaintiff applied to Principal St. Aubain for all per session opportunities provided to other music departmental colleagues and summer school placement at Bryant. Plaintiff never received a response to these applications thus being constructively denied.

129.    On May 30, 2023, and thereafter, Plaintiff reported to Principal St. Aubain, AP Crea Mason, & AP Morales his fear of further harassment by the anonymous emailers of hate speech and sexually explicit harassment speech. Plaintiff inquired regarding measures taken to protect from further sexual harassment and abuse. Principal St. Aubain declined to respond in anyway.

130.    On May 30, 2023, Plaintiff reported to Principal St. Aubain and AP Crea Mason verbally and in writing the escalation of his migraines in response to Bryant administrative harassment and retaliation and provided additional medical documentation on June 1, 2023.

131.    On May 31, 2023, Plaintiff submitted a FOIL request for the findings of the SCI investigation and received the FOIL report stating that: SCI Case # 2022-6822 had been reported anonymously and had been found unsubstantiated on all accounts based on students inability to

articulate any of claims and fellow students unison report of no issue with Plaintiff's treatment of students.

132.    On June 1, AP Crea Mason publicly humiliated Plaintiff, reprimanding him in the presence of three peers for making copies and for taking his lunch anywhere but the teacher cafeteria or outside. All staff is permitted to take lunch anywhere and to make copies.

133.    On June 1, 2023, and thereafter, Plaintiff was denied by AP Crea Mason, Principal St. Aubain, and music colleagues Lanzet, Somer, and Weisman access to all 2023-24 music course listings and student roster assignment lists.

134.    On June 1 and 2, 2023, Plaintiff inquired to the attendance secretary Diakos and the OPI regarding the attachment of a problem code. Plaintiff inquired why had never been informed as to its attachment, why it was still attached despite the finding of all allegations to be unsubstantiated and the investigation to be closed as pursuant to Art. 21 G.4.a. Plaintiff initiated a grievance with UFT Rep Lignou for its removal. He was informed that week that the problem code had been removed by Diakos and the OPI.

135.    On June 2, 2023, Plaintiff emailed Principal St. Aubain regarding the disciplinary letter to file requested to be removed as per contractual requirement and Plaintiff's request. The letter had not been removed although administration indicated to UFT Rep Lignou that it had been removed.

136.    On June 2, 2023, Plaintiff emailed Principal St. Aubain with demand for reassignment to Plaintiff's original music classes pursuant to Art. 21 G.4.a.

137.    On June 2-27, 2023, Plaintiff was exposed to repeated harassment by two students, shown on June 27, 2023, to be the senders of the anonymous emails reported to Principal St. Aubain on March 31, 2023. Plaintiff was assigned to classes with the same students. Despite

reports to Principal St. Aubain and AP Morales concerning ongoing harassment by the students, no effort was made to protect Plaintiff from further abuse.

138.    On June 9, 2023, Plaintiff was offered a summer school position by Principal Alain Beugoms at PS 110 in Brooklyn and Plaintiff accepted.

139.    On June 13, 2023, the last day before Regents, without explanation, AP Crea Mason provided Plaintiff with all keys and access to music classes, music office, printing privileges, and unretrieved personal property. AP Crea Mason instructed Plaintiff that he had been reassigned on this last day of instruction to all original classes except for the violin class which had been reassigned to Mr. Weisman. For this particular period, Plaintiff was still assigned to a substitute assignment.

140.    On June 16, 2023, Plaintiff was assigned to Regents administration with student G. Student G began shouting at Plaintiff, led a loud uprising of students in refusing to sit down for the exam, and continued yelling epithets and sexually explicit language and hate speech at Plaintiff. The exam began over a half hour late in violation of the stringent Bryant and statewide policies in regard to start time. Plaintiff requested test administrator backup twice and was refused. Later, off campus, Student G and an unidentified female student from the Regents class began yelling at Plaintiff and hurling accusations and epithets at Plaintiff in front of the school building. Plaintiff reported this incident to the test administrators, school deans on duty, Principal St. Aubain, and UFT Rep Lignou.

141.    On June 16, 2023, Plaintiff developed serious migraines that continued through the following week. Plaintiff remained out of school for the following five days. Upon return, Plaintiff presented a medical note for the days and Attendance Secretary Diakos refused to accept the note for more than one day. Plaintiff produced further documentation to substantiate but Diakos refused to input correct data, reporting attendance as disallowed and charging the absence to Plaintiffs

salary. Diakos also refused a provide Plaintiff with an exact accounting of how all attendance had been reported, therefore preventing Plaintiff from confirming this till October 2023.

142. On June 27, 2023, the last day of the spring 2023 semester, Plaintiff presented evidence of harassment by Students G and L to AP Morales and requested verbally and by email a meeting that day with Principal St. Aubain regarding the situation and its handling. Principal St. Aubain did not reply. Plaintiff left a message with the principal secretary and AP Morales and waited in Principal St. Aubains office as per the secretaries' instructions. Upon exiting the building, Plaintiff saw Principal St. Aubain and inquired regarding the denial of a meeting. Principal St. Aubain stated she had not read her email, it was not the time, and that Plaintiff should email the Superintendent. Plaintiff emailed Principal St. Aubain copying Superintendent Tu and reiterating the information. There was no reply received ever from Principal St. Aubain or Superintendent Tu.

