UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

**FILED**
**01/16/2025 in the**
**Clerk's Office U.S.**
**District Court,**
**EDNY, Brooklyn**
**Pro Se Office via**
**Electronic Submission**

---

MICHAEL EISENBERG,

                               Plaintiff,

                -against-

NEW YORK CITY DEPARTMENT OF
EDUCATION; NAMITA DWARKA, Deputy
Superintendent Queens South & former Principal
of William Cullen Bryant High School, in her
official and individual capacity; CARLYN ST.
AUBAIN, Principal of William Cullen Bryant
High School, in her official and individual
capacity; ALLISSA CREA MASON, Assistant
Principal of Arts, Guidance, PPS, & Student
Engagement of William Cullen Bryant High
School, in her official and individual capacity;
VASILIOS MANOLIOS, former Assistant
Principal of Organization of William Cullen
Bryant High School, in his official and individual
capacity; HENRI HUEZO, New York City
Department of Education Academic Policy,
Performance and Assessment Specialist & former
Assistant Principal of Data, Programming, &
Guidance of William Cullen Bryant High School,
in his official and individual capacity; MOISES
MORALES, Assistant Principal of Science and
World Languages of William Cullen Bryant High
School, in his official and individual capacity;

                              Defendants.

---

**AMENDED COMPLAINT**

**24-Civ.- 01661(HG)(VMS)**

**JURY TRIAL DEMANDED**

        Plaintiff MICHAEL EISENBERG, Plaintiff *Pro Se*, as and for his Complaint, against

Defendants, alleges as follows:

## PRELIMINARY STATEMENT

1.      Plaintiff brings this action seeking monetary and equitable relief based upon Defendants' violations of the federal Age Discrimination in Employment Act of 1967 ("ADEA"); the Americans with Disabilities Act ("ADA"); the New York State Human Rights Law, N.Y. Exec Law § 296 ("NYSHRL"); and the New York City Human Rights Law, N.Y.C. Administrative Code §§8-101 *et. seq.* ("NYCHRL"), based on discrimination due to age and disability. Plaintiff further brings this action pursuant to 42 U.S.C. § 1983 based on retaliation for First Amendment protected speech for his union activities as a United Federation of Teachers ("UFT") member while employed as a teacher for the New York City Department of Education ("DOE") at William Cullen Bryant High School ("the School") in Queens, New York, and for speaking out on matters of public concern.

2.      The conduct complained of in this action involves Defendants' discriminatory and retaliatory conduct against Plaintiff as well as favorable treatment exhibited on behalf of Defendants towards similarly situated younger and non-disabled music teachers at the School.

3.      Additionally, the conduct complained of in this action involves Defendants' coercion, retaliation, and interference with Plaintiff's exercise of his First Amendment rights. The retaliatory conduct following protected activity includes, but is not limited to (1) adverse performance evaluations, (2) frivolous and fraudulent investigations, often without notice in violation of contract, (3) disciplinary summonses, problem codes, and adverse letters to his employment file, (4) defamation of character, and (5) the deprivation of commensurate wages and loss of eligibility for overtime and other per-session and professional opportunities, which together constitute adverse employment actions.

4.     Additionally, the conduct complained of in this action involves Intentional Infliction of Emotional Distress ("IIED"); Conspiracy to Commit Fraud; Libel per se; and Title IX violations.

## JURISDICTION AND VENUE

5.     This Court has subject matter jurisdiction over these claims pursuant to 28 U.S.C. § 1331, as this matter involves federal questions.

6.     This Court has the power to issue declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202. This Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367(a).

7.     This action's venue properly lies in the United States District Court for the Eastern District of New York, pursuant to 28 U.S.C. § 1391, because a substantial part of the acts or omissions giving rise to this action occurred in this District and Defendants are subject to personal jurisdiction in this District.

## PARTIES

8.     Plaintiff Michael Eisenberg is a resident of Queens County and the State of New York. He was born in 1966 and is 58 years old. He suffers from a disability related to migraine headaches, which significantly restricts him from walking, talking, sleeping, working, seeing, and maintaining balance during a migraine episode, for which his administration is aware.

9.     At all times relevant herein, Defendant New York City Department of Education ("DOE") is a city school district established pursuant to Title II, Article-52-A of the New York State Education Law, NY Educ. Law Section 2590 *et seq.*

10. At times relevant herein, Defendant Namita Dwarka was the Principal of William Cullen Bryant High School, a high school in Queens, within the New York City Department of Education, and is sued in her official and individual capacity. She left as Principal of William Cullen Bryant High School in summer 2022 and is currently the Deputy Superintendent of Queens South High Schools.

11. At times relevant herein, Defendant Carlyn St. Aubain is the Principal of William Cullen Bryant High School since 2022, and Assistant Principal of William Cullen Bryant High School since 2017, a high school in Queens, within the New York City Department of Education, and is sued in her official and individual capacity.

12. At times relevant herein, Defendant Alissa Crea (married name Mason) was an Assistant Principal of William Cullen Bryant High School, a high school in Queens, within the New York City Department of Education, and is sued in her official and individual capacity.

13. At times relevant herein, Defendant Vasilios Manolios ("Manolios") was an Assistant Principal of William Cullen Bryant High School, a high school in Queens, within the DOE, and is sued in his official and individual capacity. He left the School in 2023.

14. At times relevant herein, Defendant Henri Huezo ("Huezo") was an Assistant Principal of William Cullen Bryant High School, a high school in Queens, within the DOE, and is sued in his official and individual capacity. He left the School in 2023.

15. At times relevant herein, Defendant Moises Morales ("Morales") was an Assistant Principal of William Cullen Bryant High School, a high school in Queens, within the DOE, and is sued in his official and individual capacity.

**STATEMENT OF FACTS**

16.     Since September 2011, Plaintiff has been a music teacher within the DOE. At all times relevant herein, he held greater seniority and tenure and comparable NYS and NYC certifications, appointments, education, experience, and pedagogical skills to his younger, non-disabled music department counterparts at the School, namely Garrett Lanzet, Alex Somer, and George Weisman (hereinafter "Comparators").

17.     Plaintiff previously worked at Veritas Academy within the DOE and received effective and highly effective ratings there in the 2013-17 school years.

## 2017-2018 School Year

18.     On September 8, 2017, former Principal Namita Dwarka and AP Maria Troianos, AP of Arts, hired Plaintiff. The school needed to fill an urgent vacancy after a non-tenured, uncertified, first-year music teacher (under the age of 40) failed NYC certification exams and was terminated. As a result, the school interviewed and hired Plaintiff on the same day, despite the fact that this was outside the open-market transfer period. This hiring decision was contrary to the School's usual practice of hiring only non-tenured teachers under the age of 40.

19.     On the date of hiring, September 8, 2017, Plaintiff informed AP Troianos of his susceptibility to migraines and his recent migraine of September 6, 2017. 

20.     From September 2017 onward, Plaintiff received fewer tutoring and per-session assignments than Comparators. Specifically, he was assigned only one day of tutoring per week during the 2017-18 school year, while his Comparators received three to four days. Plaintiff first received notice of the disparity in per-session allocation in Spring 2024.

21.     On or about September 15, 2017, and regularly thereafter through the present, Plaintiff actively participated in union meetings, engaging in discussion of matters of public concern regarding unethical and illegal administrative practices and policies at the School,

practices and policies including pressuring teachers to fix grades and constructively to terminate aged employees.

22.     On or about September 25, 2017, AP Troianos informally observed Plaintiff's teaching and rated him mostly effective in 6 out of 8 categories in an observation report, dated September 28, 2017.

23.     On October 16, 2017, AP Troianos approved Plaintiff's attendance and School's payment of a professional development meeting ("PD").

24.     On October 31, 2017, Plaintiff called out sick. AP Crea Mason, then a fellow art departmental colleague, contacted Plaintiff on his cellphone, texting personal questions regarding his health and his mother's health, with neither Plaintiff's authorization of such contact, nor disclosure to her of his absence.

25.     On November 9, 2017, Plaintiff attended the PD AP Troianos had committed the School to pay on his behalf.

26.     On or about November 9, 2017, AP Lisa Diaz-Rodriguez, AP of World Languages, offered Plaintiff a sixth class to be paid as a shortage area coverage in Spanish and Plaintiff accepted this offer.

27.      On or about November 9, 2017, Plaintiff was asked by AP Henri Huezo, AP of Data, Programming, & Guidance, for report card grades for students for the previous semester, when Plaintiff was never assigned those students and was not even assigned to the school then. AP Huezo provided Plaintiff with blank report cards for the first semester for approximately 25 students.

28.     On or about November 9, 2017, Plaintiff reported this to AP Diaz-Rodriguez and showed her the blank forms. Plaintiff declined to provide the requested grades for students he had not taught for the semester he was not assigned to Spanish. Subsequently, Plaintiff was

repeatedly advised by AP Huezo and staff that he was not in compliance for refusing to enter these grades of non-students.

29.     Shortly after, Defendants began retaliating against Plaintiff with poor ratings; denial of per-session and professional opportunities; a pattern of frivolous baseless investigations; and public ridicule for Plaintiff's refusal to "fix grades" for students not previously assigned to him.

30.     On or about November 15, 2017, AP Troianos did not offer Plaintiff per-session compensation for an afterschool event but then reprimanded him for not staying past work hours. Comparators received per-session compensation for their participation in this event.

31.     On or about November 22, 2017, AP Troianos reversed Plaintiff's written approval for his professional development to be paid by the school and required him to pay its cost of $250 out of pocket.

32.     On or about November 28, 2017, AP Troianos formally observed Plaintiff, and on November 30, 2017, gave him an observation report with four effectives and four developings.

33.     On November 28, 2017, Plaintiff met with AP Troianos to discuss inaccuracies in the observation report, whereby student statements and student performance were misrepresented. AP Troianos ended the meeting abruptly shouting at and reprimanding Plaintiff in an open public space in front of other staff members.

34.     On December 4 & 12, 2017, Plaintiff protested observation report unfairness by email to Principal Dwarka.

35.     On December 7, 2017, Plaintiff filed an APPR complaint with the UFT about the November 30, 2017 observation report.

