UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

MICHAEL EISENBERG,

                      Plaintiff,

        v.

NEW YORK CITY DEPARTMENT OF
EDUCATION, *et al.*,

               Defendants.

**<u>MEMORANDUM & ORDER</u>**
24-CV-01661 (HG)

**HECTOR GONZALEZ**, United States District Judge:

    *Pro Se* [1] Plaintiff Michael Eisenberg, a teacher at William Cullen Bryant High School

(the "School"), brings this action against Defendants New York City Department of Education

("DOE"); Namita Dwarka, the School's former principal ("Principal Dwarka"); Carlyn St.

Aubain, the School's current principal ("Principal St. Aubain"); current assistant principals

Alissa Crea Mason ("AP Crea Mason") and Moises Morales ("AP Morales"), and former

---

[1]     Plaintiff is a licensed attorney who is proceeding *pro se*. "Although allegations drafted by *pro se* plaintiffs are generally held to less stringent standards than formal pleadings drafted by lawyers, *pro se* attorneys cannot claim the special consideration, customarily granted to *pro se* parties." *Bank v. Alleviate Tax, LLC*, No. 23-cv-5457, 2024 WL 1332635, at *3 (E.D.N.Y. Mar. 28, 2024). Plaintiff passed the New York bar exam on July 23, 2023. ECF No. 37 ¶ 208 (Amended Complaint or "AC"). He filed the instant action *pro se* on March 6, 2024. ECF No. 1 (Complaint). Plaintiff was sworn in as an attorney on July 16, 2024. ECF No. 17 (Letter Addressed to Magistrate Judge Scanlon). And he filed his Amended Complaint on January 16, 2025. ECF No. 37. Consistent with the Court's prior orders in this case, the Court does not afford Plaintiff the special latitude generally granted to *pro se* litigants. *See* December 16, 2024, and December 27, 2024, Text Orders.

assistant principals Vasilios Manolios ("AP Manolios") and Henri Huezo ("AP Huezo").  AC ¶¶ 9–15. [2]

Plaintiff alleges nine causes of action, including violations of the federal Age Discrimination in Employment Act of 1967 ("ADEA"); the Americans with Disabilities Act ("ADA"); the New York State Human Rights Law, N.Y. Exec Law § 296 ("NYSHRL"); the New York City Human Rights Law, N.Y.C. Administrative Code §§ 8–101 *et. seq.* ("NYCHRL"); the First Amendment, pursuant to 42 U.S.C. § 1983; and Title IX; as well as intentional infliction of emotional distress ("IIED"); conspiracy to commit fraud; and libel *per se*. AC ¶¶ 1, 4.  Defendants move to dismiss Plaintiff's Amended Complaint for failure to state a claim for relief.[3]  *See* Fed. R. Civ. P. 12(b)(6).  For the reasons stated herein, Defendants' motion is GRANTED.

## BACKGROUND

The Court draws the following facts from Plaintiff's Amended Complaint and other documents of which the Court takes judicial notice. [4]  Plaintiff is a tenured music teacher, in his

---

[2]    The Court refers to the pages assigned by the Electronic Case Files system ("ECF"). Unless otherwise indicated, when quoting cases and the parties' papers, the Court omits all internal quotation marks, alteration marks, emphases, footnotes, and citations.

[3]    The motion papers consist of:  ECF No. 41 (Defendants' Motion to Dismiss; "Mot."); ECF No. 42 (Plaintiff's Opposition; "Opp."); and ECF No. 44 (Defendants' Reply; "Reply").

[4]    The Court is "required to treat [Plaintiff's] factual allegations as true, drawing all reasonable inferences in favor of Plaintiff[] to the extent that the inferences are plausibly supported by allegations of fact."  *In re Hain Celestial Grp., Inc. Sec. Litig.*, 20 F.4th 131, 133 (2d Cir. 2021).  The Court therefore "recite[s] the substance of the allegations as if they represented true facts, with the understanding that these are not findings of the [C]ourt, as [I] have no way of knowing at this stage what are the true facts."  *Id.*  Although the general rule is that a plaintiff may not raise new allegations in his opposition to a motion to dismiss, because Plaintiff is representing himself (even though he is a lawyer), the Court will nevertheless grant him some leeway by considering both the allegations in the Amended Complaint and in Plaintiff's Opposition in deciding the motion.  *See Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d

50s, who suffers from migraines.  AC ¶¶ 8, 16.  Plaintiff was hired at the School in 2017 and alleges that from 2017 to 2024, he experienced discrimination, a hostile work environment, and retaliation from Defendants related to his participation at union meetings, "whistleblowing," age, and migraines.  *Id.* ¶¶ 18, 229, 230, 234, 239.  Plaintiff filed complaints against the DOE with the New York State Division of Human Rights ("SDHR") on May 8, 2023, and with the Equal Employment Opportunity Commission ("EEOC") on May 10, 2023.  *Id.* ¶¶ 150–51.

Plaintiff's Amended Complaint recounts numerous disagreements, misunderstandings, and quarrels he has had with School administrators and students over the course of seven years. These include disagreements over grading policies, observation reports, allocation of per-session opportunities,[5] and workplace professionalism; misunderstandings about scheduling, timeliness, and attendance; sexual misconduct allegations filed by students and colleagues against Plaintiff (at least some of which were later determined to be unsubstantiated); and other incidents to which School administrators allegedly did not react, like when students recorded Plaintiff, stared into his classroom, or caused him to fall by pulling a piano bench from under him.  The Court recounts only those allegations relevant to its analysis but does not detail the full panoply of grievances raised by Plaintiff.

---

Cir. 2013) ("A district court deciding a motion to dismiss may consider factual allegations made by a *pro se* party in his papers opposing the motion."); *Guzman v. Barr*, No. 19-cv-7163, 2021 WL 135909, at *2 (S.D.N.Y. Jan. 14, 2021) ("In addition to what is contained in the complaint, the Court may consider factual statements made in a *pro se* plaintiff's opposition to a motion to dismiss.").

[5]    Per-session opportunities are paid, supplemental activities that public school employees can be approved to do before or after school, on the weekends, or on holidays.  *See Per Session Jobs*, NYC Public Schools, https://www.schools.nyc.gov/careers/other-jobs-in-schools/per-session-jobs [https://perma.cc/HP34-JC9U].

## **LEGAL STANDARD**

A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim is plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678. Although all factual allegations in a complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Id.* "[O]n a motion to dismiss, courts are not bound to accept as true a legal conclusion couched as a factual allegation." *Sharkey v. Quarantillo*, 541 F.3d 75, 83 (2d Cir. 2008).

In addition to requiring sufficient factual matter to state a plausible claim for relief, Rule 8 of the Federal Rules of Civil Procedure requires a plaintiff to provide a short, plain statement of the claim against the defendant so that he or she has adequate notice of the claims being asserted. *See Iqbal*, 556 U.S. at 677–78 (Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."). A pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Id.* at 678. To satisfy this standard, the complaint must, at a minimum "disclose sufficient information to permit the defendant to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery." *Kittay v. Kornstein*, 230 F.3d 531, 541 (2d Cir. 2000). "Plaintiff must allege sufficient facts to state a plausible claim against *each* defendant named in his amended

4

complaint." *Mitchell v. Macy's Inc.*, No. 17-cv-1845, 2017 WL 11453552, at *4 (S.D.N.Y. May 3, 2017) (emphasis added).

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint," along with any document for which "the complaint relies heavily upon its terms and effect, thereby rendering the document integral to the complaint." *United States ex rel. Foreman v. AECOM*, 19 F.4th 85, 106 (2d Cir. 2021). In deciding Defendants' motion to dismiss, the Court will therefore consider exhibits attached to Defendants' motion, to the extent relied upon or referenced in the Amended Complaint or Plaintiff's Opposition, and exhibits attached to the Amended Complaint.

