UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK (BROOKLYN)

MICHAEL EISENBERG,

               Plaintiff,

v.

NEW YORK CITY DEPARTMENT OF
EDUCATION, et al,

               Defendants.

Case No. 1:24-CV-01661-HG-VMS

Brooklyn, New York
October 3, 2024
9:49 a.m.

TRANSCRIPT OF INITIAL CONFERENCE HEARING
BEFORE THE HONORABLE VERA M. SCANLON
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

| | |
|---|---|
| For the Plaintiff: | Michael Eisenberg, Pro Se<br>23-50 Waters Edge Dr. Apt 6E<br>Bayside, NY 11260 |
| For the Defendant: | Shemori Corinthian, Esq.<br>New York City Law Department<br>Labor and Employment Division<br>100 Church Street<br>New York, NY 10007 |
| Clerk: | JR |
| Court Recorder: | Electronic Sound Recording |
| Transcription Service: | Chris Hwang<br>Abba Reporting<br>PO Box 223282<br>Chantilly, Virginia  20153<br>(518) 302-6772 |

Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

(Call to order at 9:49 a.m.)

THE COURT:  All right, so this is Eisenberg v. New York Department of Education, 24-CV-1661.  So let's start with the appearances.

So for the Plaintiff?

MR. EISENBERG:  Michael Eisenberg, Pro Se.

THE COURT:  And for Defendant?

MS. CORINTHIAN:  Shemori Corinthian, New York City Law Department.

THE COURT:  Okay.  All right, so let's talk about possibly having discovery.  So just to briefly recap, there were some conversation with Judge Gonzalez about having a motion to dismiss and some various orders associated with that.

And then, on the Docket at 26, 27, and 28 is the fully briefed letter, I'm sorry, fully briefed motion.  And then, there's a letter on the docket at 29 from Defendants.

So the point of this conference is two-fold.  Number one, talk about is there any possibility of getting settlement discussions moving?  And second, what should happen with discovery?

So, from the Plaintiff's side, anything going on with regard to settlement?  Have you made a demand, et cetera?

MR. EISENBERG:  I haven't made any demand or anything as of yet.  And I'm certainly open to that.  My understanding is opposing counsel said that currently, but I shouldn't speak

for you, that there's not the desire to go to some settlement at this time.

I do want to say that as far as discovery, I had asked specifically in my conversation with Ms. Corinthian regarding placing the opposite request, specifically that discovery is not stay that we go -- that we go ahead with discovery.  And that was not included.

THE COURT:  All right, what's your current estimate or evaluation of what the -- your damages are?  This would be -- would have been part of the -- if -- I don't know if you all went with this schedule or not, but in the initial disclosures, but just so I have a sense of the case.  What's the situation?

MR. EISENBERG:  Again, I just -- I'm *du jeune*, I'm very without knowledge and experience about this process, so I apologize if I'm in any way mis-stepping.

You know, I do seek to amend the pleading.  And so, that's -- that specifically would entail how I would determine that what I'm seeking.

Specifically, I seek to include causes of action regarding intentional infliction of emotional distress, negligent infliction of emotional distress, slander, slander per se, liable, and sexual harassment.

And the sexual harassment, I refrained from including in this because I was previously represented on contingency by

Geoffrey law firm for that specific claim.  And they -- I just obtained a release from them this month.

THE COURT:  Okay, let's talk about that.  So with a couple pieces.  Number one, the motion to amend would go to Judge Gonzalez.  It might be referred to me, but it would start with Judge Gonzalez.

Is your thought that amending -- okay, so what you just described is amending the pleadings to add claims.  We'll talk about those claims in a second.

But would amending the pleadings deal with any of the issues that Corp. Counsel has raised in the motion?  So because that is often a purpose in doing an amendment, right?  You take out claim or add facts that would help deal with whatever it is that the Defendants raise.

So just, you know, doing this fairly quickly, right?  Just to be clear, this is with Judge Gonzalez.  I'm just seeing if there's a procedural way to reduce the burden on the Court and everyone else and move the case along.

So the first memo of law is the 26-1.  And from the Defendants' perspective, there is a partial time bar for the claims and some of the claims are barred because there wasn't a timely notice of claim.

And then, more importantly, I think, or more let me say it more appropriately or possibly dealt with an amendment is point 2 and point 3 in the Defendants' brief, which is that

the claims as pled under the ADEA, ADA, and Human Rights Law for state and City are not plausible.

So I'm not saying you can solve these problems, but you might be able to solve these problems with more information.

Now that's always a little tricky because you're dealing with whatever record has come before, but any thoughts about that?  Would that be part of the purpose of an amendment?

MR. EISENBERG:  Yes, indeed, it would be to bolster that.  And for instance in terms of --

THE COURT:  That's the one you told me --

MR. EISENBERG:  -- I'm sorry.

THE COURT:  Just so we like, you know, Judge Gonzalez or at least his clerks as well would have access to the recording from today.  So, you know, it might be a helpful overview.

So, generally speaking, what is it that you would add, amend, address putting aside the possible new claims in an amended pleading?

MR. EISENBERG:  So, in regard to the time barring, I -- we did -- I did state a continuing violation theory.  And specifically, there was a continuing pattern of harassment in and retaliation based on the mounting of fraudulent or frivolous investigations.  This is also a pattern for the school.

As far as ADA, the courts have held that chronic migraine headaches constitute disability under the ADA where plaintiff establishes that there's a limit of one or more major life activities.

I did say that in November of 2020, for eight days, I was affected by migraines in the original complaint. I would absolutely just clarify that to say, you know, I was not able to walk, I was not able to sleep because those are considered under the ADA a specific life -- major life activities and this doesn't have to be multiple.

The ADA also clearly states that even if one is in remission, or it's episodic, that does not detract from such a claim. That is a valid claim.

And it also says that with medication, mitigation medication, that should not be considered. And in my case, I'm -- I've asserted from 2017 that migraines were a direct result of the patterns of harassment and retaliation. I've made that known to my superiors. There's abuse of power. They were aware of my special sensitivity. I made that known to all involved. So I would definitely clarify that.