143. On July 6, 2023, after four full days of teaching work at PS 110, Plaintiff received an email from a NYC DOE Summer Jobs email stating that the position had been retracted due to **a determination of ineligibility to work for** Problem code, relating to a disciplinary action, arrest, new nomination/investigation or related matter. Plaintiff became deeply anxious fearing that his reputation with the new school and administration would be biased as a result of this action. Plaintiff had relied detrimentally on this work to cover expenses, and this also caused great consternation and angst for Plaintiff. Plaintiff reported this adverse action to UFT Queens Rep Amy Arundell.

144. On July 7, 2023, Plaintiff received notification that summer school termination had been retracted from by phone and in writing to disregard this retraction.

145. On August 8, 2023, the most recent sabbatical grievance for 2022-23 was found to have merit by the UFT and was advanced to arbitration.

146.   On August 9, 2023, the Monies Owed grievance for 2022-23 was found to have merit by the UFT and was advanced to arbitration.

147.   On August 10, 2023, Plaintiff received perfect Satisfactory rating from Summer School Principal Beugoms, the highest rating that may be assigned for summer school teaching..

148.   On August 16, 2023, Plaintiff was issued a Notice of Right to Sue (EEOC).

### 2023-24 School Year

149.   Beginning in September 2023, Student G continued to follow and harass Plaintiff by visiting his room, staring into his room, loitering outside his room during class instructional hours. This behavior was reported repeatedly to Principal St. Aubain, AP Morales, & AP Crea Mason and photos of this behavior and documentation and chronology was provided. No action was taken and there was no response to requests for intervention from Plaintiff and UFT Rep Lignou.

150.   On September 4, 2023, Plaintiff was denied his program choice, as well as his second and third preferences, and assigned all beginner classes. One class was listed as Advanced Piano but the students were beginners and could not read music. All Plaintiff's music colleagues were assigned multiple advanced classes all in their license area. Plaintiff was assigned 60% of his classes in his license area. Plaintiff had the lowest level of classes at large of all the music department, despite holding longer seniority, tenure, more advanced music degrees, the longest length of experience teaching, and previous experience teaching NYC DOE music teachers for the NYC DOE.

151.   On September 6, 2023, Plaintiff received his first Migraine in months.

152.   On September 6, 2023, Plaintiff reported to AP Crea Mason numerous material resource concerns that seriously undermined Plaintiffs teaching practice and to which his classes were uniquely subjected and not experienced by other music teachers; namely that: that the piano

24

he purchased with his own Studio Allocation funds had disappeared from the class and was possibly in use by other departmental music teachers; that all pianos were in serious disrepair, out of tune, and unplayable; that over 60% of headsets were defective and needed replacement; that the makeshift risers raised the risk of students falling off and injuring themselves, unlike the professional choral risers allocated to Weisman (N.B. students fell off these makeshift jimmy rigged risers over a dozen times in the month of September alone, creating a serious risk; AP Mason witnessed this on); that there were insufficient chairs and benches; that the new exclusion of all Plaintiff's music classes to only one room, unlike all other music teachers able to conduct various subjects in multiple performance spaces was not conducive to instruction; that music ordered was never received in contrast to all departmental colleagues who had received ordered music. None of these items were ever addressed despite repeated reiterations thereafter.

153.    On September 7, 2023, Plaintiff reported to AP Crea Mason that he still had no access to departmental curricular materials, music and arts drive, and Bryant High School drive resources.

154.    On September 12, 2023, Plaintiff was interrupted while teaching by AP Morales while a dean watched Plaintiff's class and escorted Plaintiff to Principal St. Aubains office. There Plaintiff was presented with a letter personally by Anthony Stiffler, Esq., Executive President of High Schools Queens North, advising of an upcoming disciplinary conference on September 14, 2023. In violation of contract, Plaintiff was not afforded the requisite contractual 48 hours to prepare for the meeting.

155.    On September 14, 2023, Plaintiff and UFT Rep Lignou met with Executive President Stiffler and AP Winberry to discuss the allegation made by Principal St. Aubain that Plaintiff had walked to her on June 27, 2023. Executive President Stiffler presented conflicting statements taken over 2.5 months later on September 8, 2023, that did not match the school bell

schedule for June 27, 2023, but that verified that Principal St. Aubain had stated that Plaintiff should take it up with the superintendent. Plaintiff pointed out the gross deviations between the written statements proffered such as the incident occurring both inside and outside according to the conflicting accounts, the inaccuracies in reporting time and location, the hearsay and subjective nature of statements, and the utter ambiguity of such an allegation's meaning. Plaintiff showed Executive President Stiffler the email sent to Superintendent's office on June 27, 2023, and reported the lack of response regarding the substantiated sexual harassment by either Principal St. Aubain or Superintendent Tu.

156.    On September 14, 2023, Plaintiff applied for eight per session opportunities, six of which were ultimately denied and two which remain in the status of pending as per AP Henry. Plaintiff's younger music colleagues all received multiple per session assignments for this application period.