36. On December 13, 2017, Plaintiff experienced a severe migraine that prevented him from sleeping, talking, and walking, in response to the escalation in tension at the School and the emotional trauma it provoked in him.

37. On December 21, 2017, Plaintiff had an APPR complaint meeting with Principal Dwarka and AP Troianos where Plaintiff pointed out inaccuracies in the observation report.

38. The next day on December 22, 2017, Plaintiff received a disciplinary notice for January 5, 2018, in retaliation for his APPR complaint.

39. On January 5, 2018, before the disciplinary meeting, Plaintiff complained about being required to attend the disciplinary meeting during his lunch in violation of contract, which complaint he also emailed to Superintendent Elaine Lindsey, with a falsified program AP Troianos had produced to justify the non-contractual scheduling of the meeting.

40. On January 9, 2018, in retaliation for his whistleblowing to Superintendent Lindsey of the violation of contract, a matter of public interest, given the School's habitual policy and practice of flouting contractual rights of teachers, Plaintiff was called by AP Vasilios Manolios to two consecutive disciplinary meetings for January 11, 2018, with AP Manolios, AP Huezo, and Principal Dwarka. Plaintiff was accused of (1) unprofessional conduct in the meeting of November 28, 2017 with AP Troianos and (2) "Deliration [sic] of duties," AP Manolios alleging falsely that Plaintiff used class instructional time to email Principal Dwarka and the District Superintendent on January 5, 2018. These charges were memorialized in a disciplinary letter to file on January 22, 2018.

41. On January 17, 2018, AP Troianos unfairly observed Plaintiff *during a test she had scheduled,* for which Plaintiff filed an APPR complaint.

42. On the following day, January 18, 2018, in retaliation for union activity and refusal to fix grades, police were called regarding sexual misconduct allegations against Plaintiff.

Plaintiff was not notified of the investigation until 2 ½ months later and was never informed of the student's identity or the charges alleged. A New York City Special Commissioner of Investigation ("SCI") investigator eventually told Plaintiff on March 29, 2018, that the allegation was unsubstantiated.

43.     On January 24, 2018, Plaintiff requested the statements that were cited as allegedly corroborating the charges of January 11, 2018, from Principal Dwarka. Plaintiff also requested removal of outdated adverse file items over three-years old pursuant to the UFT-DOE contract.  The administration did not comply with this contractually-stipulated obligation until June 2019, 17 months later.

44.     On January 25, 2018, AP Troianos issued Plaintiff an observation report with four developings and three ineffective ratings, claiming a lack of student engagement for the observed midterm.  This informal observation of students taking a test lasted the entire period and was out of compliance with the contract regarding the duration of formal observations.

45.     On January 30, 2018, Plaintiff's sixth class of *in-license* Mixed Choir choral instruction, the only non-beginner class Plaintiff had been assigned, was withdrawn from him. Plaintiff was left teaching Spanish *out of license* without remuneration for the shortage-area duty. Younger music departmental colleague George Weisman, aged approximately 32, was assigned the advanced choral class as a sixth class in addition to three other advanced music classes he had already been assigned within his license area. Weisman received additional compensation for this added class. All three significantly younger music departmental colleagues, Weisman, Alex Somer, aged approximately 27, and Garrett Lanzet, aged approximately 29, were assigned to multiple advanced music classes in their license area.

46.     On January 31, 2018, Plaintiff had an APPR complaint meeting with Principal Dwarka and AP Troianos. After the meeting, Principal Dwarka reported to his UFT

Representative Georgia Lignou that there were complaints regarding his work by students and that, according to AP Troianos, "something was brewing." Ostensibly, this wording was a reference by AP Troianos to the police investigation of which Plaintiff lacked notice.

47.    On February 26, 2018, Plaintiff reported to AP Troianos a spate of migraines triggered by the stress of the unfair treatment and requested time off to see his neurologist Dr. Jyh-Haur Lu on March 7, 2018.

48.    On March 29, 2018, AP Moises Morales interrupted his class and escorted Plaintiff to meet SCI investigator Ronald A. Connors and another SCI representative, where Plaintiff was interrogated about sexual misconduct allegations, with no disclosure about, who, what, or when, except the date given of occurrence as January 18, 2018. In violation of contract, Connors declined to provide any investigation notes, allegations, or complainant information.

49.    On or about April 1, 2017, Mr. Weisman was hired to direct the School musical, which opportunity was not made known to Plaintiff, in violation of contract.

50.    On April 10, 2018, AP Troianos observed Plaintiff and issued him an observation report with 5 effectives and 3 developings.

51.    On or about May 15, 2018, Plaintiff was contacted about missing student grades for the first marking period and advised he must provide them as per school grading policy.

52.    On May 30, 2018, Plaintiff was asked by AP Troianos to accompany on piano a concert with a class of students that Plaintiff suspected might include the unidentified complainant of the SCI investigation. Plaintiff declined the request. Mr. Weisman alluded to the investigation and allegations in conversation with Plaintiff on the same day. Upon information and belief, the School had apprised Mr. Weisman of the investigation and allegations, violating Plaintiff's right to privacy and Chancellor's Regulations regarding such a matter.

53. The next day, on May 31, 2018, OSI Supervising Investigator Jeffrey Anderson emailed Plaintiff stating SCI Investigation 2018/0477 had been closed and that no further action would be taken at this time. In violation of contract and Chancellor's Regulations, Principal Dwarka never committed the details of the investigation of January 18, 2018 to writing, and never supplied such a written summary to Plaintiff as required contractually. To date, Plaintiff has no knowledge of any details of this investigation

54. For the 2017-18 school year, Plaintiff received an MOTP score of Developing overall but an overall composite score of Effective based on his Effective MOSL score.

## 2018-2019 School Year

55. On September 22, 2018, newly assigned AP Allissa Crea Mason and a guidance counselor met with Plaintiff and pressured him to pass a student retroactively for the previous year so he could play soccer. Plaintiff refused.

56. On September 24, 2018, AP Crea Mason visited Plaintiff's class and began ridiculing his lesson and teaching in front of students. AP Crea Mason issued Plaintiff mostly developing ratings on the observation report dated October 22, 2018.

57. On November 20, 2018, Plaintiff was observed by AP Crea Mason and received four effective and four developing ratings on the December 19, 2018 observation report.

58. On December 12, 2018, Plaintiff reported to AP Crea Mason that a student on the team was failing; School policy mandated removal of players from teams if failing; thereafter AP Crea Mason began harassing Plaintiff about his grading of the student.

59. Between tax year 2018 and 2024, the School and the DOE began following a policy and practice of paying greater per-session to Comparators Lanzet, Somer, & Weisman

than to Plaintiff, of which disparity, Plaintiff first received notice in Spring 2024. Over the following years, this pay disparity grew, proportionate to Plaintiff's increase in age, with the largest gap in 2023 and 2024. This difference is even more significant considering this calculation included Plaintiff's outside non-Bryant per-session earnings. In contrast, Comparators' per-session earnings were solely from School-allocated work.

| Year | Weisman | Lanzet | Somer | Eisenberg |
|------|---------|--------|-------|-----------|
| 2018 | $15,402 | $13,174 | $11,747 | $3,518 |
| 2019 | $19,787 | $19,059 | $14,073 | $9,432 |
| 2020 | $10,790 | $6,654 | $5,694 | $2,622 |
| 2021 | $8,563 | $5,263 | $5,260 | $966 |
| 2022* | $12,075 | $9,056 | $12,295 | $6,214 |
| 2023 | $22,465 | $15,243 | $18,444 | $1,332 |
| 2024 (to date) | $22,953 | $13,107 | $12,081 | $263 ** |

*Note: Plaintiff's 2022 earnings may have been underreported due to a delay in payment for a summer 2021 program and this also reflects years of backpay for a retroactive citywide contractual adjustment prior to Comparators' employment with the DOE.

**Note: On December 8, 2024, Plaintiff's 2024 earnings were discovered to be overreported. The City Office of Payroll Administration misreported his earnings to https://www.seethroughny.net/payrolls/city-of-new-york as $5,561 but he was paid only $263.

60.     On January 31, 2019, Plaintiff was observed by AP Crea Mason and received four effective and four developing ratings on the March 12, 2019 observation report.

61.     In Spring of 2019, Plaintiff reported Student X's failing grade and aggressive behavior to her guidance counselor. Thereafter, Student X lodged a sexual misconduct complaint that Plaintiff had looked at her "funny" and touched her hand in piano class. Plaintiff was investigated but Student X was not removed from Plaintiff's class, nor was Plaintiff informed of any allegation, in violation of Chancellor's Regulations 830-A. Allegations were found unsubstantiated by the DOE but Principal Dwarka pursued the matter, issuing a disciplinary letter that falsely misquoted Plaintiff as having acknowledged the allegation to be true.

62. On April 1, 2019, Plaintiff was observed by AP Crea Mason and received four ineffective and three developing ratings on the May 29, 2019 observation report.

63. On May 30, 2019, Plaintiff was summoned to a fact-finding disciplinary conference on June 10, 2019, with no information given except RE: case 19-06521X.

64. On June 14, 2019, Principal Dwarka issued Plaintiff a disciplinary letter to file, dated June 12, 2010, alleging poor judgment for allegedly touching a student's hand. Plaintiff received a letter to file even though all investigative findings were returned unsubstantiated. Student statements in no way substantiated any of the allegations; in one written statement, a peer stated thar she suspected the student making allegations was lying and trying to get Plaintiff into trouble.

65. On June 18, 2019, Plaintiff filed a Step 1 grievance to remove the letter from his file, which Principal Dwarka denied on June 20, 2019. Plaintiff's grievance was later scheduled for arbitration on October 8, 2021, but was then postponed.

66. For the 2018-19 school year, Plaintiff received an APPR Overall MOTP rating of Developing (2.22) but an Effective composite rating overall based on the MOSL rating.

**2019-2020 School Year**

67. On September 13, 16, & 19, 2019, in reaction to the hostile work environment, Plaintiff experienced the longest visual migraines ever, causing impaired vision. Previously, he only had had one visual migraine per year.