## DISCUSSION

The Court dismisses Plaintiff's federal claims—(i) retaliation in violation of the First Amendment; (ii) sex discrimination in violation of Title IX; (iii) age discrimination, retaliation, and hostile work environment in violation of the ADEA; and (iv) disability discrimination, retaliation, and hostile work environment in violation of the ADA—for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). Because the Court dismisses Plaintiff's federal claims, the Court declines to exercise supplemental jurisdiction over the remaining state law claims. *See* 28 U.S.C. § 1367(c)(3).

### I.    First Amendment Retaliation Claim

Plaintiff brings First Amendment retaliation claims, pursuant to 42 U.S.C. § 1983, against the DOE, Principal Dwarka, Principal St. Aubain, AP Crea Mason, AP Morales, AP Manolios, and AP Huezo. The First Amendment protects speech uttered by an employee in his capacity as a citizen regarding a matter of public concern. *Smith v. Cnty. of Suffolk*, 776 F.3d 114, 118 (2d

Cir. 2015) (citing *Lane v. Franks*, 573 U.S. 228, 237 (2014)).  To allege a First Amendment

retaliation claim, a public employee plaintiff must plead facts showing that (1) he engaged in

protected First Amendment activity, (2) he suffered an adverse employment action, and (3) there

was a causal connection between the protected activity and the adverse employment action.

*Specht v. City of New York*, 15 F.4th 594, 599–600 (2d Cir. 2021); *Rivera v. N.Y.C. Dep't of

Educ.*, No. 21-cv-6134, 2023 WL 2563665, at *8 (E.D.N.Y. Feb. 3, 2023).

Plaintiff alleges that Defendants "falsely accused and reassigned [him] away from the

school" in retaliation for filing union grievances and "whistleblowing" against the School

administration.  AC ¶¶ 229, 230.  Defendants argue that Plaintiff's speech was not protected and

that, even if it was protected, there was no causal connection to any alleged adverse action.  *See*

ECF No. 41 at 26–27.  Even assuming, without deciding, that Plaintiff's speech was protected

and the accusations against him and his reassignment were adverse employment actions, the

Court agrees with Defendants that the Amended Complaint fails to plausibly allege a causal

connection.

### A.    *Alleged Speech and Adverse Employment Actions*

Before addressing causal connection, the Court briefly recounts Plaintiff's alleged speech

and the adverse employment actions taken against him.  Plaintiff's speech falls into two

categories:  union activities and "whistleblowing."  *See* AC ¶ 229.  The adverse actions likewise

fall into two categories:  false accusations and reassignment away from the School.  *Id.* ¶ 230.

Regarding Plaintiff's union activities, he alleges that from 2017 through the present he

"actively participated in union meetings, engaging in discussion of . . . practices and policies

including pressuring teachers to fix grades and constructively to terminate aged employees";

voiced his concerns about grade fixing "on repeated occasions and regularly" in meetings; and

6

from September 16–23, 2022, ran for a leadership position within the union. *Id.* ¶¶ 21, 128, 223, 229. The Amended Complaint does not say what statements Plaintiff made at these union meetings, when he made them, or whether any Defendant was aware of Plaintiff's statements. [6]

As for Plaintiff's "whistleblowing," Plaintiff alleges that he provided documentation of grade fixing and age discrimination to a *New York Post* reporter on June 15, 2022, and three days later she published an article based on information Plaintiff provided. *See id.* ¶¶ 122–23. Beginning in October 2022, Plaintiff also furnished similar documentation to the founding editor/president of various local media outlets. [7] *Id.* ¶ 134. Again, the Amended Complaint does not say what Plaintiff told the reporter or the editor, what the "documentation" was, or whether any Defendant was even aware of Plaintiff's contact with media outlets. The Amended Complaint only alleges that, on an unspecified date, Principal Dwarka referenced the *New York Post* article at a faculty meeting. *Id.* ¶ 123. But this falls far short of plausibly alleging that Principal Dwarka, much less any of the other Defendants, knew about Plaintiff's communications with the reporter. Plaintiff claims that at least one of the published versions of the article "clearly identified" him because the article credited a music teacher who began working at the School five years prior and previously complained about plagiarized work. *Id.*; Opp. at 26. Plaintiff does not attach a copy of this alleged version of the article to either his Amended Complaint or his Opposition, nor does he plead any facts indicating which (if any) of the Defendants read the version he claims "clearly identified" him. The Court takes judicial

---

[6]    In his Opposition, Plaintiff claims in conclusory fashion that the Defendants "were well aware" of his union activities. Opp. at 27. "[C]onclusory statements cannot substitute for minimally sufficient factual allegations." *Grantley v. City of New York*, No. 12-cv-8294, 2013 WL 6139688, at *1 (S.D.N.Y. Nov. 21, 2013).

[7]    Notably, Plaintiff does not allege that any of these local media outlets published anything as a result of the information he purportedly provided to the editor.

notice that the article Plaintiff relies on, as it exists on the *New York Post* website, contains none of the so-called identifying information that Plaintiff alleges. [8]

Plaintiff alleges that, as a result of his speech, he was falsely accused of sexual misconduct and reassigned away from the School. [9]  AC ¶ 230.  Plaintiff alleges that he was falsely accused, when on January 18, 2018, unbeknownst to him, police were called regarding allegations made against him of sexual misconduct involving a student. *Id.* ¶ 42.  The Amended Complaint does not say who called the police or specify which (if any) of the Defendants was involved.

With respect to reassignment, on October 6, 2022, Plaintiff was removed from class and given a letter instructing him "to report immediately for reassignment." *Id.* ¶ 132.  The letter indicated that Plaintiff was the subject of an investigation by the NYC Special Commissioner of Investigations ("SCI") and would be administratively reassigned from his normal duties and suspended from "all per session activities, after school activities, summer school assignments[,] and/or coaching responsibilities[,]" pending resolution of the matter.  ECF No. 41-3

---

[8]     *See* Susan Edelman and Melissa Klein, *Teachers say they're pushed to pass students who skipped class all year*, NEW YORK POST (June 18, 2022, 17:23 ET), https://nypost.com/2022/06/18/bryant-hs-teachers-say-they-must-pass-all-students/ [https://perma.cc/6Z7T-NZQE].  This article is also cited by Defendants.  *See* Mot. at 27. "[C]ourts considering a motion to dismiss may take judicial notice of the *fact* that press coverage contained certain information so long as they do not rely on the 'truth' of that information."  *New Jersey Carpenters Health Fund v. Royal Bank of Scotland Grp., PLC*, 709 F.3d 109, 127 n.11 (2d Cir. 2013) (citing *Staehr v. Hartford Fin. Servs. Grp., Inc.* 547 F.3d 406, 425 (2d Cir. 2008) (emphasis in original).

[9]     A teacher who is the subject of a misconduct investigation may be assigned by the DOE to an administrative assignment within the school, an administrative office away from the school, or suspended without pay.  *See Reassignment*, United Federation of Teachers, https://www.uft.org/your-rights/know-your-rights/reassignment [https://perma.cc/NWY9-BMKC].

(Reassignment Letter).  After the SCI determined the allegation was unsubstantiated, Plaintiff

returned to work from reassignment on May 30, 2023.  AC ¶¶ 152–53.

> B.    *Causal Connection*

"To permit an inference of causation, a plaintiff must show that the protected activity was

a substantial motivating factor in the adverse employment action."  *Specht*, 15 F.4th at 605.