And let me think --

THE COURT: So there's, just looking at the Defendants' brief, one area where the Defendants' position is that your claims are not sufficient with regard to the facts is, and I'll get the caption, in point 2 with regard to the

ADEA and the same -- and the City Human Rights Law, which you know, maybe the HRL overlaps with the ADA, but the ADEA. Thoughts about what else you could be adding here?

And I'm not saying you do need to.  I'm not making a decision about what whether there is, you know, or isn't a deficiency with regard to the pleading.  It's just that to the extent that you're talking about amending, it's often helpful to address issues raised in a motion to dismiss.

And you know, again, totally up to Judge Gonzalez about whether he'll let you do things with that approach.

MR. EISENBERG:  Of course.  Your Honor?

THE COURT:  Uh-huh.

MR. EISENBERG:  Can you just direct me to where you were speaking about in the motion to dismiss?  Where?

THE COURT:  So if you look at -- I'm just pulling it. It's a couple of examples, page 11 of the brief, which is on the docket at 26/1, this is the Defendants' moving brief, for example, it says here, the complaint consists of their conclusory allegations, which are insufficient to state a cause of action for discrimination under either the SHRL, that's the State Human Rights Law, or the CHRL, which is the City Human Rights Law.

So this is particularly about age discrimination, but to the extent that you're making the claim about the health related issues under the State and City Human Rights Law, then

it's a similar discussion.

Let me find it.  So page 15, this is the ADA state and disability related State Human Rights Law, City Human Rights Law section.

The first part of the analysis that the Defendant presents is the point that I think you were trying to talk about, which is the fact that from your experience of the migraines, they fit under the ADA and the state and City parallel statutes.

But page 15 says even if Plaintiff had plausibly alleged that he was in "disabled" within the meaning of the ADA, he nonetheless fails to plausibly allege that he was subjected to an adverse employment action because of the disability.

MR. EISENBERG:  Your Honor?

THE COURT:  So, you know, that would be an area where one in theory could amplify the claims.  Now, two huge caveats. I'm not saying the district judge will elect that approach and the facts are what the facts are.

The question is are there relevant facts that would respond to the Defendants' argument that are not included in this pleading -- in the pleading that the Defendants are making a motion about?

MR. EISENBERG:  Your Honor, may I respond to that?

THE COURT:  Yeah, yeah.

MR. EISENBERG:  Thank you.  So I do think it was pled quite strongly that I'm similarly situated to my --

THE COURT:  Okay, so this is not an argument, the motion to dismiss.

MR. EISENBERG:  Okay.

THE COURT:  It's really --

MR. EISENBERG:  Okay, I understand that.

THE COURT:  -- a question about what is it that you would want to add?  And where I'm going to go is then to your proposed new claims, talk about them a little bit.

And then, the big picture is what should happen in terms of motion practice --

MR. EISENBERG:  Sure.

THE COURT:  -- and discovery.  And that's why I'm asking these questions, right?

I'm not preempting anybody else's, you know, decision making authority.  I'm seeing how this feeds into the discovery question that's before me and also my original question, which is anything about whether there's a possibility of igniting settlement discussions, but okay so --

MR. EISENBERG:  Say that again, I'm so sorry. Igniting?

THE COURT:  The question would be -- my questions are, number one, is there any possibility of having meaningful settlement discussions?  And part of a response to that would

be an evaluation of whether the motion to dismiss or the motion to dismiss after there's an amendment possibly not going be successful, which then the Defendants might take into account in whether they do or don't want to participate in settlement discussions.

And also, my second tranche of questions is going to be how does the big picture of the claims that you're pursuing fit in with the discovery?

So right now, what we're addressing is if you were to amend the pleadings, which I understand you want to add claims, what would you do with the existing claims in terms of adding facts that would hopefully address the concerns that the Defendants raise?

MR. EISENBERG:  Writ large, I would certainly seek to bolster and tease out those claims.  I wasn't trying to argue my case, but just saying that there's some aspects of what was presented that I think are clear -- to my mind are clearly presented such as the comparators and why, but I would tease those out even further because it has been raised.

And then, those items like the migraines that I think need to be bolstered, I would do.  So writ large, I would certainly address all those things.  So, yes, I would do that.

If I may, if I -- if it would be so indulgent, I would just like to say because this is on the record, I am very du jeune.  I'm very inexperienced.  And I was very concerned

when I received -- I sent several letters to the Court really because I was very confused.

And I reached out to pro se office. And for instance, so I made that error with putting it on the docket. I really didn't know what that meant.

And when I asked, it was just referred back to me this is what you need to do. And I did seek out and I know people who work in federal court. I tried to seek it out, but I apologize and ask for the Court's clemency and both you and His Honor's clemency in that respect. So I want to say that.

THE COURT: All right, so far, the briefing's -- is on the docket. And you know, one possible way to address a motion to dismiss is sometimes to amend to address the deficiencies to the extent they exist --

MR. EISENBERG: Yes, yes.

THE COURT: -- that were identified by the Defendants. And really, I'm just asking for a brief description of what it is that you would add to the record, meaning add to your complaint, that would address the concerns that the Defendants have raised with regard to the sufficiency of the pleading. And they have basically two sets of issues.

One, the timing question. And I guess you have a, you know, a disagreement as to whether there are continuing violations or not, which is, you know, maybe more of a legal question than a fact question, but maybe there's more

information that's relevant about the continuity of the alleged events.

And then, the second broad position the Defendants have taken are -- is that the pleadings are insufficient with a couple of key points.

One, the medical issue.  And you're sitting here you have some additional information.  And then, two, two groups of statutes, right?  Age discrimination and disability, that two parts of your pleadings are really lacking.

One, the severity of the experience.

MR. EISENBERG:  Yes.

THE COURT:  And two, the causation between your circumstances, disability and age-wise, and what happened to you in terms of the various events.