157.    On September 15, 2023, Plaintiff requested to take a professional development music pedagogy course offered by the NYC DOE given Plaintiffs alleged poor knowledge and mastery of music and music pedagogy. AP Crea Mason denied this request.

158.    On September 19, 2023, Plaintiff received notice from Investigator Cody Mitchell that Plaintiff was the subject of an OEO investigation filed by a staff member.

159.    On September 21, 2023, Principal St. Aubain denied all Plaintiff's grievance demands.

160.    On September 21, 2023, in an ongoing pattern of administrative intimidation and casting Plaintiff in false light, AP Morales and dean interrupted Plaintiff's class in the middle of instruction again and escorted Plaintiff to Principal St. Aubain's office to receive the denial and sign the letter.

161.    On September 27, 2023, in the same recurrent pattern of administrative intimidation and casting Plaintiff in false light, AP Morales and dean interrupted Plaintiff's class in middle of instruction again and escorted Plaintiff to Principal St. Aubain's office to receive a letter from Executive President Stiffler in person, which found all allegations for the September 14, 2023 to be unsubstantiated. Stiffler apologized for the interruption and stated he had expressly advised AP Morales that Stiffler should wait to give me the letter so as not to interrupt instruction, but that AP Morales insisted on doing so.

162.    On September 29, 2023, Plaintiff requested in writing to AP Crea Mason that the out of tune pianos for his piano classes be tuned. AP Crea Mason directed Plaintiff to Weisman whose pianos were in tune. Plaintiff directed the request to Weisman on October 2, 2023, and reiterated the request to both Weisman, AP Crea Mason, and AP Young repeatedly. No action was ever taken and the pianos remained out of tune and in serious disrepair through January 31, 2024.

163.    On October 2, 2023, Plaintiff was reprimanded publicly by AP Crea Mason in front of music colleagues at a departmental meeting.

164.    On October 23, 2023, Plaintiff emailed Principal St. Aubain requesting no contact with AP Crea Mason, given AP Crea Mason's failure to recuse herself from Plaintiff supervision in light of pending OEO claim.

165.    On October 24, 2023, Plaintiff was visited for informal observation by AP Crea Mason. Plaintiff told AP Crea Mason this caused him discomfort and did not wish her to proceed.

166.    On October 26, 2023, Plaintiff was emailed by AP Crea Mason and Plaintiff reiterated request for no contact, given previous frivolous sexual harassment complaint by AP Crea Mason and Principal Dwarka.

167.    On October 30, 2023, Plaintiff received an email from Principal St. Aubain stating that an OEO on Plaintiff's behalf had been filed by the NYC DOE regarding a complaint about AP

27

Crea Mason's failure to recuse self. An approved non-attendance day for Plaintiff was counted as sick day by Attendance Secretary Rodriguez.

168.     On November 30, 2023, Plaintiff received an informal observation by AP Young, When rated as Ineffective this was the lowest rating Plaintiff had received by the NYC DOE to date.

169.     On December 6, 2023, Plaintiff received an EEOC right to sue letter, dated December 6, 2023, which is annexed as Exhibit C hereto.

170.     On December 8, 2023, Plaintiff fell from the piano bench when a student moved the bench out from under Plaintiff. Plaintiff requested the three students witnessing the event write statements immediately. Shortly thereafter, AP Morales and Principal St. Aubain passed in the hall and Plaintiff provided the student statements, averting AP Morales to Plaintiff's recent back surgery on October 16, 2023. When AP Morales wrote up the incident report he omitted the student statements, stated erroneously that Plaintiff had stated he was not injured, contrary to Plaintiff's own statement that he feared a serious exacerbation of the surgery and possible complications. Following this incident, Plaintiff was absent for line of duty only returning January 3, 2024. Upon returning, Plaintiff was observed on the same day of his return and ultimately received the lowest rating he had ever received with the NYC DOE.

171.     On January 16, 2024, AP Jonathan Young issued Plaintiff an observation report with mostly Ineffective and Developing ratings for an observation conducted on November 30, 2023 with the lowest composite score Plaintiff had received to date.

172.     On January 16, 2024, Plaintiff filed a complaint for the November 30, 2023 observation.

173.     On January 25, 2024, AP Jonathan Young issued Plaintiff an observation report with mostly Ineffective and Developing ratings for an observation conducted on January 3, 2024.

174.    On January 26, 2024, Plaintiff received an Ineffective rating overall I (1 Effective;

3 Developing; 4 Ineffective)

with the lowest composite score he had ever received with the NYC DOE to date.

175.    On January 30, 2024, Attendance Secretary Rodriguez stated that nothing can be

done to reverse docked pay for misreported attendance of June 23, 2023, reported as unauthorized

and pay docked not reimbursed.as of date of filing March 5, 2024,

### Other Discrimination and Retaliation

176.    Plaintiff has repeatedly been denied per-session opportunities, which his music

colleagues have consistently received yearly. Per-session opportunities are disguised under generic

arbitrary designations, names, and hours to allocate with bias.  Plaintiff is the most senior longest

tenured and longest in the system. As of this year, Plaintiff was further harassed just asking for the

allocation of a few hours that he was previously instructed to ask her for because of a student's

need and deficiency. This is also in violation of the contractual obligation to rotate per session

opportunities and course placements and preferences so as to maintain equitable distribution.