68. On January 24, 2020, Plaintiff visited Dr. Lu for an exacerbated migraine condition.

69.     In February 2020, Plaintiff submitted his Arts Studio Funding Allocation Order to AP Crea Mason but it was never allocated.

70 .    On or around March 25, 2020, AP Crea Mason demanded Plaintiff provide extra medical documentation for his COVID-related absences directly to her rather than, as per standing protocol, to the attendance secretary, out of compliance with DOE, HIPAA, & FERPA policy.

71.     Beginning on or around April 23, 2020, AP Crea Mason began harassing Plaintiff for assigning failing grades to Student H, blaming Plaintiff for Student H's failing grades.

72.     On or around April 23, 2020, another DOE teacher with the same name, Michael Eisenberg, informed Plaintiff that he had received harassing emails and disciplinary letter threats from the School. The teacher stated that he assumed they were intended for Plaintiff as this other Mr. Michael Eisenberg was not at the School.

73.     For the 2019-20 school year, Plaintiff did not receive an APPR overall rating due to the COVID pandemic.

**2020-2021 School Year**

74.     On or about September 15, 2020 and thereafter for each school year to the present, Plaintiff was assigned no per-session hours for the school year, unlike his Comparators.

75.     In September 2020, Plaintiff was diagnosed with high-risk morbidities for COVID, for which the School was aware. As migraines are a common occurrence of COVID's impact on nerves, and as he was primary caregiver to an elderly mother, Plaintiff feared

contracting COVID and sought out frequent testing as a necessary accommodation for his disability.

76.     On September 19, 2020, Plaintiff was assigned to teach violin classes *out of license*; he was also assigned to teach three French classes *out of license* as well.

77.     On September 25, 2020, Plaintiff was denied per session for alleged budgetary constraints. Plaintiff learned, however, that Comparators Weisman, Lanzet, and Somer, all aged under 40, were all permitted to engage in per-session activities,

78.     On October 9, 2020, Plaintiff requested to teach remote classes offsite since being assigned both remote and in-person classes without agreeing to it is in violation of the contractual agreement. He was denied this accommodation for his disability by Principal Dwarka.

79.     On October 29, 2020, Principal Dwarka mistakenly believed Plaintiff was supposed to be teaching a class when in fact he was scheduled for lunch. Plaintiff was reprimanded with AP Huezo present following administration's mistake.

80.     Throughout October and November 2020, Plaintiff continued to be harassed by AP Crea Mason, Principal Dwarka, and AP Huezo for his online and in-person instruction and he was often visited, surveilled, and subjected to adverse scrutiny that undermined Plaintiff's ability to teach. This incurred escalating tension that manifested in November and December of 2020 in the worst migraines Plaintiff had ever experienced to date and in an outbreak of Shingles.

81.     Beginning on November 3, 2020 through 2024, the School began denying Plaintiff contractually-provided COVID testing, absence, and vaccine time-off, critical in

relation to his disability, since his migraines were greatly exacerbated when he contracted COVID several times.

82. From November 18, 2020 through November 25, 2020, Plaintiff experienced the worst migraines he had ever experienced to date, lasting a total of seven days, significantly restricting him from engaging in major life activities including walking, talking, sleeping, working, seeing, maintaining balance, standing, thinking, singing and playing an instrument (the latter two items necessary for his work). He visited Dr. Lu on November 25, 2023. Thereafter, Dr. Lu prescribed costlier stronger medication, i.e. Sumatriptan, Topiramate, and Ajovy (at $8K per shot). He also saw Dr. Nancy Fan Paul, ophthalmologist and otolaryngologist on November 25, 2020 for the conditions. Plaintiff's headache was accompanied by nausea and vomiting. He was given medication to help relieve the symptoms. A week later, Plaintiff caught Shingles as a further reaction to the stress endured from repeated harassment and retaliatory action by Bryant administration. Plaintiff's blood pressure also rose to approximately 135-140 in comparison to his normal range of 110-120 previously.

83. On December 6, 2020, Plaintiff requested a full comprehensive accounting of his attendance to verify administration's accurate reporting from Attendance Secretary Mimi Diakos. This request was never responded to until October 2023 and only fully provided in Spring 2024. Plaintiff sought exact reporting to calculate how he might best utilize and preserve contractual sick days for episodes of migraines and for visits to his neurologist.

84. On December 11, 2020, Plaintiff emailed AP Huezo about "ongoing attacks on performance over three years' time triggering migraines…[which] escalated…to lasting over a week."

85.     On January 25, 2021, Plaintiff wrote to AP Crea Mason advocating for relent from administrative harassment that triggered and severely exacerbated his migraine condition: "I have previously noted to you the sustained harassment and derogatory treatment you have directed towards me, berating me in front of my students and peers. As I noted in a previous communiqué, this unrelenting abuse directly provoked my spate of migraines and incidence of Shingles."

86.     In March 2021, Plaintiff submitted Arts Studio Funding Allocation Order to AP Crea Mason but Plaintiff never received said funding. Plaintiff's younger colleagues, however, received requested funding.

87.     In March 2021, Plaintiff began a union harassment complaint. Thereafter, for the next year, UFT Harassment Representative Diana Vosswinkel addressed Plaintiff's harassment concerns, eventually in audience with Superintendent Lindsey. In addressing the harassment to Superintendent Lindsey, Ms. Vosswinkel used Plaintiff's case as a platform to present harassment concerns of another fellow teacher over 40 at the School who was suffering from the same ageist policy and practice of constructive termination targeting aged teachers.

88.     On March 23, 2021, at a scholarship meeting with AP Crea Mason, AP Crea Mason began pointing fingers at Plaintiff and yelling at him. As per instructions given by Amy Arundell, Plaintiff stated he did not feel comfortable with the tone of the meeting and wished for UFT representation. AP Crea Mason became angry and followed Plaintiff into the secretary foyer and continued to berate him in front of the secretary and another teacher.

89.     On April 5, 2021, Plaintiff received a disciplinary notice alleging neglect of duty and insubordination for leaving class a few minutes early and arriving to another class a few minutes late. This was the first week back from COVID-19 and many of the clocks throughout

the building were inaccurate. In fact, many teachers were late to assignments because of this. However, upon information and belief, only Plaintiff was singled out and reprimanded. Plaintiff ultimately received a disciplinary letter to file from AP Manolios dated April 16, 2021.

90.     On April 30, 2021, AP Crea Mason observed Plaintiff and gave him all developing ratings on an observation report dated June 1, 2021.

91.     On May 6, 2021, Plaintiff met with AP Crea Mason and AP Carlyn Toussaint (later Principal St. Aubain, married name) to discuss student plagiarism; he was reprimanded for failing a student. Again, on May 14, 2021, he reported student plagiarism and was informed by AP Crea Mason he could not fail the student.

92.     On June 9, 2021, AP Crea Mason conducted an observation. Plaintiff received four developing ratings and two effective ratings in an observation report dated June 23, 2021.

93.     On June 22, 2021, AP Crea Mason visited Plaintiff's classroom with a failing absentee student and angrily confronted him regarding the student's failing grades in front of the student.

94.     For the 2020-21 school year, Plaintiff received an MOTP score of Developing overall (2.13) but an overall composite score of Effective based on his MOSL score.

## 2021-22 School Year

95.     On or around September 4, 2021, Principal Dwarka announced disparagingly to all faculty at a conference meeting that she had a terrible announcement. She said, "I'm 50. I'm old," confirming a schoolwide policy of disparaging age and of hiring predominantly young

untenured staff members to the exclusion of older staff candidates and proactively pursuing a policy and practice of constructively terminating aged teachers.

96.     On or about September 4, 2021 and thereafter, Plaintiff was denied access by the School and supervisors to departmental curriculum and materials, unlike Comparators.

97.     On September 14, 2021, Plaintiff had an APPR complaint meeting held on September 17, 2021 with Principal Dwarka and AP Crea Mason to protest unfair rating..

98.     In September 2021, Plaintiff requested multiple per-session opportunities and never heard back. Plaintiff later discovered that these per-session opportunities were provided to his younger, less senior colleagues.

99.     On September 24-28, 2021, Plaintiff was harassed about taking time off for Covid testing. Although following all guidelines, informed about student testing positive with Covid, promptly taking a test same day, and providing extensive corroborating documentation, Plaintiff was repeatedly informed he would be denied the contractual stipulation that these days be taken out of CAR days. After much back and forth, he was ultimately granted his request, but only after numerous requests for documentation and repeated denials for no just reason and contrary to contractual agreement.

100.     On October 5, 2021, Plaintiff spoke out in an email to Principal Dwarka against the caustic ageist tone of AP Manolios's email of October 1, 2021, and of such "administrative systemic abuse of staff rights…[and] ongoing policy of ageism."

101.     On October 8, 2021, Plaintiff's union filed a demand for arbitration on his behalf finding sufficient merit for grievance of June 18, 2019.

102.     On December 8, 2021, Plaintiff protested to Principal Dwarka about the denial of contractually-stipulated per-session time, and to AP Crea Mason about his receiving less per session than Comparators.

103.     On December 15, 2021, AP Manolios notified Plaintiff of a Disciplinary Conference for December 17, 2021, where AP Crea Mason & AP Manolios discussed Plaintiff's allegedly unprofessional emails, in which he complained of (1) non-allocation of student instruments, violating DOE's commitment to equal instructional resources; (2) non-allocation of Social Emotional Learning (SEL) time to teachers as per contract; and (3) unequal per-session allocation. AP Manolios noted his discussion of Plaintiff's "adverse" performance with Comparator Weisman. When Plaintiff raised the unprofessional nature of discussing an employee's performance with a fellow employee, AP Manolios became angry.

104.     On December 20, 2021, Plaintiff was harassed by Attendance Secretary Diakos for taking a day off after a booster as per contractual provision; he was also asked for additional documentation beyond what was required by contract.

105.     On December 22, 2021, Plaintiff was denied a half-sabbatical for shortage *in license*; although he was currently teaching *out of license* area and music is not a shortage area.