"That is to say, the adverse employment action would not have been taken absent the employee's

protected speech."  *Rivera*, 2023 WL 2563665, at *9.  A plaintiff can establish causation either

directly, with evidence of retaliatory animus, or indirectly, by circumstantial evidence.  *Id.*  One

way to prove causation is by "showing that the adverse employment decision and the protected

activity were close in time."  *Specht*, 15 F.4th at 605.  The Second Circuit has not drawn a bright

line defining when a temporal relationship is too attenuated to establish a causal relationship, but

if a plaintiff seeks to rely solely on temporal proximity, the protected activity and alleged

retaliation must have occurred "very close" in time.  *See Farooq v. City of New York*, No. 20-cv-

3185, 2022 WL 793117, at *4 (2d Cir. Mar. 16, 2022).  "Courts in the Second Circuit have

generally found periods greater than two months to be too long to support the inference of

causation."  *Morales v. City of New York*, 525 F. Supp. 3d 463, 479 (S.D.N.Y. 2021) (collecting

cases), *aff'd,* No. 21-cv-925, 2022 WL 2840035 (2d Cir. July 21, 2022).  Regardless of temporal

proximity, "it is axiomatic that a First Amendment retaliation claim does not exist where the

defendants had no knowledge of the allegedly protected speech."  *Id.*

Here, the Amended Complaint merely claims in a speculative and conclusory fashion

that the police were called on January 18, 2018, "in retaliation for union activity and refusal to

fix grades[.]"  AC ¶ 42.  This is insufficient to plead a causal connection between Plaintiff's

speech and the allegedly false accusation against him, especially when paired with Plaintiff's

vague allegations of union activities and failure to plead facts plausibly indicating that any of the Defendants knew about whatever Plaintiff purports to have said at union meetings.

Plaintiff's claim that his reassignment was in retaliation for union activities and "whistleblowing," *see id.* ¶¶ 229, 230, is similarly insufficient to plead causation. As already explained, Plaintiff's allegations of his union activities are simply too vague, and he does not plead facts plausibly alleging that any Defendants were aware of what he said at union meetings. Regarding "whistleblowing," Plaintiff argues that a causal connection may be inferred based on temporal proximity. *See* Opp. at 27–28. Plaintiff's reassignment was approximately three and a half months after the *New York Post* article was published on June 18, 2022. Whether this proximity is close enough to infer causation depends on whether there are additional allegations supporting causation. *See Farooq*, 2022 WL 793117, at *4. Here, there are none. [10] And retaliation for Plaintiff's "whistleblowing" to the editor is implausible because Plaintiff does not allege that his "whistleblowing" occurred prior to his reassignment. Moreover, the Amended Complaint does not allege that any Defendant was aware of Plaintiff's communications with the *New York Post* reporter or the editor of various local media outlets.

In sum, the Amended Complaint fails to plausibly allege a causal connection between Plaintiff's speech and the alleged adverse employment actions. Therefore, Plaintiff's First Amendment retaliation claims against the DOE, Principal Dwarka, AP Crea Mason, Principal St. Aubain, and AP Morales are dismissed.

---

[10]    Making a causal inference even less plausible, the investigation of Plaintiff for sexual misconduct with a minor began over two months *prior* to his communications with the reporter. Plaintiff acknowledges that, after filing his Amended Complaint, he received an SCI report of the investigation, dated April 6, 2022. *See* Opp. at 28 n.3.

## II.    Title IX Claim

Plaintiff brings Title IX claims against the DOE, Principal Dwarka, Principal St. Aubain, AP Crea Mason, and AP Morales.  "Title IX prohibits sex discrimination by recipients of federal education funding." *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 173 (2005).  The statute provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance[.]"  20 U.S.C. § 1681(a). [11]  Because Title IX imposes a condition on the receipt of federal funds, "a plaintiff may obtain damages only when the funding recipient engages in intentional conduct that violates the clear terms of the statute."  *Schiebel v. Schoharie Cent. Sch. Dist.*, 120 F.4th 1082, 1093 (2d Cir. 2024).  Title IX does "not authoriz[e] suit against school officials, teachers, and other individuals, since they do not personally receive federal education funding."  *Doe v. Trs. of Columbia Univ. in City of New York*, No. 21-cv-5839, 2022 WL 3666997, at *11 (S.D.N.Y. Aug. 25, 2022).

A plaintiff may pursue a Title IX discrimination claim against a funding recipient under a deliberate indifference theory. [12]  Deliberate indifference involves a funding recipient's official decision not to remedy known acts of sex discrimination (such as sexual harassment), committed by private individuals within the funding recipient's program, of which an official with authority to act on the school's behalf had actual knowledge.  *See Schiebel*, 120 F.4th at 1094; *Gebser v.*

---

[11]    Although the statute only expressly provides for enforcement by the government, *see* 20 U.S.C. § 1682, the Supreme Court has recognized an implied private right of action for injunctive relief and monetary damages.  *See Franklin v. Gwinnett Cnty. Pub. Schs.*, 503 U.S. 60, 76 (1992).

[12]    In a footnote in his Opposition, Plaintiff also argues that Defendants discriminated against him by "not taking the complaint and harassment seriously because of sex-based bias." Opp. at 35 n.4.  The Amended Complaint does not plead facts sufficient to plausibly allege this theory, nor does Plaintiff provide any factual support for this claim in his Opposition.

*Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998). "Liability only arises if a plaintiff establishes:  (1) substantial control, (2) severe and discriminatory harassment, (3) actual knowledge, and (4) deliberate indifference." *Zeno v. Pine Plains Cent. Sch. Dist.*, 702 F.3d 655, 665 (2d Cir. 2012).

Here, Plaintiff pursues a deliberate indifference theory against Defendants DOE, Principal Dwarka, AP Crea Mason, Principal St. Aubain, and AP Morales.  AC ¶¶ 290–92. Plaintiff alleges that on March 6, 2023, he received 39 emails "containing hate speech and sexually explicit harassment" to his school email account from two anonymous cell phone numbers.  *Id.* ¶ 146.  [13]  Approximately one month later, Plaintiff reported the anonymous messages to Principal St. Aubain.  *Id.*  On May 30, 2023, "and thereafter," Plaintiff expressed to Principal St. Aubain, AP Crea Mason, and AP Morales "his fear of further harassment" by the anonymous emailers and "inquired regarding measures taken to protect him from further sexual harassment and abuse."  *Id.* ¶ 155.  Plaintiff claims that Principal St. Aubain, AP Crea Mason, and AP Morales "declined to respond in any way" to his inquiries.  *Id.*  Plaintiff does not explain why he initially sought help from them when the emailers' identities were unknown, but does allege that he first learned that the anonymous emailers were two students on June 27, 2023—the last day of the spring semester.  *Id.* ¶ 169.  [14]  He claims he presented the evidence to AP Morales and requested a meeting with Principal St. Aubain.  *Id.*  After not receiving a reply from

---

[13]     Plaintiff fails to provide any details about the 39 emails, nor does he attach any to his Amended Complaint.

[14]     Plaintiff does not explain how he learned the identities of the email senders.

AP Morales, Plaintiff emailed Principal St. Aubain, copying a DOE superintendent. *Id.* Neither

Principal St. Aubain nor the superintendent replied. *Id.* [15]

As an initial matter, because there is no individual liability under Title IX, those claims

against the individual defendants—Principal Dwarka, AP Crea Mason, Principal St. Aubain, and

AP Morales—must be dismissed. *See Stapon v. Riverhead Cent. Sch. Dist.*, No. 19-cv-4708,

2021 WL 12319295, at *3 (E.D.N.Y. Apr. 5, 2021) ("Numerous district courts in the Second

Circuit have held that there is no individual liability under Title IX."). Next, because Plaintiff

alleges that the DOE is a recipient of federal education funding for Title IX purposes, *see* AC

¶ 286, the Court proceeds with its analysis of this claim only against the DOE.

Assuming, without deciding, that student-on-teacher sexual harassment can rise to the

level of "discrimination" for purposes of Title IX, [16] Plaintiff still fails to plausibly allege that

the NYDOE was deliberately indifferent. First, Plaintiff fails to plead that the DOE exercised

substantial control over his alleged harassment. Second, the alleged sexual harassment does not

---

[15]    Plaintiff also alleges in a vague and conclusory fashion that he was "harass[ed]" by the students on other occasions in June and September 2023. *Id.* ¶¶ 163, 178. However, the Amended Complaint does not plead facts indicating that those other occasions involved sexual harassment or sex discrimination. Therefore, such allegations are not actionable under Title IX. *See, e.g., Doe v. Columbia Univ.*, No. 20-cv-06770, 2022 WL 4537851, at *25 (S.D.N.Y. Sept. 28, 2022) (harassment forming the basis for a Title IX claim must be "gender-oriented").