And look, you know, the statutes allow for different theories with regard to causation.  So addressing the second point, right, temporal proximity, difference between similarly situated people.  Sometimes overt comments that link an event or comments, writings, et cetera.

And then, on the discrimination, I mean, one of hard parts about this and but I think that, you know, Defendants' brief largely lays this out, each of these statutes has different standards and this is absolutely an evolving area of the law.  So what you need to allege as to each statute varies a bit, right?

MR. EISENBERG:  Yes.

THE COURT:  So you need to, you know, some have a higher standard, some have an easier standard, et cetera.

So anyway, the short version of this is what is it generally that you would add?  You told us about you would add details about your health.

What is that you would add that would either bolster the nature of the adverse actions that you allegedly suffered?  And again, you might believe that or find or whatever.  Maybe the judge will agree that what you describe is serious enough and/or the link between your disability/age and the alleged event, so the causation question.

I'm going to let this go after this.  We just want to know what the facts are.  That's all we're trying to get here.  And what is it that's not in the pleading that you might add?

MR. EISENBERG:  So I would certainly allege that the severity of these items, both the migraines and the severity of the impact of the age discrimination against me was more severe, was stronger and --

THE COURT:  So what would you say?  What are the facts that you would add?

MR. EISENBERG:  Well, first of all, the impact on my health has long ranging ramifications and that has to do --

THE COURT:  Okay, hang on.  That's the damages piece.

MR. EISENBERG:  Oh, sorry.

THE COURT: So this is the events themselves.

MR. EISENBERG: Sorry, sorry.

THE COURT: Right, that's not a subjective standard for the most part. These are objective standards. So severity of the alleged events and causation, which you know might vary for some of these things but.

MR. EISENBERG: I would allege that with disregard negligently and wantonly, that the Defendants advanced such attacks that they were aware of caused inside of this and that they continued to do that even as it continued, that they also refused certain kinds of accommodations.

So many times, they denied me days off. They harassed me about taking days off. That asked me to take different -- well, to just take an unpaid leave.

And I was falsely -- dates for attendance were misreported and it took years for me to get those addressed. Money was -- monies were reduced for my salary as a result. But yes, so that's as far as the migraines.

As far as age, I would also -- I would also make a clearer chronology and kind of theory of how I believe that this all worked together, so that the ageism was even at the beginning that this was something that is a pattern at Bryant High School, that it's something that's on the public record.

And that the only reason why I was there, hired, was because of a sudden empty vacancy that they needed to fill

because normally they wouldn't hire somebody at my age.

And then, as my age got greater, that these kinds of discriminatory acts increased, that wages, opportunities, wages, financial opportunities were diminished in an ongoing increasing pattern.

THE COURT:  Okay.  Generally, the way this is going to work is you're going to need to ask Judge Gonzalez, you know, if you can amend the pleading and propose the amended pleading.

I'm not sure that what you're saying really answers the questions that the Defendants have raised with regard to whether your pleadings are sufficient.

Now, again, I'm not saying I agree or disagree with the Defendants' position, but to the extent your request is that you should be allowed to amend and part of the amendment process is to address issues raised by the Defendants because you do have additional facts that could be added, I don't think you have clarity on the standards.

So my suggestion would be really you look into that. And I know it sounds like you're aware of some of the resources for that.

For example, you know, there's -- well, I'm not -- there's in the pro se office, there's more focus about procedure.

There is here at the Court access to a project run by

the City Bar, which is available to provide some help with regard to pleadings.  They don't give legal advice, but you know, one of the things they could do is maybe give you some feedback on your proposed amendment.  Do you have that, the contact information?

MR. EISENBERG:  Yes, I do.

THE COURT:  All right, I mean, that's one possibility.  The EEOC has helpful information.  The City Division of Human Rights has helpful information on their website.

Obviously, the Defendants' brief includes multiple citations to what the City is suggesting and arguing that, the relevant standards.  So I think the real point would be that if you're amending, you're adding facts, not conclusions.  And that would be your endeavor.

Okay, let's talk about different point, which is it that was going on with the sexual harassment claims in this other firm?  Is there another case or something or what is it?

MR. EISENBERG:  They released me.

THE COURT:  But what's -- I don't know anything about this.

MR. EISENBERG:  Students were -- sent me a bunch of sexually explicit emails.  I assert that the Administration provoked that to some extent because they in previous patterns of harassment by those students, they encouraged it.

And then, when it was identified -- first, it was done anonymously.  And there was no action taken by the school.  And I don't believe there was reporting -- I don't believe there was any reporting.  I asked for it and that's required, too.

And then, when I was brought back into the school, because I was outside the school on reassignment because of a claim, I guess a sexual harassment claim against me, that was found unsubstantiated.

Then I asked for protection, and instead, I was subjected to places where I was exposed to further harassment by those individual students.  And so I do -- so that's my --

THE COURT:  Okay, but I don't understand the procedural posture of what this law firm was doing?  Was there a charge?

MR. EISENBERG:  They were --

THE COURT:  Was a separate lawsuit?  You know, what?

MR. EISENBERG:  There was a lawsuit.  They were drafting a demand letter for the City.

THE COURT:  Okay, so from your view, are those claims included in the pleadings?

MR. EISENBERG:  They're not currently included.  I purposely because I was not allowed to.  They were aware of this.  And I did not include any of that in my pleading.

THE COURT:  Okay, and have these claims been raised

with the EEOC?

MR. EISENBERG:  Have they been raised with the EEOC? They were raised with the office that I was told to raise it to.  So that's -- I guess it's the OSO, the --

THE COURT:  That is the City agency.

MR. EISENBERG:  Yeah, yeah.

THE COURT:  Okay.

MR. EISENBERG:  I was told that was the -- that was the route that I needed to do.

THE COURT:  When did this -- these events happen?

MR. EISENBERG:  They happened in '23.

THE COURT:  When exactly?

MR. EISENBERG:  March.  They've actually -- in March of '23.