177.    On repeated occasions (at least twice), the designated studio arts allocation of

approximately $750 which a teacher solely is allowed to dispense at their own discretion to support

their teaching practice was not disbursed as Plaintiff requested. Plaintiff had submitted the forms,

paperwork, etc. first in his department and shortly on the heels of the citywide announcement of

allocations. Paperwork was repeatedly lost and claimed not received although he had documented

and there were emails, etc. The funds were never used for him.

178.    On repeated occasions and regularly in UFT meetings, Plaintiff voiced his concerns

to faculty regarding administrative pressure for grade fixing, administrative insistence on the

acceptance of plagiarized work, for passing failing students discriminately, and for passing

students who had never attended class. Plaintiff also voice his criticisms of the overbearing martinet style of Principal Dwarka, Principal St. Aubain, AP Crea Mason, AP Manolios, AP Huezo, et al. and at the administrative routine refusal to comply with their contractual obligations.

## FIRST CLAIM FOR RELIEF

### (Violation of 42 U.S.C. Section 1983
### First Amendment Retaliation against all Defendants)

179.    Plaintiff repeats and realleges all the preceding paragraphs of this complaint, as if fully set forth herein.

180.    Defendants, through the aforementioned conduct, have violated 42 U.S.C. Section 1983, by retaliating against him for filing union grievances and whistleblowing against the school administration by speaking out on matters of public concern and reporting acts of misconduct as follows: on June 14, 2022, Plaintiff contacted Susan Edelman, NY Post reporter and subsequently provided documentation of administrative pressure by Principal Dwarka, AP Crea Mason, AP Huezo, Principal St. Aubain, AP Troianos, et al. to fix grades, to pass plagiarized work, and a letter drafted by Georgia Lignou decrying routine underscoring of Bryant teachers and pressure to amend grades: on June 18, 2022, the NY Post ran an article focusing on Plaintiff, and longstanding practice of grade fixing at Bryant High School under Principal Dwarka.

181.    As a result, Plaintiff was falsely accused and reassigned away from the school.

182.    As a proximate result of Defendants' retaliatory actions against him, Plaintiff has suffered and continue to suffer a loss of monetary damages, humiliation, severe emotional distress, mental and physical anguish and suffering, and damage to his professional reputation and potential loss of employment, in an amount to be determined at trial.

## SECOND CLAIM FOR RELIEF

### (Violation of the ADEA)
### Discrimination, Retaliation, and Hostile Work Environment against NYCDOE)

183.    Plaintiff repeats and realleges all the preceding paragraphs of this Complaint, as if fully set forth herein.

184.    Plaintiff is over 40 years of age and thus protected by the ADEA.

185.    Plaintiff has been treated differently than his similarly situated, younger counterparts at the School. Specifically, he has received disciplinary letters to file, less-than-effective observation reports, and been the subject of a number of investigations. These documents have been issued pervasively and continuously for the past several years.

186.    Upon information and belief, Defendants have undertaken a constant and pervasive practice of targeting Plaintiff in an attempt to reassign him from the School and replace him with a younger counterpart.

187.    As a proximate result of Defendants' discriminatory actions against him, he has suffered and continue to suffer a loss of monetary damages, humiliation, severe emotional distress, mental and physical anguish and suffering, and damage to his professional reputation and potential loss of employment, in an amount to be determined at trial,

## THIRD CLAIM FOR RELIEF
### (Violation of the ADA)
### Discrimination, Retaliation, and Hostile Work Environment against NYCDOE)

188.    Plaintiff repeats and realleges all the preceding paragraphs of this Complaint, as if fully set forth herein.

189.    Plaintiff is disabled and thus protected by the ADA.

190.    Plaintiff has been treated differently than his similarly situated, nondisabled colleagues at the School. Specifically, he has received disciplinary letters to file, less-than-effective observation reports, and been the subject of a number of investigations. These documents have been issued pervasively and continuously for the past several years.

191.    As a proximate result of Defendants' discriminatory actions against me, he has suffered and continue to suffer a loss of monetary damages, humiliation, severe emotional distress, mental and physical anguish and suffering, and damage to his professional reputation and potential loss of employment, in an amount to be determined at trial.

## FOURTH CLAIM FOR RELIEF
### (Violation of the New York State Human Rights Law
### Discrimination, Retaliation, and Hostile Work Environment on the Basis of Age and
### Disability against All Defendants)

192.    Plaintiff repeats and realleges all the preceding paragraphs of this Complaint, as if fully set forth herein.

193.    Plaintiff is over forty years of age and suffers from a disability and thus protected by the NYSHRL.

194.    Plaintiff has been treated less well than his similarly situated, younger and/or non-disabled counterparts at the School. Specifically, he has received disciplinary letters to file, less-than-effective observation reports, and been the subject of a number of investigations. These documents have been issued pervasively and continuously for the past several years.

195.    Plaintiff has at all times performed his duties satisfactorily and in a similar fashion to his younger counterparts.