106.     On the same day, Plaintiff filed grievances for unfair denial of per-session opportunities and failure to allocate SEL time as per contractual agreement.

107.     On January 4, 2022, Plaintiff and UFT Representative Lignou met with Principal Dwarka, AP Crea Mason, and AP Manolios regarding grievances. Principal Dwarka treated Plaintiff rudely, saying "Excuse you" in a hostile tone and thereafter refused to address Plaintiff

or allow Plaintiff to speak. The next day, he was scheduled for a disciplinary conference for insubordination.

108.    On January 6, 2022, Plaintiff reported to Principal Dwarka administrative "deriding, insulting, and mocking in front of…students, peers, staff….demeaning [and] undermining [his] work." He also submitted a salary inquiry through the UFT for unfair denial of sabbatical. The same day, AP Crea Mason issued him an observation report with five ineffective and three developing ratings, the lowest score he had ever received at the DOE.

109.    On January 7, 2022, Principal Dwarka and AP Crea Mason filed an OEO claim against Plaintiff for alleged sexual harassment for the use of the word "Schettini" in an email on January 7, 2021 addressed to Principal Dwarka, AP Crea Mason, and UFT Representative Lignou, requesting a "schedule" (not Schettini) to work on what was perceived by AP Crea Mason and Principal Dwarka as his poor instruction and pedagogy. AP Crea Mason and Principal Dwarka based their fraudulent assertion that Plaintiff was proposing they engage with him in a lewd sexual act on their citation of an outlandish obscene entry recorded in Urban Dictionary. This was indeed the name of Plaintiff's advising attorney as a legal intern for the Long Island Catholic Charities Immigration Division at the time. Two hours later, Plaintiff caught the auto-corrected typo and replied all to correct the word "Schettini" to "schedule." This follow-up email clarification was withheld from the OEO by Principal Dwarka and AP Crea Mason in their complaint. Plaintiff was first informed of this allegation on October 18, 2023, in violation of the Chancellor' s Regulation A-830 stipulation for advising a subject of an investigation.

110.     On January 21, 2022, Plaintiff reported behavioral and grade concerns regarding Students G & L to Guidance Counselor Trisha Ramcharran, a matter first reported to her and AP Crea Mason in October 2021.

111.     Beginning on January 26, 2022, Ms. Ramcharran began harassing Plaintiff regarding Students G and L, visiting and interfering with his class without notice. Plaintiff complained in writing to Ms. Ramcharran, Principal Dwarka, and AP Crea Mason about these visits and about Students G's & L's efforts clandestinely to videorecord him.

112.     On February 7, 2022, AP Crea Mason issued Plaintiff a counseling memorandum, dated January 24, 2022, and AP Manolios issued Plaintiff a disciplinary letter, dated January 28, 2022.

113.     On or around February 28, 2022, AP Crea Mason falsified a signature and date on her defective untimely observation report of Plaintiff to validate a poor review.

114.     On March 16, 2022, Plaintiff filed a grievance for violation of Plaintiff's rights as per Articles 2 & 20 of the collective bargaining agreement.

115.     On March 29, 2022, Plaintiff was called out of instruction and humiliated in a meeting with several APs, a student, and a parent, wherein AP St. Aubain (Toussaint) complained about his teaching of Student H, in front of Student H, and in front of his parent; where Principal Dwarka and AP Crea Mason slandered Plaintiff's professional capacity, in front of APs, by stating that Plaintiff's piano student U had not attained piano mastery through Plaintiff's instruction, but through an "other" piano instructor. Student U denied the existence of any such "other" teacher.

116.     On April 22, 2022, AP Morales lodged a sexual misconduct with a minor charge against Plaintiff with the SCI, of which allegation, in violation of contract and his rights, Plaintiff was never informed until December 6, 2024, by Defense Counsel Corinthian in RULE 26(a)(1)(A) Initial Disclosures.

117.     On April 25, 2022, Plaintiff inquired of Principal Dwarka as to the status of any follow-up regarding the ageist remarks and treatment Plaintiff had reported regarding AP Huezo and AP Manolios without reply.

118.     On April 27, 2022, Plaintiff exercised his protected right to present a complaint of administrative harassment to the Chancellor's representative in an arbitration hearing.

119.     On May 16, 2022, Plaintiff filed a grievance for denial of per session which his younger similarly situated colleague Mr. Weisman had been awarded.

120.     On May 27, 2022, Plaintiff reported misreporting of his absence record to Attendance Secretary Diakos.

121.     On June 3, 2022, AP Crea Mason issued Plaintiff an informal observation with all developing ratings for an observation conducted on April 13, 2022.

122.     On June 15, 2022, Plaintiff began to provide documentation to New York Post reporter Susan Edelman about School pressure to fix grades; discriminatory policies treating aged teachers inferior to younger comparators, denying them equal pay and per session; and of a policy and practice of constructive termination of aged employees among other matters.

123.     On June 18, 2022, the NY Post ran three versions of an article decrying pressure to fix grades and evasion of ethics under Principal Dwarka, based on information provided by

Plaintiff. Two versions clearly identified Plaintiff, and one, as the only music teacher with five years residency at the School, and with outstanding plagiarism complaints against the School. Later, Principal Dwarka publicly referenced the article in a faculty meeting, quite upset. Upon information and belief, the exposure of these policies and practices by the NY Post article was a motivating factor leading the DOE to move Principal Dwarka out of her role as Principal at the School in the summer of 2022.

124.    On June 21, 2022, Plaintiff was pressured by AP Crea Mason to accept plagiarized work presented by a student for him to be able to receive a passing grade for the year.

125.    For the 2021-22 school year, Plaintiff received an MOTP score of Ineffective overall (1.6) but an overall composite score of Developing based on his MOSL score.

126.    On or about July 1, 2022, Plaintiff was denied a summer school placement despite a teacher shortage for the program and notwithstanding his multiple applications throughout the DOE, including to the School.

127.    In August 2022, Principal Dwarka left Bryant High School after being promoted to a Deputy Superintendent role.

**2022-23 School Year**

128.    From September 16-23, 2022, Plaintiff ran for the UFT SLT representative position.

129.    On September 19, 2022, the UFT advanced Plaintiff's retaliation grievance to arbitration.

130.    On September 30, 2022, the criteria for receiving per-session work were amended regarding observation rating so as to deny automatically any application for per-session work Plaintiff presented in the future, while allowing for his younger music departmental colleagues Lanzet, Somer, & Weisman to pursue these options.

131.    On October 4, 2022, Plaintiff was required to meet with AP Crea Mason and UFT Representative Lignou for a Teacher Improvement Plan where contractual requirements were not met and were AP Crea Mason established a hostile tone.

132.    On October 6, 2022, Plaintiff was removed from class while teaching students by AP Huezo and escorted to the office of Principal St. Aubain. Plaintiff requested and was refused by Principal St. Aubain and AP Huezo his contractual right to UFT representation and the presence of UFT Representative Lignou. Principal St. Aubain gave Plaintiff a letter indicating that he was to report immediately for reassignment. Principal St. Aubain said with open animus, "I know what this is about." AP Huezo escorted Plaintiff back to his room to the same class which had watched him being escorted out, thus humiliating him in front of his students and fellow teachers.   He was required to gather his personal belongings in front of the class. AP Huezo then escorted Plaintiff to UFT Representative Lignou, confiscated his keys, and escorted him out of the building.

133.    Beginning on October 6, 2022 to the present, Plaintiff suffered recurring nightmares and significant sleep deprivation and disruption, which he reported to his therapists regularly thereafter through December 2024.

134.    Beginning in October 2022, Plaintiff began to furnish information and documentation similar to that provided to the NY Post regarding illegal discriminatory policies and practices at the School pertaining to constructive termination of aged employees and

teachers refusing to fix grades at the School to Betsy Combier, founding editor and president for *Advocatz.com, Parentadvocates, Inside 3020-a Teachers' Trial, National Public Voice, NYC Public Voice*, & *Courtbeat-New York Court Corruption* media outlets.

135.    On November 23, 2022, Plaintiff's grievance for Unfair Allocation of monies grieving the allocation of per-session work for music departmental colleagues Lanzet, Somer, & Weism  and denial of the same opportunities to Plaintiff.

136.    On December 6, 2022, SCI Investigator Dacia Wyatt left a voicemail on Plaintiff's phone and emailed, warning she had left a card and visited Plaintiff on reassignment at his home and he was not there. Investigator Wyatt visited a mistaken address having failed to consult the updated address for Plaintiff with the NYC DOE. No card was found at the address Wyatt indicated of 161 Derby St. Valley Steam, NY 11581 by the residents Mr. & Mrs. Anthony and Margie Washington residing at this address at the time. This initial contact by Investigator Wyatt was beyond the contractual time frame set for such an investigation of 60 days.

137.    On December 12, 2022, Plaintiff submitted an EEOC Inquiry.

138.    On December 16, 2022, Plaintiff filed a FOIL request regarding unfair allocation of per-session funds to music colleagues and inequitable pay.

139.    On December 29, 2022, Plaintiff sent a Notice of Claim to the NYC DOE.

140.    From tax year 2022 through the present, Comparators Weisman and Somer were reported by DOE Payroll to have earned a higher salary than Plaintiff, despite his higher salary step. This higher pay was in addition to the higher per-session earnings received by Comparators since 2017. Plaintiff first received notice of this disparity in Spring 2024.

141.     On or about February 2023, the School placed an adverse letter to file in Plaintiff's file pertaining to the performance of *another* DOE non-Bryant teacher, also named Michael Eisenberg, at the time co-defendant in a federal complaint of sexual assault against a minor. The letter was placed in Plaintiff's file without noticing Plaintiff and without his signature, in violation of contract.

142.     On February 10, 2023, Plaintiff was contacted by DOE Director of Medical Leaves & Records Hubert Guscott regarding his sabbatical application never answered by Superintendent. Tu. Mr. Guscott promised he would provide a sabbatical offer in writing for Plaintiff's consideration of acceptance, which he never did. Thereafter Mr. Guscott did not reply to Plaintiff's emails and calls.