[16]    Although employees may bring Title IX sex discrimination claims against federally funded education programs, *Vengalattore v. Cornell Univ.*, 36 F.4th 87, 104 (2d Cir. 2022), no binding authority has addressed the more specific situation in this case—a teacher bringing a Title IX suit for deliberate indifference to student-on-teacher sexual harassment. The Court considers *Vandermeulen v. Loudoun Cnty. Sch. Bd.*, No. 24-cv-344, 2024 WL 3236711, at *4 (E.D. Va. June 28, 2024) instructive. There, the court applied the same standard used in student-on-student harassment cases to determine whether the plaintiff (a teacher's assistant) sufficiently alleged that a school board was deliberately indifferent to her reports of student-on-teacher sexual harassment. *See id.* The Court takes the same approach here.

rise to the severe and discriminatory level required to be actionable.  Finally, Plaintiff fails to plausibly allege that the DOE's response was clearly unreasonable.

A.    *Substantial Control*

"A school district will be subject to liability for third-party conduct only if it 'exercises substantial control over both the harasser and the context in which the known harassment occurs.'"  *Zeno*, 702 F.3d at 665 (citing *Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 644–45 (1999).  Only then can the funding recipient be said to "expose" the alleged victim to harassment or "cause" them to undergo the harassment "under" the funding recipient's programs.  *Davis*, 526 U.S. at 645.  Courts have found that when a student's misconduct occurs "during school hours and on school grounds," the funding recipient exercises substantial control over both the harasser and the context in which the known harassment occurs. *See id.* at 646.

Here, however, Plaintiff does not plausibly allege that the DOE had "substantial control" over the context in which the sexual harassment occurred.  Plaintiff does not allege, for example, that the March 6, 2023, anonymous messages were sent from the School's campus, sent during school hours, drafted using DOE resources, devices, or accounts, or that the email senders were otherwise within the DOE's "substantial control."  *See Doe v. Sacks*, 714 F. Supp. 3d 402, 413–14 (S.D.N.Y. 2024) (fact that a Google spreadsheet was created by anonymous university students and accessible via QR code around campus did not confer substantial control by university over the spreadsheet itself).  This failure to allege "substantial control" is a sufficient reason to dismiss the Title IX claim.  *Zeno*, 702 F.3d at 665.

B.    *Severe and Discriminatory Harassment*

Next, even assuming that the DOE had "substantial control" over both the email senders

and the context in which they sent the messages, not all harassment is actionable under Title IX.

*Id*.  The sexual harassment alleged must be "so severe, pervasive, and objectively offensive that

it effectively bars the victim's access to an educational opportunity or benefit."  *Davis*, 526 U.S.

at 650.  Pervasive harassment "means that the challenged incidents are more than episodic; they

must be sufficiently continuous and concerted."  *Hayut v. State Univ. of New York*, 352 F.3d 733,

745 (2d Cir. 2003).  "Whether gender-oriented conduct rises to the level of actionable

harassment thus depends on a constellation of surrounding circumstances, expectations, and

relationships, including, but not limited to, the ages of the harasser and the victim and the

number of individuals involved."  *Davis*, 526 U.S. at 651.  "Courts, moreover, must bear in mind

that schools are unlike the adult workplace and that children may regularly interact in a manner

that would be unacceptable among adults."  *Id.*  "It is thus understandable that, in the school

setting, students often engage in insults, banter, teasing, shoving, pushing, and gender-specific

conduct that is upsetting to [victims] subjected to it."  *Id.* at 651–52.  Damages "are not available

for simple acts of teasing and name-calling among school children . . . even where these

comments target differences in gender."  *Id.* at 652.

Here, the emails fall short of the kind of harassment found actionable under Title IX.

Although Plaintiff alleges that he received 39 anonymous messages on March 6, 2023,

"containing hate speech and sexually explicit harassment," AC ¶ 146, it appears to have been an

isolated incident.  As Defendants correctly point out, the Amended Complaint alleges no other

instances of sexual harassment against Plaintiff.  Mot. at 32; Reply at 16.  Accordingly,

Plaintiff's allegations do not rise to the requisite level of severity or pervasiveness.  *Cf. Davis,*

526 U.S. at 633–34, 653–54 (vulgar comments and sexually harassing conduct, including sexual battery, occurring repeatedly over five months was sufficiently severe to state a claim). Nor do Plaintiff's conclusory allegations that the anonymous messages "contain[ed] hate speech and sexually explicit harassment" plead facts sufficient to infer that the messages were objectively offensive. *See R.S. v. Bd. of Educ. of Hastings-On-Hudson Union Free Sch. Dist.*, 371 F. App'x 231, 233 (2d Cir. 2010) (high school student's email messages that were profane and disparaged victim's appearance, contained a crude sexual request, and declared in explicit terms the author's intent to have sex with the victim were not objectively offensive for Title IX purposes). Plaintiff's later discovery that the anonymous senders were students only further diminishes any objective offensiveness. *See Davis*, 526 U.S. at 651 (reminding courts that schoolchildren regularly interact in ways that would be unacceptable among adults). Finally, the Amended Complaint fails to allege, as it must, that Plaintiff was deprived of access to any "educational opportunities or benefit as a result of [the] harassment." *Trustees of Columbia Univ.*, 2022 WL 3666997, at *12 (dismissing Title IX deliberate indifference claim where the plaintiff failed to allege any link between her education and the alleged misconduct). Like with his failure to allege "substantial control," *Zeno*, 702 F.3d at 665, Plaintiff's failure to plead more than conclusory allegations about the harassment is a standalone basis to dismiss the Title IX claim.

### C.    *"Clearly Unreasonable" Response*

Finally, even if the DOE had "substantial control," *id.*, and the harassment was sufficiently severe to be actionable, *see Davis*, 526 U.S. at 652, funding recipients may be liable for damages "only where their own deliberate indifference effectively caused the discrimination[.]" *Id.* at 642–43. Where a plaintiff seeks to hold a school district liable for an individual's actions, the plaintiff must allege facts plausibly indicating that the school district's

16

response to the sexual harassment was "clearly unreasonable in light of known circumstances." *Schiebel*, 120 F.4th at 1094–95. A court will consider both the timeliness and the nature of the funding recipient's response. *Id.* at 1095. A plaintiff might allege deliberate indifference "by showing that the recipient knowingly refused to take any action in response to the behavior, such as investigating or putting an end to the harassment, . . . or that the response only followed after a lengthy and unjustified delay[.]" *Id.* However, the standard does not require funding recipients to "remedy" student harassment. *Davis*, 526 U.S. at 648. The funding recipient "must merely respond to known [student] harassment in a manner that is not clearly unreasonable[,]" which, as the Supreme Court emphasized, "is not a mere reasonableness standard." *Id.*

It is unclear whether Plaintiff alleges that the DOE took zero action in response to the alleged sexual harassment, or whether he is merely claiming that School administrators did not reply to his inquiries regarding protective measures to prevent further sexual harassment. *See* AC ¶¶ 155, 169. In any event, given that the sexual harassment was anonymous, there was little the DOE could do. *See Doe v. Colgate Univ.*, No. 15-cv-1069, 2017 WL 4990629, at *23 (N.D.N.Y. Oct. 31, 2017), *aff'd*, 760 F. App'x 22 (2d Cir. 2019) ("[University] could do little about alleged harassment that . . . was wholly anonymous."). Plaintiff argues that the DOE "could have investigated phone numbers and taken protective measures and corrective actions," Opp. at 34, but Title IX does not give victims the right to specific remedial measures. *See, e.g., Trustees of Columbia Univ.*, 2022 WL 3666997, at *14 ("While [the plaintiff] might have wanted a different response from [the school] . . . the standard is not whether the school responded in a particular manner, but whether [its] response was clearly unreasonable in light of all the known circumstances."). By the time Plaintiff allegedly discovered the emailers' identities, the sexual harassment had long ceased. Moreover, Plaintiff does not allege that the

DOE's action or inaction "caused" him to undergo further sexual harassment.  *See Zeno*, 702 F.3d at 666 ("school's action—or inaction—must, at a minimum, cause [victims] to undergo harassment or make them liable to or vulnerable to it").