THE COURT:  All right, it's my guess is if they're not raised with the EEOC in a timely fashion to the extent you want to bring the -- a Title 7 claim or I don't know, I'm not -- whatever your legal theory is on the federal side, you will likely face the claim that that's time barred.

But you know, is it a -- is it an expansion of what you've already pled or some theory that would make us arrive? I don't know.  Obviously, that is not part of the City and state claim, although let's circle back to the beginning and the Defendants have the claim that you haven't filed the notice of claim in a timely fashion.

So, all right, there's various issues if you're going to add this to the complaint.  So, you know, you need to look into them if that's something you're going to try to do.

All right, just do go back then to where you started, which was substantive claims, I think you have a pleading literally it's based on what you've described in your complaint.  You said you wanted intentional infliction of emotional distress --

MR. EISENBERG:  Yes.

THE COURT:  -- negligent infliction of emotional distress, slander.  What were the other ones?

MR. EISENBERG:  Slander, slander per se, and liable, yeah.

THE COURT:  Okay.  All right, you know, the way this would work would be again you would ask Judge Gonzalez for permission to add certain claims.

You know, without stepping on Corp. Counsel's toes, you can anticipate some of the issues, which the first two, those state torts have very specific elements that what you've described so far, you haven't mentioned them.

So whether you do or don't have those claims, I think you need to look at the elements.  A list of that would be available on any resource on New York state tort law.  We have some treatises in the library here.

So whether you do or you don't have those claims, I

don't know.  But they're not as simple as their titles sound.  So you might want to look into that.

And then, the slander question, slander, liable similarly, we have very specific pleading requirements under New York law, including essentially you're talking about defamation.  And there usually need to include the statements that were made and et cetera, et cetera.

So, okay, so the short version where we come out on this is to the extent your proposal is that you should be able to amend, you really need to follow Judge Gonzalez's individual rules and make the request.

MR. EISENBERG:  Okay.

THE COURT:  And I suggest you do it as expeditiously as you can because to the extent what you're trying to do is address the claims that are made in the -- like well, in response to the motion to dismiss, you know, you don't want the district judge to have his staff and himself spending time on something that might get partially or fully resolved by the amendment, all right.

So let's go back to my question about settlement discussions.  You know, whether the City is interested or not, depends on many things.

You know, again, the -- hopefully not stepping on Corp. Counsel's toes.  What I'm seeing here is based on having seen many, many cases.  Most of those usually starts with the

statement of the damages and a claim or at least some statement of what you think would be your opening position with regard to having settlement discussions.  And yeah, it's a two part at least consideration by Defendants.

The risk analysis, which obviously they're making by making the motion to dismiss, and an evaluation of their potential exposure in light of what your claim is.  So I'll just make up a hypothetical.

If you were to say, and I'm not saying you are, I'll settle this case for $5,000, that might be something Defendants would consider because they're going to spend a ton more money doing the work on this case.

If it's a different number, which I'm guessing it probably is, you know, they may or may not be interested.  And there might be a circumstance under which they're never going to pay you a dollar because they have some principled reason as to why they think that this case should, you know, not get a positive resolution for the Plaintiff.

But you know, Defendants' role is always evaluating their risk and the cost of fighting a case.  So you really need to have a description of the damages.  And that should have been -- I don't know if you all did the initial disclosures. Did you do that yet?

MR. EISENBERG:  No, we did not.

THE COURT:  Okay, so let's move on to that, because

that will feed into the settlement.  So in terms of whether there's discovery now, we'll talk about that in one second, but just let me briefly describe what the initial disclosures are.

There's three parts, two of which are the same for both of you.  And the third, which is different depending on which party you are.

So everybody needs to put together a list of the witnesses, and to the extent you have a contact information, their witness contact information, and a very brief description of what it is that that person knows about.

And then, the second is a list of documents.  Now sometimes people just produce the documents or they describe the documents.

So both of you are doing that.  And the purpose of that is to get a general idea of what the discovery will look like.

You know, you could have a broad approach to what documents you think you're going to rely on or more narrow one, but anyway, you need to do that.

The third part, and this is the relevant part for picking up on the settlement idea, is on the Plaintiff's side, you need to put together a fairly detailed description of your damages.

So in an employment case, you know, that often includes these, which would be lost income, and that could mean

any kind of benefit.

So if your salary's gone down, if you're not getting a salary, if you would have gotten a promotion, and you didn't get that increased money, if you would get the DOE situation, procession pay, retirement benefits, health care benefits, whatever the dollar amount is, you know, you can estimate for that.

Damage to reputation, sometimes.  And I sort of say that in the context of you saying there's slander, slander per se, that's the general area of damages for that.

And then, emotional distress, which is hard to put a dollar amount on, but there's case law that gives you an idea.  There's basically three tranches of that.  There is -- the first is garden variety.  There's generally some dollar value associated with that.

There is more -- emotional distress requiring treatment.  Then that's another grouping.  And then, after that, there is emotional distress that is extremely, these are my words but general extremely traumatic, often include some kind of physical injuries.

So it's possible to get an estimate.  The other factors include how long the emotional distress lasts and how long the theories of events that, you know, gave rise to the emotional distress.

But you need to lay that out because that's what

Defendants need to know in terms of making their own risk assessment and also for everybody to have an idea of what the discovery is going to involve.  So do you have any information that you can share on those issues?

MR. EISENBERG:  Well, I would add to that --

THE COURT:  What the case is about?

MR. EISENBERG:  I would add to that damage to career potential, because I cannot get a job with another school because of the adverse ratings.

It interfered -- you know that I told the Court that admitted to the Bar.  It interfered with that process.  It has -- it's -- it has placed me under a negative light in many respects.

I work, I've spent my life investing my life in working with arts education with children.  I'm in Brazil once a year working.  I just was in August with an orchestra there. I was working with children in the Favelas (phonetic).

This damages my reputation.  It interferes with my ability to conduct those altruistic efforts as well.