196.    As a proximate result of Defendants' discriminatory actions against him, Plaintiff has suffered and continues to suffer a loss of monetary damages, humiliation, severe emotional

distress, mental and physical anguish and suffering, and damage to his professional reputation and potential loss of employment, in an amount to be determined at trial.

## FIFTH CLAIM FOR RELIEF
### (Violation of the New York City Human Rights Law
### Discrimination, Retaliation, and Hostile Work Environment on the Basis of Age and Disability against All Defendants)

197.    Plaintiff repeats and realleges all the preceding paragraphs of this Complaint, as if fully set forth herein.

198.    Plaintiff is over forty years of age and suffers from a disability and thus protected by the NYCHRL.

199.    Plaintiff has been treated less well than his similarly situated, younger, and/or non-disabled counterparts at the School. Specifically, he has received disciplinary letters to file, less-than-effective observation reports, and been the subject of a number of investigations. These documents have been issued pervasively and continuously for the past several years.

200.    Plaintiff has at all times performed his duties satisfactorily and in a similar fashion to his younger counterparts.

201.    As a proximate result of Defendants' discriminatory actions against him, Plaintiff has suffered and continues to suffer a loss of monetary damages, humiliation, severe emotional distress, mental and physical anguish and suffering, and damage to his professional reputation and potential loss of employment, in an amount to be determined at trial. Plaintiff is over forty years of age and thus protected by the NYCHRL.

## JURY DEMAND

Plaintiff demands a trial by a jury on all of the triable issues of this Complaint.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for declaratory relief and damages as follows:

A.      A declaratory judgment that Defendants are in violation of 42 U.S.C. § 1983 based on retaliation for First Amendment protected speech;

B.      A declaratory judgment that Defendant NYCDOE is in violation of federal Age Discrimination in Employment Act (ADEA);

C.      A declaratory judgment that Defendant NYCDOE is in violation of federal American with Disabilities Act (ADA);

D.      A declaratory judgment that Defendants are in violation of New York State Human Rights Law;

E.      A declaratory judgment that Defendants are in violation of New York City Human Rights Law;

F.      Awarding Plaintiff compensatory damages (including but not limited to emotional distress damages) and punitive damages (to the extent available) pursuant to the 42 U.S.C. § 1983, the ADEA, the ADA, and New York State and City Human Rights Laws;

G.      Awarding Plaintiff costs; and

G.       Such other and further relief as to this Court may deem necessary, just and proper.

Dated:      Valley Stream, New York
            March 5, 2024

By:  _____

Michael Eisenberg
Plaintiff Pro Se
161 Derby Street
Valley Stream, NY 11360
mjeisenberg@gmail.com
(516) 395-7644

34

# EXHIBIT A

# New York State Division of Human Rights Complaint Form

## Individual filing the complaint

**Please provide the information requested below.**

**First Name**

Michael

**Middle Intial**

J

**Last Name**

Eisenberg

**Street Address**

161 DERBY ST.

**City**

Valley Stream

**State**

NY

**Zip**

11581

**Are you completing this form for someone else?**

No

## Your complaint

**Jurisdiction**

Employment

## Employment

**Please specify where the discrimination occurred**

Employment (including paid internship and domestic workers)

**Are you currently working for the employer you are filing against?**

Yes

**Date of hire**

09/06/2011

**Position held or applied for**

Pedagogue

**For employment and internships, how many employees does this person/company have?**

20 or more

**Acts of alleged discrimination: What did the person/company you are complaining against do? Check all that apply**

Denied me promotion/pay raise
Denied me training
Gave me a disciplinary notice or negative performance review
Suspended me
Paid me a lower salary than other co-workers doing the same job
Gave me different or worse job duties than other workers doing the same job
Denied my request for an accommodation for my disability, or pregnancy-related condition
Denied me leave time or other benefits
Harassed or intimidated me on any basis indicated here

Basis

**Basis of alleged discrimination in employment:**

**Retaliation** (if you filed a discrimination case before, were a witness or helped someone else with a discrimination case, or opposed or reported discrimination due to category listed on this page)

**Please specify what you did to oppose discrimination or how you engaged in protected activity.**

Union activity, sought union office, spoke out against discriminatory practices, refused to falsify grades, opposed retaliatory and harassment activity by administration and principal, grieved formally, retaliation suit with union

You are filing a complaint against

**Entity that discriminated against you:**

**Name of entity**

NYC Dept. of Education, Bryant H.S.

**Street Address**

48-10 31st Ave.

**City**

LIC

**State**

NY

**Zip**

11103

**In what county or borough did the violation take place?**

Queens

**Phone Number**

(718) 721-5404

**Email address**

**Fax Number**

**Company Website**

https://www.wcbryanths.org/

**Please provide the name, last name, and title of individual people who discriminated against you.**

Namita Dwarka, Dep. Supt.
Carlyn St. Aubain, Principal
Allissa Mason, AP
Bill Manolios, AP
Henry Huezo, AP
Moises Morales, AP
Maria Troianos, former AP
Supt. Tu

**Please provide the email addresses of individual people who discriminated against you.**

cstaubain@schools.nyc.gov
amason11@schools.nyc.gov
ndwarka@schools.nyc.gov
mmorales9@schools.nyc.gov
vmanoli2@schools.nyc.gov
hhuezo@schools.nyc.gov
mtroianos@schools.nyc.gov

**Date of the most recent act of alleged discrimination**

12/06/2022

## Description of discrimination

**Tell us more about each act of discrimination that you experienced. Please include dates, names of people involved, and other details. You must explain why you think these acts were discriminatory and how these acts are connected to the protected class (race, color, sex, disability, etc.) you selected previously.**

I was refused sabbaticals, refused work opportunities, received derogatory reviews, was harassed, by the individuals enumerated previously and by the administration at large based on my union activity, speaking out against discrimination, and whistleblowing.