143.     On February 19, 2023, Plaintiff received an email stating he had been administratively denied the sabbatical because Plaintiff refused it. Plaintiff emailed Mr. Guscott and Superintendent Tu, emphatically asserting that he did not refuse it and indeed was never offered it, despite the defective promise of Mr. Guscott.

144.     On February 23, 2023, the NYC DOE denied Plaintiff's grievance of untimely denial of sabbatical on December 21, 2021.

145.     On February 28, 2023, Plaintiff submitted a second FOIL request after insufficient information was provided for his first FOIL regarding unfair allocation of per session to music colleagues.

146.     On March 31, 2023, Plaintiff reported to Principal St. Aubain 39 emails containing hate speech and sexually explicit harassment texted from two anonymous cell phone numbers to Plaintiff's Bryant email account on March 6, 2023.

147. On April 5, 2023, the NYC DOE replied to the FOIL request advising an extension till July 18, 2023

148. On April 25, 2023, Plaintiff submitted an application to teach summer school to all 232 NYC DOE summer programs available to Plaintiff to teach in. Plaintiff received only one response despite his high qualifications and the large number of unfilled vacancies.

149. On April 27, 2023, Plaintiff had an EEOC interview, the last requisite step in filing the EEOC claim with the US EEOC agency.

150. On May 8, 2023, Plaintiff filed an SDHR complaint against the NYCDOE, which is annexed as Exhibit A hereto for Plaintiff's claims that the EEOC interviewer advised were not covered under the EEOC but were covered by the NYS Division of Human Rights.

151. On May 10, 2023, Plaintiff filed an EEOC Charge of Discrimination against the NYCDOE based on age and disability discrimination and retaliation, which is annexed as Exhibit B hereto.

152. On May 26, the SCI contacted Plaintiff, communicating that all allegations had been determined unsubstantiated and removing Plaintiff from reassignment. Plaintiff was informed a problem code had been attached to his file.

153. On May 30, 2023, Plaintiff returned to work. Despite the contractual requirement that teachers returning from reassignment may not be retaliated against, Principal St. Aubain and AP Crea Mason demoted Plaintiff to substitute status; removed all Plaintiff's music classes alleging that these classes had been closed for budgetary constraints although they remained open; refused Plaintiff access to the music office, music room and office keys, and piano, all provided to fellow music departmental colleagues; destroyed all Plaintiff's Bryant emails and all

evidence therein, barred Plaintiff's access to the Bryant High School drive, music departmental files, and Plaintiff's email, all provided to all staff members including substitute staff: barred Plaintiff access to printing privileges provided to all staff; and denied Plaintiff access to the personal item, property, and music resources he had been unable to retrieve upon reassignment. Later Plaintiff discovered that Mr. Weisman had been assigned one of his music classes and was being paid as a sixth-class coverage. Comparators Lanzet and Somer were also assigned to cover Plaintiff's other music classes while Plaintiff served as a substitute to random daily class assignments.

154. On May 30, 2023, and repeatedly thereafter, Plaintiff applied to Principal St. Aubain for all per-session opportunities provided to other music departmental colleagues and for summer school placement at Bryant. Plaintiff never received a response to these applications thus constructively denied.

155. On May 30, 2023, and thereafter, Plaintiff reported to Principal St. Aubain, AP Crea Mason, & AP Morales his fear of further harassment by the anonymous emailers of hate speech and sexually explicit harassment speech. Plaintiff inquired regarding measures taken to protect him from further sexual harassment and abuse. Principal St. Aubain, AP Crea Mason, & AP Morales declined to respond in anyway.

156. On May 30, 2023, Plaintiff reported to Principal St. Aubain and AP Crea Mason verbally and in writing the escalation of his migraines in response to Bryant administrative harassment and retaliation and provided additional medical documentation on June 1, 2023.

157. On May 31, 2023, Plaintiff ordered a FOIL reporting the findings of the SCI investigation and received the FOIL report stating that: SCI Case # 2022-6822 had been reported anonymously and had been found unsubstantiated on all accounts based on the alleging student's

inability to articulate any of the claims and on fellow students' unison report of having no issue with Plaintiff's treatment of students.

158.    On June 1, AP Crea Mason publicly humiliated Plaintiff, reprimanding him in the presence of three peers for making copies and for taking his lunch anywhere but the teacher cafeteria or outside. All staff is permitted to take lunch anywhere and to make copies.

159.    On June 1, 2023, and thereafter, Plaintiff was denied by AP Crea Mason, Principal St. Aubain, and music colleagues Lanzet, Somer, & Weisman access to all 2023-24 music course listings and student roster assignment lists.

160.    On June 1 and 2, 2023, Plaintiff inquired of Attendance Secretary Diakos and the Office of Personnel Investigation ("OPI") regarding the attachment of a problem code. Plaintiff inquired why he had never been informed as to its attachment; why it was still attached despite the finding of all allegations as unsubstantiated and despite the investigation being closed, as pursuant to Art. 21 G.4.a. Plaintiff initiated a grievance action with UFT Representative Lignou for the problem code's removal. He was informed that week by Attendance Secretary Diakos and the OPI that the problem code had been removed.

161.    On June 2, 2023, Plaintiff emailed Principal St. Aubain regarding the disciplinary letter to file requested to be removed as per contractual requirement and pursuant to Plaintiff's request. The letter had not been removed although administration indicated to UFT Representative Lignou that it had been removed in Plaintiff's absence.

162.    On June 2, 2023, Plaintiff emailed Principal St. Aubain with the demand for reassignment to Plaintiff's original music classes pursuant to Art. 21 G.4.a.

163.     On June 2-27, 2023, Plaintiff was exposed to repeated harassment by two students, shown on June 27, 2023 to be the senders of the anonymous emails reported to Principal St. Aubain on March 31, 2023. Plaintiff was assigned to classes with the same students. Despite reports to Principal St. Aubain and AP Morales concerning ongoing harassment by the students, no effort was made to protect Plaintiff from further abuse.

164.     On June 9, 2023, Plaintiff was offered a summer school position by Principal Alain Beugoms at PS 110 in Brooklyn and Plaintiff accepted.

165.     On June 13, 2023, the last day before Regents examinations, without explanation, AP Crea Mason provided Plaintiff with all keys and access to music classes, music office, printing privileges, and to his unretrieved personal property. AP Crea Mason instructed Plaintiff that he had been reassigned on this last day of instruction to all original classes except for the violin class which had been reassigned to Mr. Weisman. For this period, Plaintiff was still assigned to a substitute assignment.

166.     On June 14-15, 2023, unbeknownst to him, Plaintiff was assigned to administer Regents exams to the students sending the anonymous emails. Although unaware of their identity at the time, Plaintiff restated concern of protection from further student harassment to AP Morales and Principal St. Aubain. No measures were taken to protect Plaintiff. On both days Students G and L fomented tension among other students by arguing, being disruptive, yelling, and refusing instruction.

167.     On June 16, 2023, Plaintiff was assigned to Regents administration with Student G. Student G began shouting at Plaintiff, led a loud uprising of students in refusing to sit down for the exam, and continued yelling epithets and sexually explicit language and hate speech at Plaintiff. The exam began over a half hour late in violation of the stringent Bryant and statewide

policies regarding start time. Plaintiff requested test administrator backup twice and was refused. Later, off campus, Student G and an unidentified female student from the Regents exam class began yelling at Plaintiff and hurling accusations and epithets at Plaintiff in front of the school building. Plaintiff reported this incident to the test administrators, school deans on duty, Principal St. Aubain, and to UFT Representative Lignou.

168.    On June 16, 2023, Plaintiff developed serious migraines and these continued through the following week. Plaintiff remained out of school for the following five days. Upon return, Plaintiff presented a medical note for the days and Attendance Secretary Diakos refused to accept the note for more than one day. Plaintiff produced further documentation, but Ms. Diakos refused to input correct data, reporting attendance as disallowed and charging the absence to Plaintiff's salary. Ms. Diakos also refused to provide Plaintiff with an exact accounting of how all attendance had been reported, thus preventing Plaintiff from being apprised of this information till October 2023.

169.    On June 27, 2023, the last day of the spring 2023 semester, Plaintiff first acquired proof of the identity of harassors Students G & L; he presented this evidence to AP Morales and requested a meeting repeatedly with Principal St. Aubain; after no reply, he emailed Principal St. Aubain and copied Superintendent Tu.   There was no reply received ever from Principal St. Aubain or from Superintendent Tu.

170.    On July 6, 2023, after four full days of teaching work at PS 110, Plaintiff received an email from a NYC DOE Summer Jobs email stating that the position had been retracted due to **a determination of ineligibility to work** on account of a problem code, relating to a disciplinary action, arrest, new nomination/investigation or related matter. Plaintiff became deeply anxious, fearing that his reputation with the new school and administration would be

biased as a result of this action. Plaintiff had relied detrimentally on this work to cover expenses, and this also caused great consternation and angst for Plaintiff. Plaintiff reported this adverse action to UFT Queens Representative Amy Arundell.

171.    On July 7, 2023, Plaintiff received notification that his summer school termination had been retracted by phone and in writing.

172.    On July 7, 2023, Plaintiff wrote to former Principal Dwarka, Principal St. Aubain, former AP Huezo, former AP Manolios, Superintendent Tu, & the DOE, reminding them of their anti-spoliation duty, first noted verbally to the School in 2021.

173.    Upon information and belief, on or about July 2023, former Principal Dwarka and AP Crea Mason published an OEO allegation of sexual harassment and forwaded the misrepresented email with the ludicrous and obscene Urban Dictionary entry to AP Rivera, who then republished these to the OEO.

174.    On August 8, 2023, the most recent sabbatical grievance for 2022-23 was found to have merit by the UFT and was advanced to arbitration.

175.    On August 9, 2023, the Monies Owed grievance for 2022-23 was found to have merit by the UFT and was advanced to arbitration.

176.    On August 10, 2023, Plaintiff received a perfect Satisfactory rating from Summer School Principal Beugoms, the highest rating that may be assigned for summer school teaching.