In short, the Amended Complaint fails to plausibly allege that the Defendants were deliberately indifferent to severe sexual harassment over which they had substantial control. Therefore, Plaintiff's Title IX claim against the DOE is dismissed.

### III.    ADEA and ADA Claims

Plaintiff claims that the DOE violated the ADEA and ADA by discriminating against him because of his age and migraines, retaliating against him, and creating a hostile work environment from September 2017 through October 2023.

#### A.    Time-Barred Claims

Plaintiff's ADEA and ADA claims for discrimination and retaliation that accrued prior to July 14, 2022, are time-barred.  As a "precondition" to filing an ADEA or ADA employment discrimination claim in federal court, "a plaintiff must first pursue available administrative remedies and file a timely complaint with the EEOC."  *Mitchell v. Planned Parenthood of Greater New York, Inc.*, 745 F. Supp. 3d 68, 87 (S.D.N.Y. 2024).  In New York, which has a local administrative mechanism for pursuing discrimination claims, a plaintiff must file a charge with the EEOC within 300 days after the alleged unlawful employment practice occurred.  *Id.* Here, Plaintiff filed his EEOC complaint on May 10, 2023, AC ¶ 151, resulting in an accrual date of July 14, 2022.

Plaintiff does not contest the statutory limitations period, but he argues that the continuing violation, or continuing wrong, doctrine applies to his discrimination and retaliation claims.  Opp. at 12.  The doctrine, disfavored by federal courts in this circuit, does not apply for

two reasons.  *See Kleinman v. Fashion Inst. of Tech.*, No. 16-cv-4348, 2017 WL 3016940, at *8 (S.D.N.Y. July 14, 2017) ("[C]ourts in the Second Circuit have viewed continuing violation arguments with disfavor.").

First, Plaintiff may not invoke the doctrine because he did not assert that theory in his EEOC filing, as required.  *See id.* ("A plaintiff may not rely on a continuing violation theory of timeliness unless [he] has asserted that theory in the administrative proceedings.") (citing *Fitzgerald* v. *Henderson*, 251 F.3d 345, 360 (2d Cir. 2001)).  In his EEOC complaint, Plaintiff did not mark the box indicating that the alleged discrimination was of a continuing nature.  *See* ECF No. 37-1 at 8 (EEOC Charge of Discrimination).

Second, even if he had asserted a continuing violation before the EEOC, the doctrine is inapplicable to Plaintiff's discrimination and retaliation claims because these claims do not require an accumulation of acts to meet a threshold level of mistreatment.  *See Harris v. Bd. of Educ. of the City Sch. Dist. of the City of New York*, 230 F. Supp. 3d 88, 98 (E.D.N.Y. 2017) ("The continuing violation doctrine applies only to harassment claims. It is inapplicable to discrimination and retaliation claims.").  The continuing violation doctrine applies to claims that only accrue after the plaintiff has been subjected to some threshold level of mistreatment.  *See Gonzalez v. Hasty*, 802 F.3d 212, 220 (2d Cir. 2015).  It does not apply to discrete unlawful acts, "even where those discrete acts are part of a 'serial violation.'"  *Id.* (citing *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114–15 (2002)).

Therefore, Plaintiff's ADEA and ADA discrimination and retaliation claims premised on discrete acts that occurred before July 14, 2022,  [17] are time-barred.  *See Mitchell*, 745 F. Supp.

---

[17]    Plaintiff argues that all claims related to alleged disparity in earnings should be deemed timely and tolled because he first received notice of the disparities in early 2024.  Opp. at 13. This argument is inconsistent with allegations in the Amended Complaint.  For example,

3d at 87–88.  However, pre-July 14, 2022, events may serve as "background evidence" to support timely ADEA and ADA claims.  *See id.*

   B.   *ADEA Claims*

With respect to the timely ADEA claims, Plaintiff nevertheless fails to plausibly plead age discrimination, retaliation, or hostile work environment.

   i.   Age Discrimination

The ADEA makes it unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions or privileges or employment, because of such individual's age."  29 U.S.C. § 623(a)(l).  To plead age discrimination, a plaintiff must allege that:  (1) he was within the protected age group (over 40 years old); (2) he was qualified for his position; (3) he experienced an adverse employment action; and (4) such action occurred under circumstances giving rise to an inference of discrimination.  *Mirinaviciene v. Keuka Coll.*, No. 24-cv-1006, 2025 WL 783646, at *1 (2d Cir. Mar. 12, 2025).  Plaintiff plausibly alleges the first two elements of his discrimination claim—that he is over 40 years old and qualified, as a tenured teacher, for his position.  *See* AC ¶¶ 8, 16.  However, much of the conduct alleged in the Amended Complaint does not rise to the level of adverse employment action.  Nor does Plaintiff plausibly allege that the conduct attributed to the DOE was undertaken because of his age.

An adverse employment action is "a materially adverse change in the terms and conditions of employment."  *Clarke-Green v. N.Y.C. Dep't of Educ.*, No. 17-cv-778, 2019 WL 13149583, at *7 (E.D.N.Y. Mar. 20, 2019).  "To be materially adverse, a change in working

---

Plaintiff alleges that in June 2022, he provided documentation to the New York Post reporter about "aged teachers" being denied equal pay and per-session opportunities as compared to younger teachers.  AC ¶ 122.  Plaintiff also alleges that he filed two FOIL requests, in December 2022 and February 2023, regarding the "unfair allocation of per-session funds to music colleagues and inequitable pay."  *Id.* ¶¶ 138, 145.  Accordingly, these claims are not tolled.

20

conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities." *Id.* Examples of materially adverse changes include "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." *Id.*; *see also Herling v. N.Y.C. Dep't of Educ.*, No. 13-cv-5287, 2014 WL 1621966, at *6 (E.D.N.Y. Apr. 23, 2014) ("Denying an employee the opportunity to work overtime, comp time, or additional per-session employment may . . . constitute an adverse employment action."); *Wanamaker v. Westport Bd. of Educ.*, 899 F. Supp. 2d 193, 208 (D. Conn. 2012) (plaintiff plausibly alleged an adverse employment action where she was transferred to a substitute teaching position that was not equivalent to her original position).

Plaintiff alleges that he received disciplinary letters, received poor reviews, and was the subject of multiple investigations. *See* AC ¶ 234. Plaintiff also claims that he was denied per-session opportunities, *id.* ¶¶ 130, 148, 154, 185; involuntarily reassigned away from the School, *id.* ¶¶ 132, 152–53; ECF No. 41-3; received letters to his personnel file and problem codes [18] attached to his file, AC ¶¶ 141, 152, 160, 161, 170; publicly reprimanded, *id.* ¶¶ 158, 189; "demoted" to substitute status, *id.* ¶ 153; and that his attendance absences were misreported, *id.* ¶¶ 168, 206.

Except for the alleged per-session opportunity denials, reassignment away from the School, and demotion to substitute status, *see Herling*, 2014 WL 1621966, at *6; *Wanamaker*, 899 F. Supp. 2d at 208; *Clarke-Green*, 2019 WL 13149583, at *7, none of the other alleged conduct amounts to a materially adverse change in the terms and conditions of employment.

---

[18]    The Court understands a "problem code" to be a note or tag in a DOE employee's human resources file, indicating that the employee has engaged in misconduct. *See* ECF No. 41-4 at 3 (Plaintiff's Notice of Claim).

*See, e.g., Zoulas v. N.Y.C. Dep't of Educ.*, 400 F. Supp. 3d 25, 54–55 (S.D.N.Y. 2019) (receiving disciplinary letters, being denied preferred teaching assignments, selecting another teacher to lead after-school programs, and receiving inferior equipment are not adverse employment actions); *Morrison v. Potter*, 363 F. Supp. 2d 586, 591 (S.D.N.Y.2005) (reprimands, even those that cause an employee embarrassment or anxiety, are not materially adverse alterations of employment conditions).  Accordingly, the Court proceeds with the analysis assuming only that the alleged per-session denials, reassignment from the School, and demotion to substitute status are adverse employment actions.