But more importantly, any future I take in arts education, which that was originally the reason why I pursued that law degree, was to go to into arts administration. Anything is absolutely jaundiced by such --

THE COURT:  You have to reduce that to dollar estimates.

MR. EISENBERG:  Yes, yes, understood.

THE COURT:  And some kind of equitable relief.  And obviously, everybody has to be flexible about this.  And you could do research on DOE cases.  And there's a myriad of possibilities, but it really depends on the Defendants' estimate of the underlying circumstances.

So sometimes DOE ends up agreeing that maybe a letter is too harsh or shouldn't be in the file and they are willing to withdraw the letter to file.  Sometimes there's absolute inflexibility because they stand by the finding.

So, whatever it is, and have the bare bones knowledge of how the records are maintained and how that's affecting you in some other job capacities with, you know, you all work in this area with the City.

So to the extent there's relief that you think you are entitled to, that you would be asking for in a lawsuit, you need to include that in your initial disclosures.

MR. EISENBERG:  Yes.

THE COURT:  So the Defendants know what you're looking for.

All right, so let's circle back to -- well, okay, two things.  We're going to talk about a timeline for initial disclosures at least, but that should morph into a settlement demand.  Now the Defendants answer to the settlement demand can be and might be we're not interested.

MR. EISENBERG:  Yeah.

THE COURT:  But step 1 is for them to know what it is that you're looking for.  And then, at that point, they can make, you know, a more complete, sorry, a more complete analysis.  All right, let's talk about whether discovery should or shouldn't happen.

So, on this, I'm going to switch the focus.  Defendants, your thoughts about that?  And then, we'll hear from Plaintiff.  And then, we'll go from there.

MS. CORINTHIAN:  Yes, Your Honor.  The City's position is that the discovery should be stayed.  Based on what is in the initial pleadings and the amendments that Plaintiff describe, I think the amendments would be futile.  And I think ultimately, that the case will be taken care of, if not all, most or all claims would be dismissed.

I think that based on what's pled now and based on what he described that he's going to add, that it seems like it's not going to sufficiently address the deficiencies we outlined.

And certainly, the new cases that he's -- the new claims that he seeks to amend will have some procedural issues if not being ultimately not being able to prove them or successfully plead them.

So we think based on the merits of our motion to dismiss, I think it would be not a good use of the Court's

resources to pursue discovery at this point and a burden on the named Defendants' teachers and administrators to be pulled into the discovery process.

And as Plaintiff has been speaking this morning, really has not articulated any prejudice to having a stay in place.  So, for those reasons, we would ask that there is a stay on discovery.

THE COURT:  Right.  Sorry, one thing you said just flagged for me another point for the request to amend, which you had mentioned in connection with the federal claims, but I think some of these state claims you probably have a statute of limitations issue.

Now maybe there's some relation back argument that you can make or some way to salvage it, but I think there are issues.

Okay, sorry, let's go back to Corp. Counsel.  Okay, so the concern I have is something that you touched on, although I know it's not what you're hoping for, which is there's a, I think a real possibility here that some claims will be dismissed, but some in this case will survive.

You know, one point I think is that the Supreme Court recently clarified the discrimination standard and it's not as high as I think that many cases had been suggesting.

So, in your not which for circumstance, are there parts of the discovery process that would be less difficult and

useful to prioritize certain records?

And I ask that with a little bit of an inquiry as to how the relevant records are kept.  And I'll say I've had previous DOE cases, where it was a huge exercise to get the files because I don't know if this is still the case, basically, the files follow the teachers.

So if there are folks who are -- and administrators, if the folks are -- who are named here are no longer at the school, then you end up basically, you know, trying to find the person, trying to find the file.  It's a whole lot of work.  So I don't know if that's still the recordkeeping process.

So, you know, the practical question I'm trying to get at is if discovery is to forward, what pieces would be less burdensome than others and useful in this case?

And you know, on the one hand, I hear what you're saying about no prejudice, but because of this recordkeeping aspect of the Department of Education, which basically the more time, effectively, the more time passes, the more dispersed the records become because people move around, people retire, they get promoted, they get demoted, whatever.  And that changes the location of the records.  It is sometimes easier to do this work sooner rather than later, so.

MS. CORINTHIAN:  Well, so that I was -- I don't know if that would make a particular distinction in this case because some of the claims that Plaintiff is trying to relate

back is from 2017. And I don't even know at this point if we would be able to retrieve any documents from Silvorec (phonetic) in any event.

THE COURT: Uh-huh, I guess the part that I am concerned in particular about letting time pass is his comparators claim, because that's where records getting dispersed really increases the effort that Defendants and in turn Plaintiff waiting, you have to undertake when you're trying to get the records.

What I'm saying is based on older cases. If you tell me the recordkeeping has changed or been updated, then that would change what I'm saying about this.

MR. EISENBERG: So I'm not sure what you're familiar with and how you --

THE COURT: So, basically, if you have a teacher who's at school A, and that teacher moves to school B, that teacher takes his or her personnel file and it moves to school B.

And so, to the extent that there's a group of comparators, as those people are moving or retiring, then it's not as if you can just go over to William Cullen Bryant and say, you know, open your personnel files and, you know, we'll look for teachers 1, 2, and 3, and they're all going to be there because they were in William Cullen Bryant's, you know, from whatever, pick a year from 2020 to 2023 or something like

that.

You end up looking for, you know, teacher 1 at school B, because they've moved and teacher 2, maybe that person's retired and I don't know what happens to their files there. But it's literally a difficult physical effort for your office to do and it takes a lot of time.  And not everything moves in the way it's supposed to.

So, if you know, teacher 2 goes to school B and then has gone to school C, by the time we get to the discovery, you know, your office, either you or your paralegal is either going around looking for paperwork.  And it's really not efficient. It takes a long time.

And it depends on what the comparator says, which we have not tried to dig into here, but that exercise is usually more efficient when it's done sooner rather than later.