## Declaration

**Based on the information contained in this form, I charge the herein named respondent(s) with an unlawful discriminatory practice, in violation of the New York State Human Rights Law.**

**I have not filed any other civil action, nor do I have an action pending before any administrative agency, under any state or local law, based upon this same unlawful discriminatory practice. (If you have another action pending and still wish to file, please contact our office to discuss.)**

**Please initial:**

ME

**I affirm under penalties of perjury, that I am the complainant herein; that I have read (or had read to me) the foregoing complaint and know the content thereof; that the same is true of my own knowledge except as to the matters therein stated on information and belief; and that as to those matters, I believe the same to be true.**

Michael J Eisenberg

**Enter today's date.**

05/08/2023

Additional information

**Your contact information**

**Email Address**

mjeisenberg@gmail.com

**Phone Number**

5163957644

**Mobile Phone**

**Contact Person (Optional)**

**First Name**

Carol

**Last Name**

Eisenberg

**Street Address**

**City**

**State**

**Zip**

**Email Address**

**Phone Number**

347-571-4490

**Mobile Phone**

**Contact person's relationship to me:**

Special needs

**I am in need of:**

Privacy. Keep my contact information confidential as I am a victim of domestic violence.

Settlement/Conciliation

**To settle this complaint, I would accept:**

End to harassment and retaliation, be made whole for all leave, sabbatical, and work opportunities denied.

Prior complaint

**Did you report or complain about the discrimination to someone else?**

Yes

**Date you reported or complained about discrimination:**

12/06/2022

**How exactly did you complain about the discrimination? (To whom did you complain?)**

Union grievances.

Other information

**Were other people treated better than you? How?**

Yes, other departmental colleagues.

**EXHIBIT B**

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | EEOC<br>FEPA | **520-2023-01461** |

|  |  |
|---|---|
| **New York State Division Of Human Rights** | and EEOC |
| *State or local Agency, if any* | |

| I Name *(indicate Mr., Ms., Mrs., Miss, Mr., Dr., Hon., Rev.)* | Home Phone | Year of Birth |
|---|---|---|
| Dr. Michael J. Eisenberg | 516-395-7644 | 1966 |

Street Address

23-50 Waters Edge Dr, Apt. 6L 161 Derby St.

QUEENS, NY 11360

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| New York City Department of Education | 501+ Employees | |

Street Address

4810 31ST AVE

ASTORIA, NY 11103

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

| DISCRIMINATION BASED ON | DATE(S) DISCRIMINATION TOOK PLACE | |
|---|---|---|
| | Earliest | Latest |
| Age, Disability, Retaliation | 09/01/2021 | 04/27/2023 |
| | Continuing Action | |

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

My name is Michael J Eisenberg and I am 56 years old and I have an ADA-qualifying disability and/or I was regarded as disabled by my employer. I began working for the New York City Department of education in or around 2011 as a Teacher.

I have earned multiple degrees including a PhD in Performance and Music which have given me the foundation to excel in my career which is illustrated through my performance at Respondent. Throughout my tenure at Respondent, I received ongoing positive performance reviews, and have been selected by senior leadership to training other music teachers due to my positive performance. When I reached the age of 55 years old, my opportunities for overtime, summer school, and special appointments suddenly discontinued. For the first time I received negative performance reviews, this included an indication that I showed no knowledge of music theory which seems to be a difficult conclusion to reach since I have decades of education and experience on the subject. In my school there are three other music teachers, each of them are under the age of 40 and none of them were treated with this level of scrutiny.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY - *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct.<br><br>**Digitally Signed By: Dr. Michael J. Eisenberg**<br><br>**05/10/2023**<br><br>*Charging Party Signature* | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT<br><br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | EEOC  FEPA | 520-2023-01461 |

| New York State Division Of Human Rights | and EEOC |
|---|---|
| *State or local Agency, if any* | |

In addition, despite my higher qualifications and tenure at Respondent my colleagues have been allowed additional benefits of employment that increase their wage and provide career advancement. This has included things such as teaching summer school, directing musicals, procurement of outside performances or events and other such benefits. In the case of the additional directing and event management opportunities, these opportunities are regulated by union and are required to be publicly posted, however Respondent has refused to follow this policy. As such those under 40 have been given opportunities I was not given, hurting my career advances and wage.

I have continually complained about the discrimination but instead of resolving the discriminatory behavior, Respondent his further retaliated against me, withholding employment opportunities, giving me negative performance reviews, and otherwise attempting to write me up for misconduct.