177.    On August 16, 2023, Plaintiff was issued a Notice of Right to Sue (EEOC).

\

**2023-24 School Year**

178.    Beginning in September 2023, Student G continued to follow and harass Plaintiff by visiting his room, staring into his room, loitering outside his room during class instructional hours. This behavior was reported repeatedly to Principal St. Aubain, AP Morales, & AP Crea Mason and photos of this behavior and documentation and chronology were provided. No action was taken and there was no response to requests for intervention from Plaintiff and UFT Representative Lignou.

179.    On September 4, 2023, Plaintiff was denied his program choice, as well as his second and third preferences, and assigned all beginner classes. One class was listed as Advanced Piano but the students were beginners and could not read music. All Plaintiff's music colleagues were assigned multiple advanced classes all in their license area. Plaintiff was assigned 60% of his classes in his license area. Plaintiff had the lowest level of classes at large of all the music department, despite holding longer seniority, tenure, more advanced music degrees, the longest length of experience teaching, and previous experience teaching NYC DOE music teachers for the NYC DOE.

180.    On September 6, 2023, Plaintiff experienced his first migraine in months.

181.    On September 6, 2023, Plaintiff reported to AP Crea Mason numerous material resource concerns that seriously undermined Plaintiff's teaching practice and to which deprivation his classes were uniquely subjected and which was not experienced by other music teachers. None of these concerns were ever addressed despite repeated reiterations thereafter.

182.    On September 7, 2023, Plaintiff reported to AP Crea Mason that he still had no access to departmental curricular materials, music and arts drive, and to the Bryant High School drive resources.

183.     On September 12, 2023, AP Morales interrupted Plaintiff's class, escorting him to Principal St. Aubain's office to receive notice of a disciplinary conference on September 14, 2023. On September 21 & 27, 2023, Plaintiff was again interrupted by admin and publicly escorted out of class.

184.     On September 14, 2023, Plaintiff and UFT Representative Lignou met with Anthony Stiffler, Esq., Exec. Director of School Support of High Schools Queens North ("Stiffler") to discuss an allegation that Plaintiff had walked to Principal St. Aubain "aggressively" on June 27, 2023. Plaintiff showed Executive Director Stiffler the email regarding the sexual harassment, forwarded to Superintendent Tu, and reported the non-response to his complaint.

185.     On September 14, 2023, Plaintiff applied for eight per-session opportunities, six of which were ultimately denied and two which remain in the status of pending as per AP Johanna Henry. Plaintiff's music colleagues all received multiple per-session assignments for this application period.

186.     On September 15, 2023, Plaintiff requested to take a professional development music pedagogy course offered by the NYC DOE given Plaintiff's alleged poor knowledge and mastery of music and music pedagogy. AP Crea Mason denied this request.

187.     On September 19, 2023, Plaintiff received notice from OEO Investigator Cody Mitchell that Plaintiff was the subject of an OEO investigation filed by a staff member.

188     On September 21, 2023, Principal St. Aubain denied all Plaintiff's grievance demands.

189.     On October 2, 2023, Plaintiff was reprimanded publicly by AP Crea Mason in front of music colleagues at a departmental meeting.

190.     On October 6, 2023, in escalated arbitration, Plaintiff was heard regarding his Preference grievance by an arbitrator. The arbitrator denied the grievance without reporting any reasoning or other information beyond the denial.  In the hearing, AP Crea Mason testified under oath falsely that Plaintiff lacked the conducting experience of his Comparators, despite having notice of Plaintiff's advanced conducting degree and greater professional conducting experience than his Comparators.

191.     On October 12 and 20, 2023, Plaintiff's request (first emailed on December 6, 2020) for a comprehensive attendance record, to amend his falsely depleted CAR sick-days bank, was denied by DOE Queens Attendance Supervisor Vidal.  On October 23, 2023, a partial report showed four days misreported, reducing Plaintiff's wages.

192.     On October 18, 2023, Plaintiff was informed an OEO complaint for sexual harassment had been filed against him on January 7, 2022, for an email with the auto-corrected typo "Schettini," which Principal Dwarka and AP Crea Mason alleged Plaintiff meant to signify a sexual act, based on their citation of "Urban Dictionary." They did not provide OEO with Plaintiff's follow-up email, correcting "Schettini" to "schedule."

193.     On October 23, 2023, Plaintiff emailed Principal St. Aubain requesting no contact with AP Crea Mason, given AP Crea Mason's failure to recuse herself from Plaintiff supervision in light of the pending OEO claim of which he lacked knowledge.

194.    On October 24, 2023, Plaintiff was visited for an informal observation by AP Crea Mason. Plaintiff told AP Crea Mason that this caused him discomfort and that he did not wish her to proceed.

195.    On October 26, 2023, Plaintiff was emailed by AP Crea Mason and Plaintiff reiterated request for no contact, given the previous frivolous sexual harassment claim by AP Crea Mason and Principal Dwarka.

196.    On October 30, 2023, Plaintiff received an email from Principal St. Aubain stating that an OEO on Plaintiff's behalf had been filed by the NYC DOE regarding a complaint about AP Crea Mason's failure to recuse self.

197.    On or around October 30, 2023, an approved non-attendance day for Plaintiff was wrongfully counted as a sick day by Attendance Secretary Jahira Rodriguez.

198.    On November 30, 2023, Plaintiff received an informal observation by AP Jonathan Young, which was rated as Ineffective overall. This was the lowest rating Plaintiff had received by the NYC DOE to date.

199.    On December 6, 2023, Plaintiff received an EEOC right to sue letter, dated December 6, 2023, which is annexed as Exhibit C hereto.

200.    On December 8, 2023, Plaintiff fell from a piano bench when a student moved the bench from under him. In the incident report, AP Morales omitted student statements and misquoted Plaintiff as saying he was not injured, contrary to his voiced fear of exacerbation of recent back surgery and possible complications. Thereafter, he took line-of-duty leave, returning January 3, 2023. He was observed the very day of return, receiving his lowest rating ever.

201.     On December 11, 2023, Plaintiff experienced a migraine triggered by tensions at the School and was required to take Sumatriptan twice, the highest dosage allowed, in addition to his monthly dosage of Ajovy.

202.     On January 16, 2024, AP Young issued Plaintiff an observation report with mostly ineffective and developing ratings for an observation conducted on November 30, 2023, with the lowest composite score Plaintiff had received to date.

203.     On January 16, 2024, Plaintiff filed a complaint for the November 30, 2023 observation.

204.     On January 25, 2024, AP Young issued Plaintiff an observation report with mostly ineffective and developing ratings for an observation conducted on January 3, 2024.

205.     On January 26, 2024, Plaintiff received an Ineffective rating overall I (1 E 3 D 4 I ) with the lowest composite score he had ever received with the NYC DOE to date.

206.     On January 30, 2024, Attendance Secretary Rodriguez stated that nothing could be done to reverse docked pay for misreported attendance of June 23, 2023, reported as unauthorized and pay docked not reimbursed as of date of filing complaint, March 5, 2024.

207.     On or about March 19, 2024, Principal Dwarka's and AP Crea Mason's sexual harassment OEO was found unsubstantiated. OEO reported that Principal Dwarka had since withdrawn the allegation.

208.     Despite his passing the bar July 23, 2023, on April 16, 2024, the Committees on Character & Fitness requested a status update on OEO claim, delaying his admission till July, 2024.

209.     On or about July 31, 2024, Plaintiff was offered a two-year contract as a music director in a Brazil youth orchestra program, contingent upon funding through fiscal supporters.

### 2024-2025 School Year

210.     On or about September 3, 2024 and thereafter, Plaintiff began to experience migraines, in remission during his Spring 2024 sabbatical, when Plaintiff was not at the School.

211.     On or about September 11, 2024, St. Aubain denied Plaintiff access to the teacher class assignment master grid and to the listing of School per-session allocations, in violation of contract.

212.     On or about September 30, 2024, Attendance Secretary Rodriguez informed Plaintiff he would not be paid for classes he had covered. When Plaintiff raised this non-payment, AP Henry became angry, making derogatory comments to staff members in an open public space and ridiculing Plaintiff's requests.

213.     On or around October 15, 2024, Plaintiff was assigned by his neurologist Dr. Lu to triple the dose of his migraine medicine Ajovy.

214.     On October 22, 2024, Pastor Park of Plaintiff's church Brooklyn Tabernacle, informed him that the sexual harassment, misconduct, and child endangerment investigations/allegations would bar fiscal sponsorship of his work with needy youth in Brazil, an endeavor he has engaged in since 2001.

215.     On October 23, 2024, Plaintiff discovered absence misreporting by Attendance Secretary Rodriguez.

216.     On November 18, 2024, OEO informed Plaintiff that his complaint was referred to the SCI, who denied the transfer and reported OEO's transfer of the obsolete complaint *against* Plaintiff.

217.     On December 6, 2024, Plaintiff learned of a sexual misconduct investigation filed against him by AP Morales with OSI & SCI on April 22, 2022. This news caused him emotional distress, triggering a migraine. He took Sumatriptan to alleviate his symptoms. He later contracted symptoms diagnosed as Shingles on December 25, 2024 and experienced headaches and sleep deprivation as a result.

218.     On December 8, 2024, Plaintiff learned that the City Office of Payroll had publicly misreported his earnings for per session online by over $5K.

219.     On December 9, 2024, Plaintiff reported the lack of notice of the April 22, 2022, Plaintiff investigation and misreporting of per session to the School and the DOE.

220.     On December 10, 2024, Special Counsel David Casanova of the SCI declined Plaintiff's second FOIL request for further information regarding the unnoticed investigation of April 22, 2022, and Plaintiff appealed to Valerie Batista, FOIL Appeals Officer.

## Other Discrimination and Retaliation

221.     Plaintiff has repeatedly been denied per-session opportunities, which his music colleagues have consistently received yearly. Per-session opportunities are disguised under generic arbitrary designations, names, and hours to allocate with bias. Plaintiff is the most senior, longest tenured, and longest in the system. As of this year, Plaintiff was further harassed just asking for the allocation of a few hours that he was previously instructed to ask her for because of a student's need and deficiency. This is also in violation of the contractual obligation to rotate

per -session opportunities and course placements and preferences so as to maintain equitable distribution.