A plaintiff must plausibly allege that his employer took adverse action "because of" his age.  *See Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 302–03 (2d Cir. 2021).  It is not sufficient for a plaintiff to allege that age was simply a "motivating factor" for the employer's adverse action.  *See id.*  A plaintiff may raise an inference of discrimination by plausibly alleging that another employee, who is not in the plaintiff's protected group but is otherwise similarly situated to the plaintiff in all material respects, received better treatment.  *See Mirinaviciene*, 2025 WL 783646, at *2.  "What constitutes 'all material respects' varies from case to case, but the standard for comparing conduct requires a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases."  *Id.*

Here, Plaintiff seeks to raise an inference of discrimination by alleging that his younger colleagues received per-session opportunities when he did not.  AC ¶¶ 130, 154, 185.  But the Amended Complaint provides no information about how per-session opportunities are allotted and under what circumstances those opportunities arise.  Although Plaintiff alleges that his comparators were younger than him, *id.* ¶ 77, there are insufficient facts to plausibly infer that the comparators were similarly situated in all material respects.  For example, the Amended

Complaint does not indicate whether any of the comparators were also being investigated for sexually-related misconduct like Plaintiff, had been put on reassignment like him, or applied for the same per-session opportunities as him. *See* ECF No. 41-3 (Plaintiff's reassignment letter indicates that he was suspended from all per-session activities, after-school activities, summer school assignments, and/or coaching responsibilities pending resolution of the investigation). Thus, Plaintiff's allegation that he did not receive certain per-session opportunities because of his age is "too conclusory and generalized to support a plausible inference of discrimination." *See Mirinaviciene*, 2025 WL 783646, at *2.

Plaintiff's claim that he was reassigned because of his age also fails to support a plausible inference of discrimination. *See id.* In a speculative and conclusory fashion, he merely alleges that Defendants "target[ed] [him] with the intention to reassign him from the School and replace him with a younger counterpart." AC ¶ 235. This allegation is insufficient to sustain an inference of discrimination.

Finally, Plaintiff's claim that his demotion to substitute status was discriminatory is also too conclusory and speculative. Regarding the demotion, the Amended Complaint merely alleges that Plaintiff's comparators had been assigned to cover his music classes while he was away on reassignment and served as a substitute teacher. *See* AC ¶ 153. That is insufficient to infer discriminatory intent. *See Marcus v. Leviton Mfg. Co.*, 661 F. App'x 29, 32–33 (2d Cir. 2016) ("Without more, the mere fact that an older employee was replaced by a younger one does not plausibly indicate discriminatory motive."); *see also Payne v. Malemathew*, No. 09-cv-1634, 2011 WL 3043920, at *2 & n.3 (S.D.N.Y. July 22, 2011) (plaintiff's allegation that he was the oldest employee in his department and that he was replaced by two younger employees after his termination did not support an inference of discrimination). Thus, the Amended Complaint fails

23

to plausibly allege that the conduct attributed to the DOE was undertaken because of Plaintiff's age.

   ii.  <u>Retaliation</u>

  The ADEA makes it unlawful for an employer to retaliate against an employee who opposes discriminatory practices barred by the ADEA.  *See* 29 U.S.C. § 623(d).  To plead retaliation, a plaintiff must allege that:  (1) defendants discriminated—or took an adverse employment action—against him (2) because he opposed an employment practice unlawful under the ADEA or participated in an investigation, proceeding, or litigation under it.  *Doheny v. Int'l Bus. Machines, Corp.*, 714 F. Supp. 3d 342, 365 (S.D.N.Y. 2024).  Like with an ADEA discrimination claim, a but-for causal relationship is required to state a claim for retaliation.  *Lively*, 6 F.4th 293 at 303–04.  A plaintiff must plausibly allege that the unlawful retaliation would not have occurred in the absence of the employer's wrongful action or actions.  *See id.* at 304.  A plaintiff can do so either (i) "directly, through evidence of retaliatory animus directed against the plaintiff by the defendant" or (ii) "indirectly," through other circumstantial evidence—like showing that discriminatory treatment followed closely after the protected activity or that fellow employees who engaged in similar conduct were treated differently.  *Doheny*, 714 F. Supp. 3d at 366.  Pleading indirect causation, however, still requires the employer to have known that the employee engaged in protected activity.  *Id.*

  Plaintiff alleges that he opposed the alleged discrimination by filing complaints against the DOE with the SDHR on May 8, 2023, and the EEOC on May 10, 2023.  AC ¶¶ 150–51.  On May 30, 2023, approximately three weeks after filing his SDHR and EEOC complaints, Plaintiff returned to work from his reassignment and was "demoted" to substitute status.  *Id.* ¶ 153.  Also on May 30, 2023, "and repeatedly thereafter," Plaintiff applied to Principal St. Aubain for "all

per-session opportunities provided to other music departmental colleagues and for summer school placement" at the School, but never received a response to these applications. *Id.* ¶ 154. On September 14, 2023, Plaintiff submitted applications for eight per-session opportunities, six of which were denied and two which were left pending. *Id.* ¶ 185. Plaintiff alleges that his music colleagues all received multiple per-session assignments. *Id.*

Here too, the Amended Complaint fails to plausibly allege that there was a causal relationship between the agency complaints filed by Plaintiff and the adverse employment actions—denial of per-session opportunities, reassignment, and demotion to substitute status. *See supra* Section III.B.i. First, Plaintiff was placed on reassignment in October 2022, seven months prior to filing the SDHR and EEOC complaints. Reassignment as a retaliatory response to his SDHR and EEOC complaints is therefore impossible. The same goes for some of his per-session denials, AC ¶¶ 130, 148, which occurred prior to his SDHR and EEOC complaints. Second, even though Plaintiff argues that other retaliatory actions "occurred directly after Plaintiff's complaints of discrimination in the workplace," Opp. at 22, he alleges nothing to suggest that when Principal St. Aubain and AP Crea Mason demoted him to substitute status, AC ¶ 153, or denied per-session requests, *id.* ¶¶ 154, 185, they were aware of his SDHR or EEOC complaints against the DOE. To demonstrate indirect causation, as Plaintiff seeks to do here, he must, at a minimum, plausibly allege that "the employer [knew] that the employee engaged in protected activity." *Doheny*, 714 F. Supp. 3d at 366. Finally, even if it were reasonable to infer that School administrators were aware of Plaintiff's agency complaints, Plaintiff's allegations of prior adverse actions (like earlier per-session denials and his reassignment) undermine his retaliation claim. "Where timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an

25

inference of retaliation does not arise." *Mitchell v. N.Y.C. Dep't of Educ.*, No. 24-cv-992, 2025 WL 978366, at *4 (2d Cir. Mar. 31, 2025).

iii.    <u>Hostile Work Environment</u>

The ADEA prohibits "requiring people to work in a discriminatorily hostile or abusive environment." *Zoulas*, 400 F. Supp. 3d at 59.  A plaintiff bringing a hostile work environment claim must allege "that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 20 (2d Cir. 2014).  "This standard has both objective and subjective components:  the conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive." *Littlejohn v. City of New York*, 795 F.3d 297, 321 (2d Cir. 2015).  [19] "The incidents complained of must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." *Id.*  Courts consider the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.*  "Of course, it is axiomatic that mistreatment at work, whether through subjection to a hostile environment or through other means, is actionable . . . only when it occurs because of an employee's protected characteristic," such as age. *Rivera*, 743 F.3d at 20.

---

[19]    *Littlejohn* addressed hostile work environment claims under Title VII, § 1981, and § 1983, but "the standards for evaluating hostile work environment claims are identical under Title VII and the ADEA." *Matthews v. City of New York*, No. 23-cv-3959, 2024 WL 4135483, at *7 (S.D.N.Y. Sept. 10, 2024).