So I understand you think much of this is going away, but I'm not convinced that it's all going away.  Again, totally for Judge Gonzalez.  I could be wrong.  I just, you know, read these papers, so who knows?  And who knows if the amendments will salvage anything.  But you know, okay, let's -- let me phrase it differently.

You know, I'm not totally staying discovery.  Is there discovery that you think either makes sense to prioritize because less burdensome, useful in the case or is there discovery that you think should be back burnered because it's

not that relevant, because it's really burdensome, because it's probably not going to contribute that much to the case unless the case really moves pretty far forward?

MS. CORINTHIAN:  Well, just a few things.  I'm not really sure.  I can't give you a certain answer on how the records move.  I know that the allegations just concern the Plaintiff's tenure at the school.  And I -- I'm not certain that the comparators have moved.

THE COURT:  Okay.

MS. CORINTHIAN:  So I don't know if that's actually a concern here.

I don't know because for the first time this morning I'm hearing that he's adding claims.  So I don't really =-- I'm trying to get a grasp on the scope of discovery.  So it's difficult for me to say that item A or item B should be prioritized.

THE COURT:  Right.

Okay, let me go back to the Plaintiff.  You mentioned comparators.  You say you were treated less well than some of your younger or in better health colleagues.  Mostly that's about the age.  About how many comparators do you think there are?

MR. EISENBERG:  There are three others.  We are only four in the department.  This was cited there.  And there -- they were all under 40.  And I think they still remain

under 40.  I'll be 58 in a couple weeks.

I'm similarly situated.  And actually, I have more seniority, more tenure, I have more experience, I'm more pedigreed.  I have experiences such as teaching music teachers, get me hired by the DOE to teach music teachers.

So we're a department of four.  And I would also assert that -- say absolutely that is the process currently that files move with teachers.  That is the way it works.

I would also say that I have been prejudiced already because I -- all my files and I believe this is in the original complaint, all the files, all my access to the Bryant website -- Bryant email, Bryant website, Bryant materials, Bryant Google classrooms, all the records I had for students including those students that harassed me and the previous pattern of harassment that was indulged by the administration before it escalated to that sexual harassment, all that was purged heavily.

When I came back --

THE COURT:  Wait, why it's purged?

THE COURT:  It was --

THE COURT:  Meaning?

MR. EISENBERG:  I was cut out of the system.  I overreturned from -- I have raised the sexual harassment issue on my first day back.  And within hours, I was cut out of the system.

I have no more access to any of those records.  And we were required the years prior to not use the DOE system, but rather to use the Willian Cullen Bryant High School.  All my --

THE COURT:  Wait, Willian Cullen Bryant High School what?

MR. EISENBERG:  City -- Willian Cullen Bryant High School website, web domain.  So --

THE COURT:  So that's separate from DOE?

MR. EISENBERG:  It was separate from DOE.  Now it's now -- now they've closed that.  So we don't have that any more.  They closed it as of maybe fall of '23, fall of '23.  And I was never granted access to any of that.  It was without my being made aware that that was going to happen.

So, all those records, I have been prejudiced in -- I'd have to ask for that.  I asked for it when it happened while the system was still up.  Nothing was done.

I also submitted prior to that an active spoliation request to the City and to my administrators.  And I made that verbal prior to that in '22.  That was in '23 when I did it, but I made it.

And I believe that that should have been preserved because I -- they were aware that there was the possibility of a lawsuit.

And I also want to ask the aspect in terms of time barring, I'm sorry to go backwards, but the issue of needing to

exhaust administrative options because that -- you've raised, you know, was EEOC filed.  But I was told that I need to exhaust this administrative option internally.  And my understanding is that before I can file a claim, I need to exhaust those options, otherwise it will would be moot.  And that's I --

THE COURT:  When you talk about the administrative sort of option, is that under your contract or something like that?

MR. EISENBERG:  Union grievances, those internal agencies like OSO.  And I was told by my union to do that.  And they said this is the next step.

So that is the case for a lot of these issues.  So I delayed to take any action because I was awaiting.  And unfortunately, those processes, it took three years for a response to one grievance that was escalated to arbitration.  So that's the worst, but --

THE COURT:  I think your argument and I have no idea if it carries the day --

MR. EISENBERG:  Has any bearing, yeah.

THE COURT:  -- is that there's some kind of tolling, but I don't know.

All right, on the Defendants' side, other than the fact that the parameters of the case might change depending on the motion to amend and/or the motion to dismiss, is there any

other reason why the discovery should be stayed?

MS. CORINTHIAN:  Your Honor, it really goes back to the merits of the case.  There's a lot of problems with what Plaintiff has laid out.  And some -- actually very inconsistent theories.  I don't want to get into all of that.

THE COURT:  No, I get it.  So I looked at the papers.  Okay, I think discovery should go ahead, but I think it should be staged.

So let's talk about timelines.  On -- just so we have an idea, when are you going to consistent with the district judge's practices make the request for leave to amend?  You know, whether -- whatever you need to look at the district judge's individual rules obviously.

MR. EISENBERG:  Okay.

THE COURT:  This was an issue with some of the previous filings.

MR. EISENBERG:  Yes.

THE COURT:  So what timeline are you anticipating?

MR. EISENBERG:  May I request 30 days?

THE COURT:  I mean --

MR. EISENBERG:  Yeah, I hate to -- I need to present that --

THE COURT:  Your request goes to the district judge --

MR. EISENBERG:  Yes, that's what I was referring --

THE COURT:  So this is just -- all right, so you so you need raise these points with Judge Gonzalez --

MR. EISENBERG:  Understood.

THE COURT:  -- who is taking them into account in terms of the timeline here.  Okay, so looking at this, I think you should do -- I'm sorry, I'm looking at my phone because I don't happen to have another calendar on in here.

All right, so assume by early November you've made the request.  I think you should do the initial disclosures by December 6th.

MR. EISENBERG:  Okay.

THE COURT:  And I didn't -- I think I didn't actually finish what I was saying earlier.  So there's three points to the initial disclosures.