Due to the discrimination and retaliation my disability was exacerbated which caused me to miss work. Despite utilizing my accrued leave, and notifying Respondent that I required leave due to my disability Respondent wrote me up for misconduct due to my absences. This continued after I notified Respondent, I need an accommodation due to my disability. Despite this Respondent refused to remove the writeups from my file and continued to write me up for utilizing my accrued time and/or required accommodations.

I believe I have been discriminated and retaliated against based on my age and disability in violation of Age Discrimination Act of 1975, as amended and in violation of the Americans with Disabilities Act of 1990, as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct.  **Digitally Signed By: Dr. Michael J. Eisenberg**  **05/10/2023**  *Charging Party Signature* | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT  SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |

CP Enclosure with EEOC Form 5 (11/09)

**PRIVACY ACT STATEMENT:** Under the Privacy Act of 1974, Pub. Law 93-579, authority to request personal data and its uses are:

1. **FORM NUMBER/TITLE/DATE.** EEOC Form 5, Charge of Discrimination (11/09).

2. **AUTHORITY.** 42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117, 42 U.S.C. 2000ff-6.

3. **PRINCIPAL PURPOSES.** The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.

4. **ROUTINE USES.** This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws). Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination. This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions. A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.

5. **WHETHER DISCLOSURE IS MANDATORY; EFFECT OF NOT GIVING INFORMATION.** Charges must be reduced to writing and should identify the charging and responding parties and the actions or policies complained of. Without a written charge, EEOC will ordinarily not act on the complaint. Charges under Title VII, the ADA or GINA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed. Charges may be clarified or amplified later by amendment. It is not mandatory that this form be used to make a charge.

**NOTICE OF RIGHT TO REQUEST SUBSTANTIAL WEIGHT REVIEW**

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA. Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements. You will be told which agency will handle your charge. When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter. Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so <u>within 15 days</u> of your receipt of its findings. Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

**NOTICE OF NON-RETALIATION REQUIREMENTS**

Please **notify** EEOC or the state or local agency where you filed your charge **if retaliation is taken against you or others** who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge. Under Section 704(a) of Title VII, Section 4(d) of the ADEA, Section 503(a) of the ADA and Section 207(f) of GINA, it is unlawful for an *employer* to discriminate against present or former employees or job applicants, for an *employment agency* to discriminate against anyone, or for a *union* to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of, rights under the Act.

**EXHIBIT C**



**U.S. Department of Justice**

Civil Rights Division

_Disability Rights Section - 4 Con_
_950 Pennsylvania Ave, NW_
_Washington, DC 20530_

December 6, 2023

**VIA EMAIL:mjeisenberg@gmail.com**

Dr. Michael J. Eisenberg
23-50 Waters Edge Drive, Apt. 61
161 Derby Street
Queens, NY 11360

  Re:  EEOC Charge Against:  NYC Department of Education
     EEOC No.:      520-2023-01461

Dear Dr. Eisenberg:

<h3 style="text-align:center">NOTICE OF RIGHT TO SUE WITHIN 90 DAYS</h3>

  Because you filed the above charge with the Equal Employment Opportunity Commission, and the Commission has determined that it will not be able to investigate and conciliate that charge within 180 days of the date the Commission assumed jurisdiction over the charge, and the Department has determined that it will not file any lawsuit(s) based thereon within that time, and because you or your attorney has specifically requested this Notice, <u>you are hereby notified that you have the right to institute a civil action against the above-named respondent under Title I of the Americans with Disabilities Act of 1990, 42 U.S.C. 12111, et seq. If you choose to commence a civil action, such suit must be filed in the appropriate court within 90 days of your receipt of this Notice.</u> This should not be taken to mean that the Department has made a judgment as to whether or not your charge is meritorious.

  If you or your attorney has any questions concerning this matter or wish to inspect the investigative file, please address your inquiry to: New York District Office, U.S. Equal Employment Opportunity Commission.

Enclosed you will find a Notice of Rights under the ADA Amendments Act of 2008 (ADAAA). We are forwarding a copy of this Notice of Right to Sue to the Respondent in this case.

Sincerely,
Kristen Clarke
Assistant Attorney General
Civil Rights Division


BY: *Celeste A. Adams-Simmons*
Celeste A. Adams-Simmons
Senior Investigator
Disability Rights Section




Enclosures:
Notice of Rights under the ADAAA




cc:    NYC Department of Education
EEOC- New York District Office

2

JS 44 (Rev. 4-29-21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Michael Eisenberg

**(b)** County of Residence of First Listed Plaintiff    Valley Stream
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Michael Eisenberg, Pro Se; 161 Derby Street, Valley Stream, NY 11581 ⊞

## DEFENDANTS

New York City Department of Education; NEW YORK CITY DEPARTMENT OF EDUCATION, NAMITA DWARKA ⊞

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1  U.S. Government Plaintiff | ☒ 3  Federal Question *(U.S. Government Not a Party)* |
| ☐ 2  U.S. Government Defendant | ☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)* |

*Does this action include a motion for temporary restraining order or order to show cause? Yes ☐ No ☐*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                  *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | **SOCIAL SECURITY** | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | | ☐ 790 Other Labor Litigation | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 791 Employee Retirement Income Security Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☒ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | | ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. § 1983; ADA, ADEA, NYSHRL and NYCHRL

Brief description of cause:
Discrimination and retaliation on the basis of disability, age, and first amendment protected speech in violation of federal and state statutes.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE                                    DOCKET NUMBER

DATE    3/5/2024

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #            AMOUNT            APPLYING IFP            JUDGE            MAG. JUDGE

# CERTIFICATION OF ARBITRATION ELIGIBILITY

Local Arbitration Rule 83.7 provides that with certain exceptions, actions seeking money damages only in an amount not in excess of $150,000, exclusive of interest and costs, are eligible for compulsory arbitration. The amount of damages is presumed to be below the threshold amount unless a certification to the contrary is filed.