222. On repeated occasions (at least twice), the designated studio arts allocation of approximately $750, which a teacher, solely, is allowed to dispense at their own discretion to support their teaching practice was not disbursed as Plaintiff requested. Plaintiff had submitted the forms, paperwork, etc. first in his department and shortly on the heels of the citywide announcement of allocations. Paperwork was repeatedly lost and claimed not received although he had documented his application and there were emails, etc. The funds were never used for him.

223. On repeated occasions and regularly in UFT meetings, Plaintiff voiced his public concerns to faculty regarding administrative pressure for grade fixing, administrative insistence on the acceptance of plagiarized work, for passing failing students discriminately, and for passing students who had never attended class. Plaintiff also voice his criticisms of the overbearing martinet style of Principal Dwarka, Principal St. Aubain, AP Crea Mason, AP Manolios, AP Huezo, et al. and at the administrative routine refusal to comply with their adminsitraive contractual obligations.

224. Upon information and belief, Defendants have sought intentionally, knowingly with ageist bias, to terminate constructively aged teachers and to recruit younger recruits to these same positions; this reflects a tacit policy and practice advanced intentionally and knowingly by the DOE.

225. Defendants have permanently jaundiced and endangered Plaintiff's record, reputation, and educational and legal future career trajectory, by exposing him to prejudice, based on fraudulent allegations and investigations, intentionally false reviews, and defamation of

character. Hereinafter, Plaintiff must report these allegations and investigations, thus irrevocably impairing his record throughout his professional future; jeopardizing and coloring his character as it pertains to the ethics of these fields. Defendants have severely undermined and weakened Plaintiff's earning potential and career options with this outrageous intentional retaliation.

226.    Plaintiff's repeated protestations of unfair evaluations were a matter of public interest voiced on behalf of teachers at the School and citywide, in an effort to hold administration to a standard of integrity. Upon information and belief, the School proactively intentionally engages in a policy and practice of penalizing teachers with low ratings, using these adverse ratings to compel teachers to fix grades so that Principal and administrative ratings and graduation rates may be registered as higher than they actually are citywide and nationwide. Such a policy and practice fraudulently boosts NYC DOE ratings at large nationwide. UFT Representative Lignou demonstrated this punitive disparity of teacher rating at the School to be factual via a FOIL submitted on behalf of Bryant teachers showing that Bryant teachers received the lowest ratings in Queens, and often in all of NYC. The letter Plaintiff provided to the NY Post and published in the aforementioned article cited these FOIL findings.

227.    Plaintiff was required to exhaust administrative options (grievances, appeals, etc.), thus significantly delaying a final outcome or accrual of claims to the present. Several of UFT Representative Lignou's  relevant grievances were also unanswered to date, leaving Plaintiff incognizant of any final outcome.

**FIRST CLAIM FOR RELIEF**

## (Violation of 42 U.S.C. Section 1983

## First Amendment Retaliation against all Defendants)

228.     Plaintiff repeats and realleges all the preceding paragraphs of this complaint, as if fully set forth herein.

229.     Defendants, through the aforementioned conduct, have violated 42 U.S.C. Section 1983, by retaliating against him for filing union grievances and whistleblowing against the school administration by speaking out on matters of public concern and reporting acts of misconduct as follows: on June 14, 2022, Plaintiff contacted Susan Edelman, NY Post reporter, and subsequently provided documentation of administrative pressure by DWARKA, MASON, HUEZO, ST. AUBAIN, TROIANOS, et al. to fix grades, to pass plagiarized work, and a letter drafted by UFT Representative Georgia Lignou decrying routine underscoring of Bryant teachers and pressure to amend grades: on June 18, 2022, the NY Post ran an article focusing on Plaintiff, and on the longstanding practice of grade fixing at Bryant High School under under Principal Dwarka.

230.     As a result, Plaintiff was falsely accused and reassigned away from the school.

231.     As a proximate result of Defendants' retaliatory actions against him, Plaintiff has suffered and continues to suffer a loss of monetary damages, humiliation, severe emotional distress, mental and physical anguish and suffering, and damage to his

professional reputation and potential loss of employment, in an amount to be determined at trial.

## SECOND CLAIM FOR RELIEF

## (Violation of the ADEA)

## Discrimination, Retaliation, and Hostile Work Environment against NYCDOE)

232.    Plaintiff repeats and realleges all the preceding paragraphs of this Complaint, as if fully set forth herein.

233.    Plaintiff is over 40 years of age and thus protected by the ADEA.

234.    Plaintiff has been treated differently than his similarly situated, younger counterparts at the School. Specifically, he has received disciplinary letters to file, less-than-effective observation reports, and been the subject of multiple investigations. These documents have been issued pervasively and continuously for the past several years.

235.    Upon information and belief, Defendants have undertaken a constant and pervasive practice of targeting Plaintiff with the intention to reassign him from the School and replace him with a younger counterpart.

236.    As a proximate result of Defendants' discriminatory actions against Plaintiff, he has suffered and continue to suffer a loss of monetary damages, humiliation, severe emotional distress, mental and physical anguish and suffering, and damage to his

professional reputation and potential loss of employment, in an amount to be determined at trial,

## THIRD CLAIM FOR RELIEF

## (Violation of the ADA)

## Discrimination, Retaliation, and Hostile Work Environment against NYCDOE)

237. Plaintiff repeats and realleges all the preceding paragraphs of this Complaint, as if fully set forth herein.

238. Plaintiff is over 40 years of age and thus protected by the ADA.

239. Plaintiff has been treated differently than his similarly situated, nondisabled colleagues at the School. Specifically, he has been denied accomodations, has received disciplinary letters to file, less-than-effective observation reports, and been the subject of a number of investigations. These documents have been issued pervasively and continuously for the past several years.

240. As a proximate result of Defendants' discriminatory actions against Plaintiff, he has suffered and continue to suffer a loss of monetary damages, humiliation, severe emotional distress, mental and physical anguish and suffering, and damage to his professional reputation and potential loss of employment, in an amount to be determined at trial.

## FOURTH CLAIM FOR RELIEF

## (Violation of the New York State Human Rights Law

**Discrimination, Retaliation, and Hostile Work Environment on the Basis of Age and Disability against All Defendants)**

241.    Plaintiff repeats and realleges all the preceding paragraphs of this Complaint, as if fully set forth herein.

242.    Plaintiff is over forty years of age and thus protected by the NYSHRL.

243.    Plaintiff has been treated less well than his similarly situated, younger counterparts at the School. Specifically, he has received disciplinary letters to file, less-than-effective observation reports, and been the subject of a number of investigations. These documents have been issued pervasively and continuously for the past several years.

244.    Plaintiff has at all times performed his duties satisfactorily and in a similar fashion to his younger counterparts.

245.    As a proximate result of Defendants' discriminatory actions against him, Plaintiff has suffered and continues to suffer a loss of monetary damages, humiliation, severe emotional distress, mental and physical anguish and suffering, and damage to his professional reputation and potential loss of employment, in an amount to be determined at trial.

**<u>FIFTH CLAIM FOR RELIEF</u>**

**(Violation of the New York City Human Rights Law**

**Discrimination, Retaliation, and Hostile Work Environment on the Basis of Age and Disability against All Defendants)**

246. Plaintiff repeats and realleges all the preceding paragraphs of this Complaint, as if fully set forth herein.

247. Plaintiff is over forty years of age and thus protected by the NYCHRL.

248. Plaintiff has been treated less well than his similarly situated, younger counterparts at the School. Specifically, he has received disciplinary letters to file, less-than-effective observation reports, and been the subject of a number of investigations. These documents have been issued pervasively and continuously for the past several years.

249. Plaintiff has at all times performed his duties satisfactorily and in a similar fashion to his younger counterparts.

250. As a proximate result of Defendants' discriminatory actions against him, Plaintiff has suffered and continues to suffer a loss of monetary damages, humiliation, severe emotional distress, mental and physical anguish and suffering, and damage to his professional reputation and potential loss of employment, in an amount to be determined at trial. Plaintiff is over forty years of age and thus protected by the NYCHRL.

### **SIXTH CLAIM FOR RELIEF**

**(Intentional Infliction of Emotional Distress against All Defendants)**

251. Plaintiff repeats and realleges all the preceding paragraphs of this Complaint, as if fully set forth herein.

252. Defendants engaged in continuous and ongoing extreme and outrageous conduct towards Plaintiff to his detriment, knowing of Plaintiff's special physical and emotional sensitivity to such conduct and wielding an inequity of power in an abuse of authority. This conduct includes but is not limited to pursuing unfounded fraudulent investigations of sexual misconduct with a

student and minor and sexual harassment and with supervisors, despite Plaintiff's repeated requests to Defendants to desert in such retaliatory harassment and failing to notice Plaintiff in violation of contract and his rights, thus producing migraines, emotional trauma, depression, and nightmares on and after the dates these were first discovered, namely December 6, 2024, and October 18, 2023.

253.    Defendants, through extreme and outrageous conduct going beyond all bounds of decency towards Plaintiff, demonstrated an intent to cause, and reckless disregard of a substantial probability of causing, severe emotional and physical distress in the Plaintiff.

254.    Defendants' conduct subjecting Plaintiff to a policy and practice of baseless investigations of sexual impropriety with minors; threatening his reputation and future career; foreseeably occasioning imprisonment or barring from educational and legal sectors; went beyond all possible bounds of decency to be regarded as atrocious, utterly intolerable in a civilized society.

255.    The extreme and outrageous conduct of Defendants towards Plaintiff directly caused him severe emotional distress, severe physical pain, bodily harm, and mental trauma.

256.    By virtue of the above, Plaintiff has suffered actual damages including, but not limited to, medical expenses associated with migraine treatment, mental health treatment, inconvenience, insult, mental distress, embarrassment, humiliation, anxiety, emotional pain and suffering, impairment of future health and career, and other economic or non-economic damages.

257.    As the injury was caused willfully, wantonly, and with actual and common law malice, Plaintiff is entitled to punitive damages in an amount to be determined by a court.

## SEVENTH CLAIM FOR RELIEF

### (Libel per se against Defendants Dwarka, Mason, and the DOE)

258.    Plaintiff repeats and realleges all the preceding paragraphs of this Complaint, as if fully set forth herein.

259.     Defendants DWARKA and MASON intentionally purposefully, and with full knowledge of its falsity, received and thereafter forwarded Plaintiff's email to the OEO, falsely claiming that Plaintiff had used the email to sexually harass Defendants and to propose engaging in lewd unlawful sexual acts with Defendants. Defendants committed this allegation of sexual harassment to writing. Defendants' actions were made with the express purpose of getting Plaintiff arrested and charged, fired, making his employer start an investigation, and to destroy his reputation to his employer, his colleagues, and to all future prospective employers.

260.     DWARKA and MASON published in writing the allegation and misrepresented email with an attached lewd outrageous interpretation and ludicrous Urban Dictionary entry to AP Rivera, who republished these to OEO Investigator Mitchell.

261.     Plaintiff was first made aware of these acts on or about October 18, 2023.

262.     The misrepresentation of email and Defendants' other written statements of the allegations were false and defamatory.

263.     Defendants made those statements with actual malice, as they actually misrepresented the email, and intentionally, purposefully, and with full knowledge withheld the email clarifying the autocorrected typo, knowing the allegations were false and acting with reckless disregard for their truth or falsity. Knowing full well of the falsity of the statement, DWARKA thereafter retracted her defamatory libelous allegation.

264.     The statements were of and concerning Plaintiff as they identified him by name and were published without privilege or authorization to others by the Defendants.

265.     The statements unambiguously accuse Plaintiff of unprofessional conduct in the course of practicing his profession, and were intended to injure and did injure Plaintiff's reputation, at his employment and towards the community at large.

266.     As such, the statements constitute libel per se.

267.     By reason of this defamation, Plaintiff was greatly injured in his character and reputation as an educator and prospective attorney, suffered abuse and harassment, as well as great pain and mental anguish, and has been and will be deprived of gains and profits from the practice of his profession. Defendants are liable to Plaintiff for actual and compensatory damages, damages for injury to his professional reputation and damages for emotional distress.

268.     Defendant DOE knowingly, negligently, and with reckless disregard, attached a problem code to Plaintiff's record, defaming Plaintiff in a professional capacity by indicating Plaintiff was a problem as teacher and employee, which statement was published electronically and made available to over 100 supervisors to whom Plaintiff applied for summer school, in addition to other recipients, all fully understanding meaning and implication of such libel per se.

269.     Plaintiff suffered mental and emotional harm when terminated from summer school position, termination resulting from attachment of the problem code and failure to remove the problem code, despite investigation determining all allegations as unsubstantiated.

270.     Defendants made the statements intentionally, purposefully, with full knowledge, knowing allegations were false, acting with reckless disregard for their truth or falsity.

271.     As an electronic statement that persisted, this defamatory statement was reiterated and republished on every occasion accessed by a DOE employee, supervisor, or other recipient.

272.     The statements were of and concerning Plaintiff as they identified him by name and were published without privilege or authorization to others by the Defendant.

273.     The statements unambiguously accuse Plaintiff of unprofessional conduct in the course of practicing his profession.

274.     As such, the statements constitute libel per se.

275.     By reason of this defamation, Plaintiff was greatly injured in his character and reputation as an educator and prospective attorney, suffered abuse and harassment, as well as great

pain and mental anguish, and has been and will be deprived of gains and profits from the practice of his profession. Defendants are liable to Plaintiff for actual and compensatory damages, damages for injury to his professional reputation and damages for emotional distress.

276. As a result of the above, Plaintiff has been damaged in an amount to be determined by a court.

277. As the injury was caused willfully, wantonly, and with actual and common law malice, Plaintiff is entitled to punitive damages in an amount to be determined by a court.

## EIGHTH CLAIM FOR RELIEF

### (Conspiracy to Commit Fraud against Defendants Dwarka, Mason, & DOE)

278. Plaintiff repeats and realleges all the preceding paragraphs of this Complaint, as if fully set forth herein.

279. Defendants SWARKA and MASON agreed together to the common objective to commit fraud by intentionally, purposefully, with full knowledge of its falsity, materially misrepresenting Plaintiff's email and filing a claim with the OEO that Plaintiff had used an email to sexually harass Defendants and to propose engaging in lewd unlawful sexual acts with Defendants. Defendants' actions were made with the express purpose of getting Plaintiff arrested and charged, fired, making his employer start an investigation, and to destroy his reputation to his employer, his colleagues, and to all future prospective employers.

280. DWARKA and MASON acted overtly in furtherance of this common objective to commit fraud by filing false claims, emailing the email accompanied by an Urban Dictionary entry Defendants had copied to the OEO complaint. Defendants acted in furtherance of this common objective, sharing these with Rivera so she might forward them electronically.

281.    After filing a defamatory, outrageous complaint beyond bounds of all decency, DWARKA recanted her allegation, knowing full well the falsity and malicious nature of the allegation against Plaintiff. Mason perpetuated the outrageous, defamatory, unconscionable act for 27 months, despite DWARKA's eleventh-hour abjuration of this unspeakably atrocious conduct.

282.    Rivera participated in the fraudulent scheme, and encouraged and, therefore, aided and abetted the fraud, knowingly and intentionally aiding in the fraud.

283.    As a result of the fraudulent scheme in which Defendants conspired, Plaintiff was greatly injured in his character and reputation; suffered abuse, harassment, great pain, and mental anguish; and has been and will be deprived of gains and profits from the practice of his profession. Defendants are liable to Plaintiff for actual and compensatory damages, damages for injury to his professional reputation, and damages for emotional distress, lost wages, and future gains and profits from which Plaintiff has been barred due to this fraudulent scheme.

284.    As a result of the above, Plaintiff has been damaged in an amount to be determined by a court. As injury was caused willfully, wantonly, and with actual and common law malice, Plaintiff is entitled to punitive damages in an amount to be determined by a court.

## NINTH CLAIM FOR RELIEF

**(Violation of Title IX against Defendants DOE, Dwarka, Mason, St. Aubain, & Morales)**

285.    Plaintiff repeats and realleges all the preceding paragraphs of this Complaint, as if fully set forth herein.

286.    The School is a Title IX funding recipient.

287.    Plaintiff is an "appropriate person" who had actual knowledge of the sexual harassment and other harassment occurring against him.

288.     The School and the Office of the Superintendent had actual knowledge of the harassment; were informed directly by Plaintiff about acts of harassment by Students G and L and evidence identifying the students; by having notice of acts beyond Plaintiff's reporting, through the School platform, staff, and students.

289.     St. Aubain, Morales, and the Superintendent could have taken corrective measures to investigate acts, identify harassors, and take prophylactic steps to ensure Plaintiff's safety.

290.     The School acted deliberately and recklessly not taking appropriate measures to address acts of harassment beginning in 2021, culminating in sexually explicit, homophobic, racist images, and texts to Plaintiff; acted to repudiate his claims by retaliating against him.

291.     The School declined to investigate, report timely, or take appropriate protective measures regarding Plaintiff's safety and future exposure to additional acts of harassment.

292.     The School further proactively exposed Plaintiff to further acts of harassment by placing Plaintiff with reckless disregard in classes and in testing with harassors.

293.     The discrimination was severe, pervasive, and objectively offensive to Plaintiff by causing severe emotional and physical distress; exacerbating migraines; exposing him to schoolwide censure in the continuance, escalation, and promulgation of acts of harassment with impunity; interfering with his efforts to quell further harassment.

294.     As a result of the reckless deliberate indifference, failure to investigate or take corrective measures, and as a result of the retaliation engaged in to repudiate Plaintiff, he was greatly injured in his character and reputation, suffered abuse and harassment, as well as great pain and mental anguish. Defendants are liable to Plaintiff for actual and compensatory damages, damages for injury to his professional reputation, emotional distress, lost wages, and future gains and profits from which Plaintiff is barred as a result of this conduct.

295.  As a result of the above, Plaintiff has been damaged in an amount to be determined by a court. As injury was caused willfully, wantonly, and with actual and common law malice, Plaintiff is entitled to punitive damages in an amount to be determined by a court.

## JURY DEMAND

Plaintiff demands a trial by a jury on all of the triable issues of this Complaint.

## PRAYER FOR RELIEF

**WHEREFORE**,  Plaintiff prays for declaratory relief and damages as follows:

A.    A declaratory judgment that Defendants are in violation of 42 U.S.C. § 1983 based on retaliation for First Amendment protected speech;

B.    A declaratory judgment that Defendant NYCDOE is in violation of federal Age Discrimination in Employment Act (ADEA);

C.    A declaratory judgment that Defendant NYCDOE is in violation of federal Age Discrimination in Employment Act (ADEA);

D.    A declaratory judgment that Defendants are in violation of New York State Human Rights Law;

E.    A declaratory judgment that Defendants are in violation of New York City Human Rights Law;

F.    A declaratory judgment that Defendants are in violation of Title IX.

G.    A declaratory judgment that Defendants are liable for Intentional Infliction of Emotional Distress.

H.    A declaratory judgment that Defendants are liable for Conspiracy to Commit Fraud.

I. A declaratory judgment that Defendants are liable for Libel per se.

J.    Awarding Plaintiff compensatory damages (including but not limited to emotional distress damages) and punitive damages (to the extent available) pursuant to the 42 U.S.C. § 1983, the ADEA, the ADA, and New York State and City Human Rights Laws;

K.    Awarding Plaintiff costs; and

L.    Such other and further relief as to this Court may deem necessary, just and proper.


Dated:        Bayside, New York
              December 9, 2024

                              By:_ s/Michael J. Eisenberg_____
                                  Michael Eisenberg


                              Plaintiff *Pro Se*

                              23-50 Waters Edge Dr. Apt. 6L

                              Bayside, NY 11360

                              mjeisenberg@gmail.com

                              (516) 395-7644