Plaintiff's hostile work environment claim is predicated on allegations that, over the course of five years:  school administrators interrupted Plaintiff's class to escort him to disciplinary or investigatory meetings, *see* AC ¶¶ 48, 115, 132, 183; school administrators reprimanded him in front of colleagues or students, *see id.* ¶¶ 115, 158, 189, 212; AP Crea Mason "ridicul[ed]" Plaintiff's lesson and teaching in front of students, *id.* ¶ 56; Principal Dwarka issued Plaintiff a disciplinary letter, alleging poor judgment for allegedly touching a student's hand, and noted the incident in Plaintiff's file although the allegations were found unsubstantiated, *id.* ¶ 64; AP Crea Mason "harass[ed]" and "angrily confronted" Plaintiff for failing students, *id.* ¶¶ 71, 93; Principal Dwarka was rude to him in a meeting by saying, "Excuse you," in a hostile tone, *id.* ¶ 107; and other vague and conclusory allegations of students, colleagues, or administrators "harassing" Plaintiff, *see, e.g., id.* ¶¶ 71, 80, 99, 104, 111, 163, 200.

Although the Court accepts that Plaintiff subjectively perceived these actions as hostile, the conduct complained of is not objectively severe or pervasive enough to plausibly allege a claim for hostile work environment.  "Hostile work environment claims are meant to protect individuals from abuse and trauma that is severe. They are not intended to promote or enforce civility, gentility or even decency." *Blumstein-Torrella v. N.Y.C. Dep't of Educ.*, No. 19-cv-3492, 2024 WL 4973393, at *15 (S.D.N.Y. Sept. 7, 2024), *report and recommendation adopted*, 2024 WL 4835669 (S.D.N.Y. Nov. 20, 2024).  "Excessive criticism and rudeness do not constitute a hostile work environment." *Id.*  Moreover, the Amended Complaint fails to set forth a basis to support an inference that the complained-of acts were plausibly "because of" Plaintiff's age. *See Rivera*, 743 F.3d at 20.

In short, the Amended Complaint fails to plausibly allege that School administrators undertook sufficiently severe and pervasive conduct as to alter Plaintiff's employment conditions

and create an abusive working environment, because of his age.  Therefore, Plaintiff's ADEA claim for hostile work environment against the DOE is dismissed.

C.    *ADA Claims*

Plaintiff fails to plead plausible ADA claims for disability discrimination, retaliation, or hostile work environment.  As an initial matter, Plaintiff does not sufficiently allege an essential element for any of these claims:  that he suffers from a disability under the meaning of the ADA.

The ADA defines "disability" as (1) a physical or mental impairment that substantially limits one or more major life activities of an individual; (2) a record of such impairment; or (3) being regarded as having such an impairment.  42 U.S.C. § 12102(1).  "Major life activities" include, but are not limited to, . . . seeing, hearing, eating, sleeping, walking, . . . , learning, reading, concentrating, thinking, communicating, and working.  42 U.S.C. § 12102(2)(A).  In determining whether an impairment substantially limits a major life activity, courts consider factors like "the nature and severity of the impairment; its duration or expected duration; and the existence of any actual or expected permanent or long term impact."  *Passante v. Cambium Learning Grp.*, No. 23-cv-4060, 2024 WL 4171026, at *4 (E.D.N.Y. Sept. 12, 2024).  A plaintiff alleging a work-related disability (*i.e.*, that working is the major life activity at issue), must plausibly allege "that the condition precludes him from working in a *class or broad range of jobs*."  *Woolf v. Strada*, 949 F.3d 89, 95 (2d Cir. 2020) (emphasis in original).  There is a "well-established understanding that an employee's inability to perform a single, particular job does not constitute a substantial limitation."  *Passante*, 2024 WL 4171026, at *4.  "[E]mployees who are precluded only from doing their specific job, or from working under a specific supervisor, do not have a disability."  *Id.*

Plaintiff alleges that he suffers from migraines that "significantly restrict[] him from walking, talking, sleeping, working, seeing, and maintaining balance during a migraine episode." AC ¶ 8.  However, the Amended Complaint fails to plausibly allege that Plaintiff's migraines preclude him "from working in a class or broad range of jobs."  *Woolf*, 949 F.3d at 95.  Indeed, his pleadings indicate that his migraines were due to stress caused by working at this specific school.  For example, Plaintiff alleges the migraines were caused by "escalation in tension at the School and the emotional trauma it provoked in him," AC ¶ 36, and that they were "triggered" and "severely exacerbated" by work stress and "escalating tension" at the School.  *Id.* ¶¶ 36, 47, 67, 80, 82, 85, 156, 201, 210, 217.  Plaintiff's periodic "inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working."  *Woolf*, 949 F.3d at 95, *aff'g sub nom. Woolf v. Bloomberg L.P.*, No. 16-cv-6953, 2019 WL 1046656, at *11 (S.D.N.Y. Mar. 5, 2019) (employee's migraines, induced by the stress of working under his direct supervisors, were not a disability within the meaning of the ADA, even though the migraines arguably affected his performance at work).  Therefore, Plaintiff fails to plausibly allege that he has a "disability" within the meaning of the ADA, and his ADA claims against the DOE are dismissed.

### i.    Disability Discrimination

Even if Plaintiff had sufficiently alleged an ADA disability, his claims for disability discrimination, retaliation, and hostile work environment are nevertheless insufficiently pled. The ADA makes it unlawful to "discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).  To plead disability discrimination, a plaintiff must allege

that:  (1) the employer is subject to the ADA; (2) the plaintiff is disabled within the meaning of the ADA or perceived to be so by his employer; (3) he was otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; (4) he suffered an adverse employment action; and (5) the adverse action was imposed because of his disability. *Davis v. N.Y.C. Dep't of Educ.*, 804 F.3d 231, 235 (2d Cir. 2015).  Assuming, without deciding, that Plaintiff plausibly alleges the first four elements, the Amended Complaint fails on the fifth element:  but-for causation.

The adverse actions Plaintiff alleges for his ADA claims are identical to those for his ADEA claims, with the addition that he was "denied accommodations[.]"  AC ¶ 239.  For the reasons explained above, *see supra* Section III.B.i.1, of the overlapping allegations, only the per-session denials, reassignment away from the School, and demotion to substitute status potentially qualify as adverse actions.  As for Plaintiff's claim that he was "denied accommodations" after July 14, 2022, his allegations do not amount to an adverse employment action.

A defendant discriminates when he or she fails to make a "reasonable accommodation" that would permit a qualified disabled individual "to have access to and take a meaningful part in public services."  *McElwee v. Cnty. of Orange*, 700 F.3d 635, 640–41 (2d Cir. 2012).  Under the ADA, "reasonable accommodation" may include:  "(a) making . . . facilities . . . readily accessible to . . . individuals with disabilities; and (b) job restructuring, part-time or modified work schedules, reassignment to a vacant position, . . . , appropriate adjustment or modifications of examinations, training materials or policies, . . . , and other similar accommodations."  42 U.S.C. § 12111.

"Although a public entity must make 'reasonable accommodations,' it does not have to provide a disabled individual with every accommodation he requests or the accommodation of

his choice." *McElwee*, 700 F.3d at 641. "An accommodation is not reasonable if it would impose an undue hardship on a program's operation or would fundamentally alter the nature of the service, program, or activity." *Id.* Moreover, because workplace misconduct is a legitimate and nondiscriminatory reason for terminating (or disciplining) an employee, even when such misconduct is related to a disability, "a requested accommodation that simply excuses past misconduct is unreasonable as a matter of law." *Id.*

By way of background, Plaintiff alleges that he had previously informed School administrators of his migraines, ostensibly asking them to stop critiquing his performance and reprimanding him. For example, in 2020, he wrote to AP Huerzo about "ongoing attacks on performance over three years' time triggering migraines which escalated to lasting over a week[,]" AC ¶ 84, and in 2021, he wrote to AP Crea Mason,

> I have previously noted to you the sustained harassment and derogatory treatment you have directed towards me, berating me in front of my students and peers. As I noted in a previous communiqué, this unrelenting abuse directly provoked my spate of migraines and incidence of Shingles[,]

*Id.* ¶ 85. Nevertheless, disciplinary incidents and various other conflicts between Plaintiff and School administrators (predominantly AP Crea Mason) continued. *See generally id.* ¶¶ 86–156. On May 30, 2023, the day Plaintiff returned from reassignment, he told Principal St. Aubain and AP Crea Mason that his migraines had been escalating in response to "administrative harassment and retaliation[.]" *Id.* ¶ 156. It is not apparent exactly what accommodation Plaintiff sought, much less whether it was reasonable.

Two weeks later, on June 16, 2023, Plaintiff experienced migraines and took a week off from work. *Id.* ¶ 168. When he returned, the School's attendance secretary "refused to accept" Plaintiff's medical note for more than one day. *Id.* Plaintiff's absence was reported as unauthorized and charged to his salary. *Id.*; Opp. at 21. Plaintiff also alleges that the attendance

secretary "refused to provide Plaintiff with an exact accounting of how [his] attendance had been reported[.]"  AC ¶ 168; *see* Opp. at 21.  Again, it is not evident what accommodation he sought. Was his absence unannounced and he was asking for retroactive approval?  Had he called in sick ahead of time, received approval, and then the attendance secretary declined to honor that approval?  Was Plaintiff asking for extra sick days, beyond what he had already used?  None of this is apparent from the pleadings.  Thus, the only adverse actions plausibly alleged are the per-session denials, reassignment away from the School, and demotion to substitute status already discussed in Section III.B.i.

Plaintiff fails to allege that the adverse actions were imposed because of Plaintiff's migraines.  "[T]he ADA requires a plaintiff alleging a claim of employment discrimination to prove that discrimination was the but-for cause of any adverse employment action."  *Natofsky v. City of New York*, 921 F.3d 337, 348 (2d Cir. 2019).  This but-for causation standard for discrimination applies at the pleading stage as well.  *See Lively*, 6 F.4th at 303 (citing *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 332 (2020)).

Plaintiff claims in conclusory fashion that "upon information and belief, non-disabled comparators did not receive this mistreatment in response to attendance."  Opp. at 21.  Plaintiff relies on the same comparators used in his ADEA claims, fellow music teachers at the School. *See* AC ¶ 16.  For his conclusory allegations about comparators to survive dismissal, they must be accompanied by "enough factual allegations that are *not* made upon information and belief to 'raise a right to relief above the speculative level.'"  *Gilford v. NYS Off. of Mental Health*, No. 17-cv-8033, 2019 WL 1113306, at *6 (S.D.N.Y. Mar. 11, 2019) (emphasis in original) (quoting *Twombly*, 550 U.S. at 555).  Like with his ADEA pleadings, Plaintiff offers insufficient

facts to plausibly infer that the comparators were "similarly situated in all material respects," as he must. *Mirinaviciene*, 2025 WL 783646, at *2.

ii.    <u>Retaliation and Hostile Work Environment</u>

Plaintiff relies on the same allegations and arguments for his ADEA and ADA retaliation and hostile work environment claims. *See* AC ¶¶ 237–40; Opp. at 21–24. "It is well settled that retaliation claims under the ADEA and ADA are analyzed under the same framework." *Santana v. Mount Vernon City Sch. Dist./Bd. of Educ.*, No. 20-cv-3212, 2021 WL 4523770, at *11 (S.D.N.Y. Sept. 30, 2021). So too, are hostile work environment claims under the ADA and ADEA evaluated under the same standards. *Bethea v. JP Morgan Chase & Co.*, No. 15-cv-3544, 2019 WL 4805141, at *10 n.18 (E.D.N.Y. Sept. 30, 2019). For the same reasons Plaintiff failed to plausibly allege retaliation and hostile work environment under the ADEA, *see supra* Sections III.B.ii and iii, Plaintiff also fails to plausibly allege these same claims under the ADA.

In short, Plaintiff fails to plausibly allege that he had a disability under the ADA or that the School undertook actionable conduct because of his migraines. Therefore, Plaintiff's ADA claims for disability discrimination, retaliation, and hostile work environment are dismissed.

**IV.    State Law Claims**

Where, as here, all claims over which the Court had original jurisdiction have been dismissed, the Court may decline to exercise supplemental jurisdiction over remaining state law claims. *See* 28 U.S.C. § 1367(c)(3). When "all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction[.]" *Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77, 81 (2d Cir. 2018). To determine whether it is proper to decline to hear the state law claims, courts balance "judicial economy, convenience, fairness, and comity." *Id.* "In the context of employment discrimination cases, courts . . . routinely decline to

exercise supplemental jurisdiction over state- and city-law claims when the federal claims have been dismissed." *Munck v. Simons Found.*, No. 23-cv-9188, 2024 WL 4307776, at *9 (S.D.N.Y. Sept. 26, 2024).

Courts may also decline to retain the state law claims where the claims are subject to different standards than the federal claims. *Hansen v. City of New York*, No. 24-cv-2808, 2025 WL 588119, at *9 (S.D.N.Y. Feb. 24, 2025) ("[T]he Court declines to exercise supplemental jurisdiction over [plaintiff's] other state and local claims because they are subject to different standards and must be analyzed separately."). Here, all of Plaintiff's state law claims— intentional infliction of emotional distress, libel, conspiracy to commit fraud, and even his claims under the NYSHRL and NYCHRL—would be analyzed under different standards than his federal claims.

Because the Court has dismissed all federal claims in this case, and because the remaining state law claims would be analyzed under different standards, the Court finds it to be in the interest of judicial economy to decline to exercise supplemental jurisdiction over the remaining state law claims.

## V.    Leave to Amend

The Court declines Plaintiff's request for leave to file a second amended complaint. *See* Opp. at 11. Plaintiff offers no explanation of how he intends to further amend his pleadings to provide additional facts not already set forth in his Amended Complaint. *See Gregory v. ProNAi Therapeutics Inc.*, 757 F. App'x 35, 39 (2d Cir. 2018) (affirming denial of leave to amend where "plaintiffs sought leave to amend in a footnote at the end of their opposition to defendants' motion to dismiss" and "included no proposed amendments"). In any event, because the Court considered allegations raised in the Opposition as if they were included in the formal pleadings,

Plaintiff has effectively already been given a second opportunity to amend his complaint.  *See McKeever v. Singas*, No. 17-cv-4996, 2022 WL 5430426, at *2, *15 (E.D.N.Y. June 16, 2022) (considering allegations raised for the first time in *pro se* plaintiff's opposition in deciding a motion to dismiss and denying plaintiff leave to file a third amended complaint), *report and recommendation adopted as modified*, 2022 WL 4095558 (E.D.N.Y. Sept. 7, 2022).  That is already more than the Second Circuit ordinarily requires, and further leave to replead would be futile.  *See Applewhite v. N.Y.C. Dep't of Educ.*, No. 21-cv-2928, 2024 WL 3718675, at *21 (E.D.N.Y. Aug. 8, 2024), *aff'd sub nom. Applewhite v. N.Y.C. Dep't of Educ.*, No. 24-cv-2131, 2025 WL 783650 (2d Cir. Mar. 12, 2025).  Plaintiff is therefore denied a further opportunity to amend.

## **CONCLUSION**

For the reasons set forth above, the Court GRANTS Defendants' motion to dismiss.  *See* ECF No. 41.  Plaintiff's federal claims for violations of the First Amendment, Title IX, the ADEA, and the ADA are dismissed with prejudice for failure to state a claim.  The Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims and dismisses those claims without prejudice.  All claims having been dismissed, the Clerk of Court is respectfully directed to enter judgment consistent with this Order, close this case, and mail a copy of this order to *pro se* Plaintiff.

SO ORDERED.

/s/ Hector Gonzalez
HECTOR GONZALEZ
United States District Judge

Dated: Brooklyn, New York
        July 18, 2025