Essentially, both of you, it's the list of documents.  Again, you can produce the documents.  It's the list of who the individuals are who are the witnesses and their contact information.

Now to the extent that they're still employees, sometimes the contact information is Corp. Counsel, but you know, whatever like you can deal with it.

For the important part, which I've now talked about a couple times on Plaintiff's side is the damages statement.  And just so you know on the Defendants' side, it's any available insurance.  I believe the City's self-insured, so it's a very

simple answer.  Okay, so do that.  The initial disclosures by December 6th.

Then, the next step would be the document requests and interrogatories.  So the way that works is you both, you know, send each other your respective document requests and interrogatories.  And generally, there's 30 days to respond. You can work with each other as to what the timeline there is.

I think from what's been said so far, an important part of this request on Plaintiff's side, so you should be sure to be as detailed as you can, are these electronic records.

You know, without seeing your requests, I don't know what preservation issue was raised, but to the extent that anything can be done to make sure that whatever this William Cullen Bryan system was, that those materials are preserved. That's probably something that Defendants' counsel wants to be on top of.

So you all can have a conversation about whether you think there should be a separate agreement about the details for electronic discovery.

Those requests can get incorporated into the document requests and interrogatories, but I think it would be important on the Plaintiff's side to think about what exactly you're looking for.

So in terms of the comparators, might just be that you want their personnel files.  It might be that you just need

their resumes.  It might be that you just need their -- I don't know what the internal document would be like, a very simple statement, you know.  For example, their age and educational achievements and that's it.

Their 10-year timeline just so that you can compare or maybe you need more.  It really depends on the arguments that you're making.

Potentially, you know, and this is really again, how you're thinking about the facts being developed in the case, you might need electronic discovery related to the comparators or you might need electronic discovery from the supervisors or parties that you were dealing with in terms of some of the complaints that you made.

So very unclear to me what the separate platform was, but you know, you should probably be working on what exactly you need on Plaintiff's side, where you think it's likely to be, and then the Defendants' side, you know, making sure that you have it to the extent it existed.

So, in terms of a timeline, December 6th, the initial disclosures and the initial documents requests, then that could be served by December 20th.

And you know, the more I say the more I think you problem do need an e-discovery agreement.  So you should be talking to each other about that.  So what I would like is --

MS. CORINTHIAN:  Excuse me, Your Honor?

THE COURT:  Yeah.

MS. CORINTHIAN:  Could that date be changed?  I'm just going to just full disclosure, I'll be out for a significant portion of December --

THE COURT:  Okay.

MS. CORINTHIAN:  -- for two weeks out.

THE COURT:  What do you think?

MS. CORINTHIAN:  Probably going into January.

THE COURT:  When?

MR. EISENBERG:  Let me just take a look at my calendar.  I'll be able to get that out January 10th.

THE COURT:  Okay, all right, January 10th for the initial document requests and interrogatories.  And I would like a status letter as to whatever it is you've worked out and see as remaining issues on e-discovery.  Because what you've described so far, particularly a platform that's offline, seems like it might present some challenges.  So it would be good to start looking into that.

Then it's 30 days to respond to -- from 30 days from the service.  So actually, let's just set a deadline because you can serve your requests earlier, but given counsel's absence in my office, it's probably unrealistic to think there would be a response before then.

So let's say the responses to the document request interrogatories are due no sooner than February 12th.  You can

produce them earlier, but you don't have to.

And then, what I think we should do is have a conference and talk about what you've gotten done, what remains, and the next stages.

And what I would generally see the next stages as being after that are possibly, and this is an uncertain thing, is if there are documents that are coming from nonparties. And in this kind of a case, the nonparties would be seems like, I'm not limiting you to this, individuals who no longer work for the Defendants and are not represented by the Defendants, which there might be nobody like that. But to the extent there are, they might need to be subpoenaed or their records may need to be subpoenaed.

And then, the other, and this requires investigation on your part, some of the agencies that have been represented I technically mean independent agencies. I think the investigations right is -- I don't know. This has come up in other cases. And I'm not sure which --

MS. CORINTHIAN:  SDI?

THE COURT:  Yeah.

MS. CORINTHIAN:  Okay.

THE COURT:  But I'm not sure right now. We haven't done this in a while, but I think there are definitely some cases that say that SDI is independent of DOE.

And it depends on whether different attorneys have

taken different positions whether Corp. Counsel's going to -- would represent them and facilitate getting the documents for them or your position is, no, in fact, they're separate and we're not handling them in this case.  I don't know.  You all need to figure it out.  I don't know what the situation is.

And the union, if there are union-related documents that either side wants or needs that you don't have and can't produce, to the extent that they want a subpoena, you may have to deal with it.

I'm not limiting you to dealing with these things later on if -- I mean, if you can deal with them earlier, I'm not saying don't issue subpoenas.  I'm saying that what I might want to do is have a date for a conference.  We'll come in, get an update on where you are, and map out the rest of the case.

And then, at that point, hopefully, you have a better sense of what's happening in terms of the scope of the pleadings and your motion practice.

That's not to say that there would need to have been any decision from a district judge on it, but you would just know if you had made the motion to dismiss like if that was permitted -- I'm sorry, the motion to amend, if that's permitted procedurally where you all are.

Okay, so looking at 2025, I don't know, my dance card is not booked yet.  And what if we set an in-person conference that needs to be updated depending how the year goes,

that's -- it's fine.  You can just let me know.

But what about February the 13th?  Is that -- how does that look on your calendars say 10:30?  Or we could do it the week after.  Maybe that give you a little more time to look at the responses, so --

MR. EISENBERG:  The week after would not be good. I'll be out of the country probably, but February 13th could work or the week after that.

THE COURT:  Any preference with the 25th?

MS. CORINTHIAN:  I have no issue going forward with the 25th, Your Honor.

THE COURT:  All right, 25th at 10:30.  So February 25th, 10:30 in person.  And what we'll be discussing is moving forward with the rest of discovery.

Okay, circle back way to the beginning on the Plaintiff's side.  You should really think about a demand.

MR. EISENBERG:  Understood.

THE COURT:  And I think in comparing the initial disclosures, that would really be -- that should be an outline of your best case scenario.

MR. EISENBERG:  Yes.

THE COURT:  A settlement demand generally should have a discount because settling gives you certainty that you, you know, can't obtain other than a positive resolution to a case, but you know, it's up to you.

And then, you know, at that point, Defendants can once you give them the demand, they can think about what they want to do with it, but at least they'll know.

All right, so the working schedule here is Plaintiff anticipates within 30 days reaching out to the district judge about amending the pleadings, but I'm not saying that that will satisfy the district judge.  So, you know, sooner rather than later is better.

By December 6th, you're exchanging initial disclosures.

By January, let's see 10th, you're going to do two things.  Serve initial -- sorry, serve your interrogatories and document requests and give me a letter that is an outline of your e-discovery discussions, what you've resolved, what remains to be resolved.

And then, the responses to the interrogatories document requests are due no sooner than February 10th.  Feel free to do it earlier, but it'll have to be produced earlier than that.  And then, we'll have our conference on the 25th, 10:30.  Okay, anything else?

MS. CORINTHIAN:  No, not I just -- I'm not even entirely clear with what the ESI issue is.  And he's saying there's two systems.

THE COURT:  I will defer to --

MS. CORINTHIAN:  If you can just --

THE COURT:  Yeah, so --

MS. CORINTHIAN:  -- explain that a little bit --

THE COURT:  Yeah.

MS. CORINTHIAN:  -- more clearly?  I didn't really understand.

THE COURT:  Okay, so I think there's two -- there's the general broad ESI question that comes in most employment cases, which is how are records kept, paper or on a system?  We were particularly talking about the comparators.

Seems like part of Plaintiff, your claim, is that there were emails back and forth, communications back and forth, where you received communications, where you -- that were inappropriate, where you made complaints, where you got adverse responses, et cetera.  So there's the substantive content of what you're looking for.

But then, you raise, and both of us are curious about, that there are multiple systems that somewhat -- sounds somewhat unusual.  So if you could describe that?

MR. EISENBERG:  There's the DOE email and now it's all uniform.  So we have even Google classroom, all our documents, all our drives are there.  It's a Google platform.

But for many years, there was a platform with Bryant that was a separate Google platform.  And for several years, administration was adamant that all communications should happen on that drive, on those email servers, on -- so all my

files, all my drive, all my pedagogical materials, any communications, any grading with parents, any communications with staff, that specifically -- any kind of proof that I have of this, it's just completely eradicated.

THE COURT:  Okay, you don't know if they're eradicated, but what was that system?  Where was it hosted?  Who is in charge of it?

MR. EISENBERG:  It was a local platform.

THE COURT:  Okay.  So it's not the same --

MR. EISENBERG:  It was web -- sorry, it was wcbryanths.org or something like that.

THE COURT:  Do you think it was a freestanding server not connected to DOE --

MR. EISENBERG:  Yeah.

THE COURT:  -- and not a Google classroom?

MR. EISENBERG:  It had Google classroom potential.  I think it was a freestanding server, but I don't -- I can't speak authoritatively.  I don't know.

THE COURT:  And it was running an email system?

MR. EISENBERG:  Yes.

THE COURT:  Like Outlook or something.

MR. EISENBERG:  Yes.  Yes, so we have --

THE COURT:  So that the office suite or something?  What was it?

MR. EISENBERG:  It was a Google platform.  And at

that time, Outlook would have been -- now our Outlook syncs with Google, but at that time, it did not.  So we had DOE access.  We had DOE Outlook in Microsoft.  And we also had the server.

THE COURT:  And you -- what did you use and what did others use in communicating with you?

MR. EISENBERG:  We were told expressly that we must use the Bryant High School server.

THE COURT:  Okay, as I understand your point that you were denied access, but what's the basis for your belief that that system is not up and running still?

MR. EISENBERG:  That's what I've been told.

THE COURT:  By someone?

MR. EISENBERG:  By the person that runs IT in our school.

THE COURT:  Okay.

MR. EISENBERG:  But that may be inaccurate.

THE COURT:  What's that person's name?

MR. EISENBERG:  Juan Valez (phonetic).  I've also been told by administrators, by, I don't know, which administrators were most recently, but I've been told by administrators, but Juan Valez is the name of the head of IT there.

And he was the one that ostensibly locked me out of my account and out of all my materials.  And I believe that it

was on the basis of my conversation.

THE COURT:  All right, but the question we're dealing with now --

MR. EISENBERG:  Sorry.

THE COURT:  -- is where are the materials?  Are they retrievable --

MR. EISENBERG:  Yes.

THE COURT:  -- et cetera?  So the point of this aspect to our conversation is to help corporate -- Corp. Counsel have some idea about where idea about where to look for the material.  So you're saying that it's something outside of the domain, the DOE.

MR. EISENBERG:  Yeah, I apologize for my long-windedness.  Please excuse my --

MS. CORINTHIAN:  And Your Honor, I just have one more question --

THE COURT:  Yeah.

MS. CORINTHIAN:  -- for clarification.  These documents that are in this database, is it related to the claims he stated now in the complaint or for your possible amended claims that you seek to add?

MR. EISENBERG:  All the above.

MS. CORINTHIAN:  Okay.

THE COURT:  Okay.  All right, anything else?

MS. CORINTHIAN:  No, Your Honor.

THE COURT:  Good, all right.  Thank you.  Have a good day.

MS. CORINTHIAN:  Thank you, sir.

MR. EISENBERG:  Thank you, Your Honor.

(Proceedings concluded at 10:59 a.m.)

**CERTIFICATE**


I, Chris Hwang, court approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.


/s/ *Chris Hwang*

_____          April 30, 2026

Chris Hwang                    Date

Court Reporter