Case is Eligible for Arbitration  ☐

I, _____, counsel for_____, do hereby certify that the above captioned civil action is ineligible for compulsory arbitration for the following reason(s):

☑  monetary damages sought are in excess of $150,000, exclusive of interest and costs,

☐  the complaint seeks injunctive relief,

☐  the matter is otherwise ineligible for the following reason

## DISCLOSURE STATEMENT - FEDERAL RULES CIVIL PROCEDURE 7.1

Identify any parent corporation and any publicly held corporation that owns 10% or more or its stocks:  .

## RELATED CASE STATEMENT (Section VIII on the Front of this Form)

Please list all cases that are arguably related pursuant to Division of Business Rule 50.3.1 in Section VIII on the front of this form. Rule 50.3.1 (a) provides that "A civil case is "related" to another civil case for purposes of this guideline when, because of the similarity of facts and legal issues or because the cases arise from the same transactions or events, a substantial saving of judicial resources is likely to result from assigning both cases to the same judge and magistrate judge." Rule 50.3.1 (b) provides that " A civil case shall not be deemed "related" to another civil case merely because the civil case: (A) involves identical legal issues, or (B) involves the same parties." Rule 50.3.1 (c) further provides that "Presumptively, and subject to the power of a judge to determine otherwise pursuant to paragraph (d), civil cases shall not be deemed to be "related" unless both cases are still pending before the court."

# NY-E DIVISION OF BUSINESS RULE 1(c)

1.) Is the civil action being filed in the Eastern District removed from a New York State Court located in Nassau or Suffolk County?  ☐ Yes  ☑ No

2.) If you answered "no" above:
a) Did the events or omissions giving rise to the claim or claims, or a substantial part thereof, occur in Nassau or Suffolk County?  ☑ Yes  ☐ No

b) Did the events or omissions giving rise to the claim or claims, or a substantial part thereof, occur in the Eastern District?  ☑ Yes  ☐ No

c) If this is a Fair Debt Collection Practice Act case, specify the County in which the offending communication was received:  .

If your answer to question 2 (b) is "No," does the defendant (or a majority of the defendants, if there is more than one) reside in Nassau or Suffolk County, or, in an interpleader action, does the claimant (or a majority of the claimants, if there is more than one) reside in Nassau or Suffolk County?  ☐ Yes  ☐ No
*(Note: A corporation shall be considered a resident of the County in which it has the most significant contacts).*

## BAR ADMISSION

I am currently admitted in the Eastern District of New York and currently a member in good standing of the bar of this court.

☐ Yes    ☑ No

Are you currently the subject of any disciplinary action (s) in this or any other state or federal court?

☐ Yes  (If yes, please explain    ☑ No

I certify the accuracy of all information provided above.

**Signature:** _____

Last Modified: 11/27/2017

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Eastern District of New York

| | |
|---|---|
| Michael Eisenberg | ) |
| | ) |
| | ) |
| | ) |
| _Plaintiff(s)_ | ) |
| v. | ) |
| NEW YORK CITY DEPARTMENT OF EDUCATION; | ) |
| ET AL., | ) |
| | ) |
| _Defendant(s)_ | ) |

Civil Action No.

## SUMMONS IN A CIVIL ACTION

To: _(Defendant's name and address)_  See addendum.

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:    Michael Eisenberg
161 Derby Street
Valley Stream, NY 11581

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

_CLERK OF COURT_

Date: _____

_____

_Signature of Clerk or Deputy Clerk_

1) NEW YORK CITY DEPARTMENT OF EDUCATION;
   c/o Corporation Counsel for the City of New York,
   100 Church Street
   New York, NY 10007

2) NAMITA DWARKA, Deputy Superintendent Queens South &
   former Principal of William Cullen Bryant High School, in her
   official and individual capacity
   82-01 Rockaway Blvd
   Ozone Park, NY 11416

3) CARLYN ST. AUBAIN, Principal of William Cullen Bryant High
   School, in her official and individual capacity
   48-10 31st Ave
   Queens, NY 11103

4) ALLISSA CREA MASON, Assistant Principal of Arts, Guidance,
   PPS, & Student Engagement of William Cullen Bryant High School,
   in her official and individual capacity
   48-10 31st Ave
   Queens, NY 11103

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

☐ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

☐ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

☐ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

☐ I returned the summons unexecuted because _____ ; or

☐ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.


Date: _____                    _____
                                                          *Server's signature*

                                        _____
                                                          *Printed name and title*


                                        _____
                                                          *Server's address*

Additional information regarding attempted service, etc: